**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SSL SERVICES, LLC<br>  Plaintiff,<br><br>v.<br><br>CITRIX SYSTEMS, INC., et al.<br>  Defendants. | §<br>§<br>§<br>§   CIVIL ACTION NO. 2:08-cv-158-JRG<br>§<br>§<br>§<br>§<br>§ |

**MEMORANDUM OPINION AND ORDER**

**I.   Introduction**

Before the Court is Plaintiff SSL Services, LLC's ("SSL") Daubert Motion Limiting the Testimony of Defendants' Damages Expert, Dr. Charles R. Mahla. (Dkt. No. 163.). After carefully considering the parties' written submissions and the arguments of counsel, the motion is **DENIED**.

**II.   Facts**

SSL filed suit on April 11, 2008, alleging that Citrix Systems, Inc. and Citrix Online LLC ("Citrix") infringe U.S. Patent Nos. 6,061,796 ("the '796 patent") and 6,158,011 ("the '011 patent"). Citrix provides Internet-based products that allow consumers and businesses to remotely access computer systems. One Citrix product, GoToMyPC, allows a user to remotely access a computer from a Web browser. Other Citrix remote access products include GoToMeeting, GoToWebinar, GoToTraining and GoToAssist. These are sometimes collectively referred to herein as the "GoTo Products." SSL alleges that these GoTo Products infringe the '796 patent.

Citrix also provides hardware and related software to facilitate remote access of computers. The Citrix hardware includes Citrix Access Gateway and NetScaler appliances. Related software includes SSL BPN client software such as, for example, Access Gateway Plugin and Secure Access Client. SSL alleges that combinations of these hardware and software products infringe the '011 patent.

SSL seeks patent damages pursuant to 35 U.S.C. § 284, in the form of a reasonable royalty. SSL served the damages expert report of Mr. Brett Reed on October 18, 2011. Citrix argues that a reasonable royalty is the proper basis for damages and Citrix submitted the rebuttal expert report of Dr. Mahla on November 18, 2011. Dr. Mahla's rebuttal report bases portions of his opinion and testimony on the theory that the existence of certain non-infringing alternatives diminishes the value of the patent inventions. SSL now moves, through the present motion, to exclude those portions of Dr. Mahla's report related to non-infringing alternatives on the grounds that such opinions lack the requisite foundation for relevance and reliability. (Dkt. No. 163, at 10.) SSL also argues that Dr. Mahla's opinions related to non-infringing alternatives should also be excluded because Citrix allegedly denied the existence of viable non-infringing alternatives in numerous discovery responses and that Dr. Mahla should not be permitted to adopt an opinion contrary to Citrix's earlier litigation positions.

### III.   Applicable Law

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and

methods to the facts of the case." Fed. R. Evid. 702.  A trial court is "charged with a 'gatekeeping role,' the objections of which is to ensure that expert testimony admitted into evidence is both reliable and relevant." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008).

**IV.   Analysis**

   *A. Whether Dr. Mahla's Opinions Are Inconsistent With Citrix's Stated Litigation Positions*

SSL objects to Dr. Mahla's testimony regarding non-infringing alternatives on the grounds that Dr. Mahla's expert report directly contradicts unambiguous litigation positions previously adopted in this case by Citrix.  For example, one of the interrogatories served on Citrix asked:

> To the extent that Citrix contends that there exist any non-infringing "design-arounds" for the GoTo Products and Services, describe in detail those non-infringing design-arounds, including the costs of implementing and using these design-arounds as compared to using the patented technology of claim 27 of the '796 patent.

Citrix's response to this interrogatory did not identify any particular products.  (Dkt. No. 163.) SSL also points to deposition testimony, where various Citrix witnesses were questioned regarding the existence of "non-infringing design arounds." *Id*. at 5.  Again, Citrix did not identify any particular products.  Rather, Citrix stated that it has not attempted to "design around" any of the patents-in-suit.  In light of Citrix's responses to these and other discovery requests, SSL now argues that Citrix's expert, Dr. Mahla, should be precluded from factoring the existence of non-infringing alternatives into his reasonable royalty analysis.

Citrix responds that SSL's discovery requests relate to an entirely different inquiry than the mere existence of non-infringing alternatives – *i.e.,* Citrix's own internal efforts to "design around" the patents-in-suit.  (Dkt. No. 182, at 2.)  Citrix contends that it has consistently

3

maintained two distinct positions: that it has not attempted to design around the patents-in-suit because its accused products and services do not infringe SSL's patents, but that Citrix's competitors do sell non-infringing products.

The Court agrees with Citrix. The discovery tendered by SSL was specifically directed to Citrix's efforts to design around the asserted patents, not to the actual existence of non-infringing alternatives.[1] Even if SSL intended for its discovery requests and deposition questions to encompass all non-infringing alternatives, the plain language of such requests and questions indicates that they relate only to Citrix's attempts to design around the patents in suit. While every (successful) design around is a non-infringing alternative, not every non-infringing alternative is necessarily a design around. SSL's motion to limit Dr. Mahla's testimony on this ground is denied.

### B. Whether Dr. Mahla's Opinions Are Inconsistent With Citrix's Stated Litigation Positions

SSL also argues that the Court should exclude Dr. Mahla's testimony regarding non-infringing alternatives because his report allegedly lacks sufficient foundation to testify about such non-infringing alternatives. According to SSL, for a damages expert to offer testimony related to non-infringing alternatives, the expert must rely on a foundation that establishes at least two things: (1) the non-infringing alternative product was available during the entire infringing period; and (2) the non-infringing alternatives would be acceptable to all purchasers of the infringing product. (Dkt. No. 163, at 1) (citing *LaserDynamics v. Quanta Comp., Inc.*, 2:06-cv-348, 2011 U.S. Dist. LEXIS 5422, at *7-8 (E.D. Tex. Jan 20, 2011) and *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1343 (Fed. Cir. 1999)). Citrix responds that

---

[1] In fact, SSL's own discovery requests define "design around" as "*inventing* workable alternative." (Dkt. No. 183.)

the cases relied upon by SSL are inapposite because they do not involve – as is the case here – non-infringing alternatives that were actually "on the market" during the time of infringement. (Dkt. No. 183.)

Again, the Court agrees with Citrix. SSL's arguments regarding the foundational requirements of *LaserDynamics* and *Grain Processing* do not apply to this case. In both *LaserDynamics* and *Grain Processing*, the alleged non-infringing alternatives at issue were not actually "on the market." Because such alleged alternatives were not "on the market," the burden shifted to the offering party's expert to reliably demonstrate that non-infringing alternatives would have been "available."

> In *Grain Processing*, the Federal Circuit explained that, when an alleged alternative is not on the market during the accounting period, the court may reasonably infer that it was not available as a non-infringing alternative. *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1354 (Fed. Cir. 1999). The accused infringer, however, can rebut this presumption by showing that the substitute was in fact "available" to the infringer. *Id.*

*LaserDynamics*, 2011 U.S. Dist. LEXIS 5422, at *8. In this case, the non-infringing alternatives identified by Citrix (*e.g.,* WebEx) were actually sold on the market during the period of infringement.[2] Furthermore, Citrix's technical expert served a report addressing the existence of non-infringing alternatives actually sold on the market. (Dkt. No. 183, at 7.) That report analyzed such non-infringing alternatives, identified why they were non-infringing, and described how they functioned. (Dkt. No. 218-2, at 3.) The Court finds that the opinions in these reports are sufficiently reliable to present evidence regarding possible non-infringing alternatives to the jury at trial. In light of this finding, any further alleged deficiencies in Dr. Mahla's opinion

---

[2] Dr. Mahla's expert report cites to numerous documents evidencing this fact. *See, e.g.,* Dkt. No. 218-1, at 30.

regarding non-infringing alternatives is a matter of weight, not admissibility. Accordingly, the Court denies SSL's request to limit Dr. Mahla's testimony on this ground.

## V.     Conclusion

Consciously exercising the gatekeeping responsibility conferred under *Daubert* upon this Court, the undersigned finds that the opinions regarding non-infringing alternatives in Dr. Mahla's report are sufficiently reliable to fully support and justify the presentation of evidence to the jury regarding the possibility of non-infringing alternatives. Accordingly, the Court **DENIES** SSL's Daubert Motion Limiting the Testimony of Defendants' Damages Expert, Dr. Charles R. Mahla.

**So ORDERED and SIGNED this 4th day of June, 2012.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE