**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| SSL SERVICES, LLC, ) <br>                Plaintiff, ) <br> ) <br>     v. ) <br> ) <br> CITRIX SYSTEMS, INC., and, ) <br> CITRIX ONLINE, LLC, ) <br> ) <br>           Defendants. ) <br> ) | CIVIL ACTION NO. 2:08-cv-158 (JRG) <br><br> **JURY TRIAL** |

---

**JOINT PROPOSED JURY INSTRUCTIONS**

---

The following are the proposed final instructions to the jury in the above-referenced matter.  Where the parties disagree on an instruction, or parts of an instruction, the disputed language is bolded and bracketed and the parties' positions are separately set forth immediately after the disputed language.

Citrix attempts to add approximately a dozen sections to these instructions that are not part of the Federal Circuit Bar Association's model jury instructions.  Each of the Sections below that are denoted as "ADDED" are found nowhere in the Federal Circuit Bar Association (FCBA)'s model instructions that the parties were directed to use as a model.  Therefore, unless otherwise agreed by the parties, each "ADDED" section should therefore be deleted from the instructions in this case.

At the end of this document are a set of additional instructions that Citrix submits are of the type typically read to the jury as part of the final construction on general trial matters to help the jury understand the scope and nature of the evidence and of their responsibilities in

1

evaluating the evidence.  These instructions, which Citrix proposes be read before the

substantive patent law instruction, are suggested by Citrix here because the Federal Circuit Bar

Association (FCBA) model patent jury instructions do not include a number of instructions on,

for example, what is evidence, what is not evidence, direct and circumstantial evidence, expert

witnesses, credibility of witnesses, etc.

# TABLE OF CONTENTS

**Page**

**I.    FEDERAL CIRCUIT BAR MODEL INSTRUCTIONS**

**JURY INSTRUCTION___:  GENERAL INSTRUCTIONS [SUMMARY OF CONTENTIONS]**.................................................................................1

**JURY INSTRUCTION___:  THE PARTIES AND THEIR CONTENTIONS** [ADDED INSTRUCTION].............................................................2

**JURY INSTRUCTION___:  BURDENS OF PROOF – PREPONDERANCE OF THE EVIDENCE** [PRELIMINARY INSTRUCTIONS]..................4

**JURY INSTRUCTION___:  BURDENS OF PROOF – CLEAR AND CONVINCING EVIDENCE** [PRELIMINARY INSTRUCTIONS]................5

**JURY INSTRUCTION___:  DIRECT AND CIRCUMSTANTIAL EVIDENCE** [ADDED INSTRUCTION].......................................................6

**JURY INSTRUCTION 2.2:  HOW A CLAIM DEFINES WHAT IT COVERS**....................8

**JURY INSTRUCTION 2.3:  CLAIM INTERPRETATION** [ADDED INSTRUCTION]......10

**JURY INSTRUCTION 3.1:  INFRINGEMENT GENERALLY** .............................................15

**JURY INSTRUCTION 3.1:  DETERMINING INFRINGEMENT**.......................................16

**JURY INSTRUCTION 3.1a:  DIRECT LITERAL INFRINGEMENT**................................17

**JURY INSTRUCTION 3.1b:  INFRINGEMENT OF MEANS-PLUS-FUNCTION CLAIM LIMITATIONS** ...................................................18

**JURY INSTRUCTION 3.1c:  DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS** .................................................20

**JURY INSTRUCTION 3.1d:  LIMITATIONS ON DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**..................22

**JURY INSTRUCTION 3.1:  INDIRECT INFRINGEMENT** .................................................24

**JURY INSTRUCTION 3.2:  INDIRECT INFRINGEMENT ACTIVE INDUCEMENT**....25

**JURY INSTRUCTION 3.3:  INDIRECT INFRINGEMENT CONTRIBUTORY** ...............29

**JURY INSTRUCTION 3.8:  WILLFUL INFRINGEMENT** .................................................33

**JURY INSTRUCTION 4.1:  BURDEN OF PROOF** ..............................................................38

**JURY INSTRUCTION 4.2a:  WRITTEN DESCRIPTION** ..................................................40

**JURY INSTRUCTION 4.3c:  OBVIOUSNESS** ...............................................46

**JURY INSTRUCTION 4.3c(i): LEVEL OF ORDINARY SKILL** ...........................49

**JURY INSTRUCTION 6.1:  DAMAGES - INRODUCTION** ...............................50

**JURY INSTRUCTION 6.6:  REASONABLE ROYALTY - DEFINITION** ........................52

**JURY INSTRUCTION 6.7:  REASONABLE ROYALTY FACTORS**................................55

**JURY INSTRUCTION ___:  APPORTIONMENT / ENTIRE MARKET VALUE [ADDED INSTRUCTION]**................................................................58

**JURY INSTRUCTION 6.8:  WHEN DAMAGES BEGIN** ...................................60

**JURY INSTRUCTION:  DELIBERATION INSTRUCTIONS [ADDED INSTRUCTION]**66

**JURY INSTRUCTION___:  GENERAL INSTRUCTIONS** [ADDED instruction] ..............69

**JURY INSTRUCTION___:  CONSIDERING WITNESS TESTIMONY** [ADDED instruction] ...............................................................70

**JURY INSTRUCTION___ :  HOW TO EXAMINE THE EVIDENCE** [ADDED INSTRUCTION].................................................................72

**JURY INSTRUCTION___:  WHAT IS EVIDENCE** [ADDED INSTRUCTION] ................74

**JURY INSTRUCTION___: WHAT IS NOT EVIDENCE** [ADDED INSTRUCTION].........75

**JURY INSTRUCTION___:  EXPERT WITNESSES** [ADDED INSTRUCTION]................77

**JURY INSTRUCTION___:  CREDIBILITY OF WITNESSES** [ADDED INSTRUCTION]78

**JURY INSTRUCTION___:  STIPULATIONS** [ADDED INSTRUCTION] ..........................79

**JURY INSTRUCTION ___:  GENERAL INSTRUCTIONS [SUMMARY OF**

**CONTENTIONS]**

LADIES AND GENTLEMEN OF THE JURY:

[You have heard the evidence in this case. I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you.  On the other hand, you the jury are the judges of the facts.  Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.  Statements and arguments of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist you in understanding the evidence and the parties' contentions.[1]]

---

[1] Authority:  *i4i Ltd. P'Ship & Infrastructures for Info., Inc. v. Microsoft Corp.*, No. 07-cv-113 (E.D. Tex. (LED), Court's Charge (D.I.323)

**JURY INSTRUCTION___:   THE PARTIES AND THEIR CONTENTIONS** [ADDED INSTRUCTION]

The Plaintiff SSL Services, LLC who I will refer to as SSL contends that the use of certain of Defendants Citrix Systems, Inc. and Citrix Online LLC's (who I may refer to collectively as Citrix) GoTo Services which include GoToMyPC, GoToMeeting, GoToWebinar, GoToTraining and GoToAssist infringe claim 27 of United States Patent No. 6,061,796 (which we also call the '796 patent).  SSL also claims that Citrix has actively induced others to infringe Claim 27 of the '796 patent.  SSL also claims that Citrix has contributorily infringed claim 27 of the '796 patent. And, SSL claims that Citrix and Citrix Online LLC has willfully infringed the '796 patent.

SSL also contends that Defendant Citrix Systems, Inc. makes, uses, offers to sell, or sells products including Access Gateway and NetScaler that infringe claims 2 and 4 of United States Patent No. 6,158,011 (which we will also call the '011 patent).  SSL also contends that the use of Access Gateway or certain features of NetScaler infringe claim 7 of the '011 patent.  SSL also claims that Citrix Systems, Inc. has actively induced others to infringe Claims 2, 4 and 7 of the '011 patent.  SSL also claims that Citrix Systems, Inc has contributorily infringed claims 2, 4 and 7 of the '011 patent.  And, SSL seeks a finding that Citrix Systems, Inc. has willfully infringed the '011 patent. Together, I will refer to the '796 and '011 patents as "the asserted patents."

The patent claims at issue are claim 27 in the '796 patent and claims 2, 4 and 7 in the '011 patent.  As a group, I will refer to these claims of the '796 and '011 patents as "the asserted claims."

Citrix denies that it has infringed the '796 patent or the '011 patent.  Citrix also denies that it has induced others to infringe the '796 patent or the '011 patent.  Citrix also denies that it has willfully infringed.  Citrix denies that SSL is entitled to any damages or other relief.

2

Furthermore, Citrix contends that all of the asserted claims are invalid because they are either anticipated by or rendered obvious by one or more prior art references.  Citrix also contends that claims 2 and 4 of the '011 patent are also invalid for failure to meet the written description requirement.  Invalidity is a defense to infringement.  Therefore, even though the U.S. Patent and Trademark Office (which we will refer to as the PTO) has allowed the asserted claims, you, the jury, must decide whether those claims are invalid.

Your job is to decide whether the asserted claims have been infringed and whether any of the asserted claims are invalid.  If you decide that any claim of the patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to SSL as compensation for the infringement.  You will also need to decide whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you make.  I will take willfulness into account later.[2]

**SSL'S POSITION:  This section was "ADDED" by Citrix and it is not part of the Federal Circuit Bar Association's model jury instructions.  However, SSL agrees that the instruction provides necessary clarity to the jury of the scope of their responsibilities.**

**CITRIX'S POSITION:  The parties agree that this instruction should be adopted.**

**JURY INSTRUCTION___:   BURDENS OF PROOF – PREPONDERANCE OF THE
EVIDENCE** [PRELIMINARY INSTRUCTIONS]

[When a party has the burden of proof on any claim or defense by a preponderance of the
evidence it means the evidence must persuade you that the claim or defense is more probable
than not.

You should base your decision on all of the evidence, regardless of which party presented
it. [3]]

---

[3] Authority:   Nat'l Jury Instruction Project, *Model Patent Jury Instructions*, (June 17, 2009),
Instruction No. 1.4; Sample Patent Jury Charge of the Honorable Leonard Davis, Chief District
Judge, http://www.txed.uscourts.gov/page1.shtml?location=info:judge&judge=7.

**JURY INSTRUCTION___:  BURDENS OF PROOF – CLEAR AND CONVINCING EVIDENCE** [PRELIMINARY INSTRUCTIONS]

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the evidence must persuade you that the claim or defense is highly probable.  Such evidence requires a higher standard of proof than a preponderance of evidence.

Again, you should base your decision on all of the evidence, regardless of which party presented it.[4]

---

[4] Authority:   Nat'l Jury Instruction Project, *Model Patent Jury Instructions*, (June 17, 2009), Instruction No. 1.5; Sample Patent Jury Charge of the Honorable Leonard Davis, Chief District Judge, http://www.txed.uscourts.gov/page1.shtml?location=info:judge&judge=7.

**JURY INSTRUCTION___:  DIRECT AND CIRCUMSTANTIAL EVIDENCE**

[ADDED INSTRUCTION]

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.[5]

_____

[5] <u>Authority</u>:   Ninth Circuit Jury Instructions Committee, Ninth Circuit Manual of Model Jury Instructions (2007), Instruction No. 1.9.

## 2.1 THE ROLE OF THE CLAIMS OF A PATENT

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."  The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.  Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim.  Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.  The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case.  Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims and I will provide to you my definitions of certain claim terms.  You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

**JURY INSTRUCTION 2.2:  HOW A CLAIM DEFINES WHAT IT COVERS**

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or a method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

[Claims may describe products, such as machines or chemical compounds.  These types of claims are generally referred to as "apparatus" or "product claims."  Claims 2 and 4 of the

8

'011 patent are apparatus claims.  Claims may also describe a method for doing something.  These types of claims are generally referred to as "method" claims.  Claim 27 of the '796 patent and claim 7 of the '011 patent are method claims.

Claims are usually divided into parts or steps, called "limitations."  For example, a product claim that covers a table may recite a list of limitations including a tabletop, four legs, and glue that secures the legs to the tabletop. [6]]

[The beginning, or preamble, of some asserted claims uses the word "comprising."  "Comprising" means "including" or "containing but not limited to."  That is, if you decide that a Defendant's product or method includes all the requirements or steps in that claim, the claim is infringed.  This is true even if the accused product or method includes components or steps in addition to those requirements.

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.[7]]

---

[6] Authority:  The Federal Circuit Bar Association, *Model Patent Jury Instructions*, 2.2 (last edited Feb. 2012) (modified).

[7] Authority:  Nat'l Jury Instruction Project, *Model Patent Jury Instructions*, (June 17, 2009), Instruction No. 3.4; Sample Patent Jury Charge of the Honorable Leonard Davis, Chief District Judge, http://www.txed.uscourts.gov/page1.shtml?location=info:judge&judge=7

**JURY INSTRUCTION 2.3:   CLAIM INTERPRETATION**[8] [ADDED

INSTRUCTION]

I will now explain to you the meaning of some of the words of the claims in this case.  In

doing so, I will explain some of the requirements of the claims.  As I have previously instructed you,

you must accept my definition of these words in the claims as correct.  For any words in the claim for

which I have not provided you with a definition, you should apply their common meaning.  You

should not take my definition of the language of the claims as an indication that I have a view

regarding how you should decide the issues that you are being asked to decide, such as infringement

and invalidity.  These issues are yours to decide.

[You have been provided with copies of the '796 and '011 patents and copies of the claim

term definitions, and you may use them in your deliberations.

As a preliminary matter, I have determined that a number of the steps of claim 27 of the

'796 Patent and claim 7 of the '011 Patent must be performed in a specific order.  In claim 27,

there are basically four ordered groups of steps in the claimed invention.  First, the connection

request and destination address is intercepted.  Second, communication is established with the

authentication server and a session key is generated.  Third, a communication channel is

established between the server and the destination client. Finally, the destination client is able to

decrypt and encrypt files.

I have applied this general outline to claim 27 and divided the steps of claim 27 into four

groups.  The steps in each group must be performed before the steps in the next group.  For

example, all the steps in Group I must be performed before the steps in Group II.  All the steps in

Groups I and II must be performed before the steps in Group III.  Finally, all of the steps in

Groups I, II and III must be performed before the steps in Group IV.  Steps within a Group,

---

[8] The parties preserve their rights for all claim terms that this Court interpreted inconsistently
with or contrary to the parties' proposed constructions.

10

however, do not need to be performed in any particular order.  The following summarizes the

required order of the steps for claim 27:

### <u>Group I</u>

o  [b] -- "intercepting function calls and requests for service sent by an applications program in one of said client computers to a lower level set of communication drivers" and

o  [d] -- "intercepting a destination address during initialization of communications between said one of said client computers and a second of said client computers on said virtual private network"

### <u>Group II</u>

o  [c] -- "causing an applications level authentication and encryption program said one of said client computers to communicate with the server, generate a session key, and use the session key generated by the applications level authentication and encryption program to encrypt files sent by the applications program before transmittal over said open network"

o  [e] -- "causing said applications level authentication and encryption program to communicate with the server in order to enable the applications level authentication and encryption program to generate said session key" and

o  [f] -- "transmitting said destination address to said server".

### <u>Group III</u>

o  [g] -- "causing said server to communicate with the second of said two client computers."

### <u>Group IV</u>

o  [h] -- "enabling said second of said two client computers to recreate the session key"

o  [i] -- "causing said authentication software to encrypt files to be sent to the destination address using the session key" and

o  [j] -- "transmitting the encrypted files directly to the destination address."

This general outline for the required order of steps for claim 27 of the '796 patent is

directly applicable to claim 7 of the '011 patent.

11

I have determined that the preambles, that is the beginning portions, of claim 27 of the '796 patent and claims 4 and 7 of the '011 patent are limitations of the claims.

### **Meaning of Specific Claim Terms**

1)  The term "**multi-tier**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "more than one level or layer."

2)  The phrase "**virtual private network**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "a system for securing communications between computers over an open network."

3)  The term "**server**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "software running on a computer that provides services to client computers."

4)  The term "**plurality**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "more than one."

5)  The phrase "**lower level set of communications drivers**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "set of communications drivers below the applications layer."

6)  The phrase "**session key**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "a sequence of bits that is input into an encryption algorithm to encrypt data for a session."

7)  The phrase "**generate a session key**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "to produce a session key".

8)  The term "**encrypt**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "to render unintelligible without decrypting."

12

9)  The phrase "**client computer**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "a computer that request data or services from a server."

10)  The phrases "**intercepting function calls and requests for service**," "**intercept function calls and requests for service**," and "**intercepting said function calls and requests for service**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "using a shim to intercept or divert a request for a desired function, service, operation or event."

11)  The phrases "**authentication and encryption program"** and **"encryption and authentication software**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "a program that verifies the identity of a client or server and renders data unintelligible without decrypting."

12)  The phrase "**encrypt files**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "to render a set of data used by a program unintelligible without decrypting."

13)  The phrase "**destination address**" (as used in claim 27 of the '796 patent) means "the network address of a computer or server."

14)  The phrase "**intercepting a destination address**" (as used in claim 27 of the '796 patent) means "using a shim to intercept or divert the network address of a computer or server."

15)  The phrase "**recreate the session key**" (as used in claim 27 of the '796 patent) means "recreate the sequence of bits that is input into an encryption algorithm to encrypt data for a session."

16)  The phrase "**transmitting the encrypted files directly to the destination address**" (as used in claim 27 of the '796 patent) means "transmitting the encrypted files from a first client computer to a second client computer."

13

17)   The phrase "**mutually authenticate**" (as used in claims 2 and 4 of the '011 patent) means "a server verifies the identity of the client computer and the client computer verifies the identity of the server."

18)   The term "**shim**" (as required by claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "software that is added between two existing layers, which utilizes the same function calls of the existing layers."

I will now define for you certain other claim terms that are written in what is called "means-plus-function" format.  The patent statute permits certain elements of a claimed invention to be expressed simply as a "means" for performing a certain function, without reciting in the claim any structure, material or acts in support of the function.  These claim terms are construed to cover the corresponding structure, material or acts described in the specification for performing the claimed function, and equivalents of such structure, material or acts.

The recited function for the phrase "**means for transmitting data to and receiving data from an open network**" (as used in claim 27 of the '796 patent) is "transmitting data to and receiving data from an open network."  The corresponding structure is "the lower level communications drivers and hardware (such as a network or modem connection) described in the specification or equivalents thereof." [9]]

---

[9] <u>Authority</u>:  Markman Order (D.I 123); The Federal Circuit Bar Association, *Model Patent Jury Instructions*, 2.3 (last edited Feb. 2012) (modified); Nat'l Jury Instruction Project, *Model Patent Jury Instructions*, (June 17, 2009), Instruction No. 1.3 (modified); Sample Patent Jury Charge of the Honorable Leonard Davis, Chief District Judge, http://www.txed.uscourts.gov/page1.shtml?location=info:judge&judge=7.

**JURY INSTRUCTION 3.1:  INFRINGEMENT GENERALLY**

I will now instruct you how to decide whether or not [Citrix] has infringed [one or more of the asserted claims of the '796 and '011 patents].  Infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but no infringement as to another.[10]

---

[10] [Authority:  The Federal Circuit Bar Association, *Model Patent Jury Instructions*, 2.2 (last edited Feb. 2012) (modified).]

**JURY INSTRUCTION 3.1:  DETERMINING INFRINGEMENT**

[There are two types of claims that SSL alleges Citrix infringes – method claims and apparatus claims.  The method claims are claim 27 of the '796 patent and claim 7 of the '011 patent.  A method claim is infringed only when a person, without the patent owner' permission, performs each and every step of the method claim in the United States while the patent is in force.  The apparatus claims are claims 2 and 4 of the '011 patent.  Infringement of an apparatus claim occurs when a person, without the owner's permission, makes, uses, offers to sell, or sells the patented invention anywhere in the United States while the patent is in force.

In this case, SSL has accused Citrix of three types of infringement.  First SSL accuses Citrix Systems, Inc. and Citrix Online LLC of directly infringing claim 27 of the '796 patent through the use of various versions of GoToMyPC, GoToMeeting and GoToAssist.  SSL also accuses Citrix Systems, Inc. of directly infringing claim 7 of the '011 patent through the use of Access Gateway and Access Gateway Enterprise Edition which is a feature of NetScaler.  SSL asserts that Citrix Systems, Inc. infringes claims 2 and 4 of the '011 patent by making, using, selling or offering for sale Access Gateway and NetScaler (with Access Gateway Enterprise Edition), which SSL contends contains all of the requirements of claims 2 and 4 of the '011 patent.

Second, SSL contends that Citrix infringes indirectly by contributing to the infringement by others, such as Citrix's customers.  Third, SSL contends that Citrix induces infringement by affirmatively intending to cause direct infringement by others.

I will first tell you about direct infringement, then I will tell you about contributory infringement, and last I will tell you about inducement.[11]]

---

[11] <u>Authority</u>:  35 U.S.C. § 271; *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.,* 576 F.3d 1348, 1359 (Fed. Cir. 2009)*; Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993).

**JURY INSTRUCTION 3.1a:  DIRECT LITERAL INFRINGEMENT**

There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents."  In order to prove direct infringement by literal infringement [of the asserted method claims, claim 27 of the '796 patent and claim 7 of the '011 patent, SSL] must prove by a preponderance of the evidence [that Citrix actually performed each and every step of the claimed method in the United States.  In order to prove direct infringement by literal infringement of the asserted apparatus claims, claims 2 and 4 of the '011 patent, SSL must prove by a preponderance of the evidence, that Citrix Systems, Inc. made, used, sold, or offered for sale within] or imported into the United States [products that include each and every requirement of claims 2 and 4 of the '011 patent.]

[In order to infringe a patent claim, a product or method of use must include each and every requirement of the claim.  In determining whether a Citrix Accused Product or Service infringes one or more of SSL's asserted claims, you must compare the Accused Product or Service] with each and every one of the requirements of a claim to determine whether [an Accused Products or Service contains each and every requirement recited in a claim.  A claim requirement is present if it exists in an Accused Product or Service or its method of use just as it is described in the claim language, either as I have explained the language to you or, if I did not explain it, as it would be understood by one of skill in the art.  If any of the Accused Products or Services omit even a single requirement recited in a claim, then you must find that the particular product or service does not literally infringe that particular claim.]

You must determine, separately for each asserted claim, whether not there is infringement.[12]

---

[12] Authority:  The Federal Circuit Bar Association, *Model Patent Jury Instructions*, 3.1a (last edited Feb. 2012) (modified).*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.,* 576 F.3d 1348,

## JURY INSTRUCTION 3.1b:  INFRINGEMENT OF MEANS-PLUS-FUNCTION CLAIM LIMITATIONS

Where claims include means -plus-function requirements:

As I have previously explained, [claim 27 of the '796 patent includes] requirements that are in means-plus-function form.

A product or a process meets a means-plus-function requirement of a claim if: (1) it has a structure or a set [of structures that] perform the identical function recited in the claim, and (2) that structure is either identical or "equivalent" to the described structures that I defined earlier as performing the function of  ["transmitting data to and receiving data from an open network."]  If the product does not perform the specific function recited in the claim, the "means-plus-function" requirement is not met, and the product does not literally infringe the claim.  Alternatively, even if the product has a structure that performs the function recited in the claim but the structure is not either identical or "equivalent" to the [structures] that I defined to you as being described in the ['796] patent and performing this function, the product does not literally infringe the asserted claim.

A structure may be found to be "equivalent" to one of [structures] I have defined as being described in the ['796] patent if a person having ordinary skill in the field of technology of the ['796] patent either would have considered the differences between them to be insubstantial at the time the ['796] patent issued or if that person would have found the [structures] performed the function in substantially the same way to accomplish substantially the same result.  In deciding whether the differences would be "insubstantial," you may consider whether a person having an ordinary level of skill in the field of technology of the patent would have known of the interchangeability of the two structures or sets of structures. Interchangeability itself is not sufficient; in order for the structures to be considered to be interchangeable, the interchangeability of the two structures must have been

1359 (Fed. Cir. 2009)*; Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993); *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380-81 (Fed. Cir. 2007); *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1328-30 (Fed. Cir. 2008).

known to persons of ordinary skill in that art at the time the patent issued.  The fact that a structure is known now and is "equivalent" is not enough.  The structure must also have been available at the time the ['796] patent issued.

In order to prove direct infringement by literal infringement of a means-plus -function limitation, [SSL] must prove the above requirements are met by a preponderance of the evidence.

**JURY INSTRUCTION 3.1c:  DIRECT INFRINGEMENT UNDER THE DOCTRINE OF**

**EQUIVALENTS**

[SSL alleges that Citrix infringes claim 27 of the '796 patent and claims 2 and 4 of the

'011 patent] under the "doctrine of equivalents."  If a person [practices a method that does not

meet all of the requirements of a method claim and thus does not literally infringe that claim, or

if a person] makes, uses, sells, offers to sell within or imports into the United States a product

that does not meet all of the requirements of a claim and thus does not literally infringe that

claim, there can still be direct infringement if that [method or] product satisfies that claim under

the doctrine of equivalents.

Under the doctrine of equivalents, a [method or] product infringes a claim if the accused

[method or] product performs steps or contains elements corresponding to each and every

requirement of the claim that is equivalent to, even though not literally met by, the accused

[method or] product.  You may find that [a step or] element is equivalent to a requirement of a

claim that is not met literally if a person having ordinary skill in the field of technology of the

patent would have considered the differences between them to be "insubstantial" or would have

found that the [action or] structure:  (1) performs substantially the same function, (2) in

substantially the same way (3) to achieve substantially the same result as the requirement of the

claim.  In order for the [action or] structure to be considered interchangeable, the [action or]

structure must have been known at the time of the alleged infringement to a person having

ordinary skill in the field of technology of the patent.  Interchangeability at the present time is

not sufficient.  In order to prove infringement by "equivalents," [SSL] must prove the

equivalency of the [actions or] structure to a claim element by a preponderance of the evidence.

[$^{13}$]

---

$^{13}$ [Authority:  The Federal Circuit Bar Association, *Model Patent Jury Instructions*, 3.1c (last edited Feb. 2012) (modified); *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.,* 576 F.3d 1348, 1359 (Fed. Cir. 2009)*; Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993).]

## JURY INSTRUCTION 3.1d:  LIMITATIONS ON DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

The prior art may preclude a finding of infringement under the doctrine of equivalents.  I will explain what "prior art" is, but, generally speaking, "prior art" is things that were already known or done before the invention.  In reaching your decisions in this case, you must use the definition of "prior art" that I provide to you.

To determine whether the prior art precludes a finding of infringement under the doctrine of equivalents for a particular product or process that is accused of infringing a particular claim, you must determine what products or processes are in the "prior art" as well as what products or processes would have been obvious from the "prior art" to a person having an ordinary level of skill in the field of technology of the patent at the time of the invention.

If [Citrix] establishes that a product or process that (1) meets the same claim requirements as the product or process that is accused of infringing and (2) has the same allegedly "equivalent" alternative feature(s) as the product or process that is accused of infringing is in the prior art or would have been obvious from the prior art to a person having ordinary skill the field of technology of the invention [as of August 26, 1997], you must find that the claim has not been infringed.

[Citrix] has the burden of proving that this hypothetical, equivalent claim was within the prior art at the time of the alleged infringement, by a preponderance of the evidence.

You may not find that a product or process infringes a claim under the doctrine of equivalents if you find that: (1) the allegedly "equivalent" alternative feature(s) of that product or process were described somewhere in the patent and (2) that the product or process is not covered literally by any claims of the patent.

You may not determine that an alternative aspect of a product or process is equivalent to an unmet requirement of a claim if a finding of infringement under the doctrine of equivalents would effectively eliminate that requirement.  Specifically, the alleged equivalent cannot eliminate or ignore an element or requirement of the claim. [14]

---

[14] Authority:  The Federal Circuit Bar Association, *Model Patent Jury Instructions*, 3.1d (last edited Feb. 2012).

## JURY INSTRUCTION 3.1:  INDIRECT INFRINGEMENT

[SSL also alleges that Citrix indirectly infringed the asserted patent claims.  There are two types of indirect infringement:  inducing infringement and contributory infringement.  The act of encouraging or inducing others to infringe a patent is called "inducing infringement."  The act of contributing to the infringement of others by, for example, supplying them with components for use in the patented invention, is called "contributory infringement." [15]]

---

[15] Authority:  Nat'l Jury Instruction Project, *Model Patent Jury Instructions*, (June 17, 2009), Instruction No. 3.10; *Convolve, Inc. v. Dell, Inc., et al.*, Civil Action No. 2:08-CV-244 (CE) (E.D. Tex. 2011); *Saffran v. Boston Sci. Corp.*, Civil Action No. 2:05-CV-547 (TJW) (E.D. Tex. 2008); Am. Intellectual Prop. Law Ass'n (AIPLA) Guide to Model Patent Jury Instructions.

**JURY INSTRUCTION 3.2:  INDIRECT INFRINGEMENT ACTIVE**

**INDUCEMENT**

SSL'S PROPOSED INSTRUCTION

[SSL] alleges that [Citrix] is liable for infringement by actively inducing [Citrix's customers] to directly infringe the ['796 or '011 patents] literally or under the doctrine of equivalents.  As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

[Citrix] is liable for active inducement of a claim only if [SSL] proves by a preponderance of the evidence that:

(1) the acts are actually carried out by [Citrix's customers] and directly infringe that claim;

(2) [Citrix] took action during the time the ['796 or '011 patents] were in force intending to cause the infringing acts by [Citrix's customers]; and

(3) [Citrix] was aware of the ['796 or '011 patents] and knew that the acts, if taken, would constitute infringement of those patents or [Citrix] believed there was a high probability that the acts, if taken, would constitute infringement of the ['796 or '011 patents]but deliberately avoided confirming that belief.

In order to establish active inducement of infringement, it is not sufficient that [Citrix's customers themselves directly infringe] the claim.  Nor is it sufficient that [Citrix] was aware of the act(s) by [Citrix's customers] that allegedly constitute the direct infringement.  Rather, you must find that [Citrix] specifically intended [its customers to infringe the '796 or '011 patents or that [Citrix] believed there was a high  probability that [Citrix's customers] would infringe the ['796 or '011

<u>patents but remained willfully blind to the infringing nature of [Citrix' customer's] acts, in order</u>

<u>to find inducement of infringement.</u> [16]]

> **SSL'S POSITION: The only difference in the parties instruction is that Citrix wants to essentially issue the same instruction twice to the jury, which will result in unnecessary confusion. Citrix cites to a 1978 New York case as its only source of authority. The jury is fully capable of assessing whether the knowledge of a parent organization can be imputed to a wholly owned and operated "Division" of the parent based upon the facts of each case. Accordingly, it is Citrix's burden to explain why two independent instructions are needed.**

CITRIX'S PROPOSED INSTRUCTION

[SSL] alleges that [Citrix Systems] is liable for infringement by actively inducing [Citrix Systems' customers] to directly infringe the ['796 or '011 patents] literally or under the doctrine of equivalents. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

[Citrix Systems] is liable for active inducement of a claim only if [SSL] proves by a preponderance of the evidence that:

(1) the acts are actually carried out by [Citrix Systems' customers] and directly infringe that claim;

(2) [Citrix Systems] took action during the time the ['796 or '011 patents] were in force intending to cause the infringing acts by [Citrix Systems' customers]; and

(3) [SSL] was aware of the ['796 or '011 patents] knew that the acts, if taken, would constitute infringement of those patents or [Citrix Systems] believed there was a high probability

---

[16] Authority: The Federal Circuit Bar Association, *Model Patent Jury Instructions*, 3.2 (last edited Feb. 2012) (modified); *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011).

that the acts, if taken, would constitute infringement of the ['796 or '011 patents] but deliberately avoided confirming that belief.

In order to establish active inducement of infringement, it is not sufficient that [Citrix Systems' customers themselves directly infringe] the claim. Nor is it sufficient that [Citrix Systems] was aware of the act(s) by [Citrix Systems' customers] that allegedly constitute the direct infringement. Rather, you must find that [Citrix Systems] specifically intended [Citrix Systems' customers] to infringe the ['796 or '011 patents] or that [Citrix Systems] believed there was a high probability that [Citrix Systems' customers] would infringe the ['796 or '011 patents], but remained willfully blind to the infringing nature of [Citrix Systems' customer's] acts, in order to find inducement of infringement.

[SSL] alleges that [Citrix Online] is liable for infringement by actively inducing [Citrix Online's customers] to directly infringe the ['796 patent] literally or under the doctrine of equivalents. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

[Citrix Online] is liable for active inducement of a claim only if [SSL] proves by a preponderance of the evidence that:

(1) the acts are actually carried out by [Citrix Online's customers] and directly infringe that claim;

(2) [Citrix Online] took action during the time the ['796 patent] was in force intending to cause the infringing acts by [Citrix Online's customers]; and

(3) [SSL] was aware of the ['796 patent] knew that the acts, if taken, would constitute infringement of that patent or [Citrix Online] believed there was a high probability that the acts, if taken, would constitute infringement of the ['796 patent] but deliberately avoided confirming that belief.

In order to establish active inducement of infringement, it is not sufficient that [Citrix Online's customers themselves directly infringe] the claim. Nor is it sufficient that [Citrix Online] was aware of the act(s) by [Citrix Online's customers] that allegedly constitute the direct infringement. Rather, you must find that [Citrix Online] specifically intended [Citrix Online's customers] to infringe the ['796 patent] or that [Citrix Online] believed there was a high probability that [Citrix Online's customers] would infringe the ['796 patent], but remained willfully blind to the infringing nature of [Citrix Online's customer's] acts, in order to find inducement of infringement.

**CITRIX'S POSITION:  Citrix objects to SSL's proposed construction on induced infringement because it improperly conflates Citrix Systems, Inc. and Citrix Online, LLC.  The two companies are separate legal entities, and Citrix Online is a subsidiary of Citrix Systems.  It is well established that the knowledge of a parent cannot be automatically imputed to its subsidiary: "Before a parent's knowledge will be imputed to its subsidiary, it must be shown that the parent's employees informed of the infringement were under a duty to report that information to the subsidiary."  See DC Comics, Inc. v. Powers, 465 F. Supp. 843, 849 n. 8 (SDNY 1978).  Citrix's proposed instruction mirrors the language of the FCBA model and will assist the jury. SSL provides no legal basis for ignoring the separate legal status of the two defendants and its instruction is therefore erroneous.   Accordingly, Citrix's proposed instruction should be adopted.**

**JURY INSTRUCTION 3.3:  INDIRECT INFRINGEMENT CONTRIBUTORY**

SSL'S PROPOSED INSTRUCTION

[SSL] argues that [Citrix] is liable for contributory infringement by contributing to the direct infringement of the ['796 and '011 patents by Citrix].  As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

[Citrix] is liable for contributory infringement of a claim if [SSL] proves by a preponderance of the evidence:

    (1) [Citrix] sells, offers to sell, or imports within the United States a component of a product, or apparatus for use in a process during the time the ['796 and '011 patents] are in force;

    (2) the component or apparatus has no substantial, non[-]infringing use;

    (3) the component or apparatus constitutes a material part of the invention;

    (4) [Citrix] is aware of the ['796 and '011 patents] and knows that the products or processes for which the component or apparatus has no other substantial use may be covered by a claim of the ['796 or '011] patent or may satisfy a claim of the ['796 or '011] patent under the doctrine of equivalents; and

    (5) that use directly infringes the claim.

In order to prove contributory infringement, [SSL] must prove each of the above requirements is met.  This proof of each requirement must be by a preponderance of the evidence, i.e., that it is more likely than not that each of the above requirements is met.

**SSL'S POSITION:  The only difference in the parties instruction is that Citrix wants to essentially issue the same instruction twice to the jury, which will result in unnecessary confusion.  Citrix cites to a 1978 New York case as**

29

**its only source of authority. The jury is fully capable of assessing whether the knowledge of a parent organization can be imputed to a wholly owned and operated "Division" of the parent based upon the facts of each case. Accordingly, it is Citrix's burden to explain why two independent instructions are needed.**

CITRIX'S PROPOSED INSTRUCTION

[SSL] argues that [Citrix Systems] is liable for contributory infringement by contributing to the direct infringement of the ['796 and '011 patents] by [Citrix Systems' customers]. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

[Citrix Systems] is liable for contributory infringement of a claim if [SSL] proves by a preponderance of the evidence:

(1) [Citrix Systems] sells, offers to sell, or imports within the United States a component of a product, or apparatus for use in a process during the time the ['796 and '011 patents] are in force;

(2) the component or apparatus has no substantial, non[-]infringing use;

(3) the component or apparatus constitutes a material part of the invention;

(4) [Citrix Systems] is aware of the ['796 and '011 patents] and knows that the products or processes for which the component or apparatus has no other substantial use may be covered by a claim of the ['796 or '011] patent or may satisfy a claim of the ['796 or '011] patent under the doctrine of equivalents; and

(5) that use directly infringes the claim.

In order to prove contributory infringement, [SSL] must prove each of the above requirements is met. This proof of each requirement must be by a preponderance of the evidence, i.e., that it is more likely than not that each of the above requirements is met.

[SSL] argues that [Citrix Online] is liable for contributory infringement by contributing to the direct infringement of the ['796 patent] by Citrix Online's customers.  As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

[Citrix Online] is liable for contributory infringement of a claim if [SSL] proves by a preponderance of the evidence:

(1) [Citrix Online] sells, offers to sell, or imports within the United States a component of a product, or apparatus for use in a process during the time the ['796 patent] is in force;

(2) the component or apparatus has no substantial, non[-]infringing use;

(3) the component or apparatus constitutes a material part of the invention;

(4) [Citrix Online] is aware of the ['796 patent] and knows that the products or processes for which the component or apparatus has no other substantial use may be covered by a claim of the ['796] patent or may satisfy a claim of the ['796] patent under the doctrine of equivalents; and

(5) that use directly infringes the claim.

In order to prove contributory infringement, [SSL] must prove each of the above requirements is met.  This proof of each requirement must be by a preponderance of the evidence, i.e., that it is more likely than not that each of the above requirements is met.

**CITRIX'S POSITION:  As with the previous instruction, Citrix objects to SSL's proposed construction because it improperly conflates the two different defendants, Citrix Systems, Inc. and Citrix Online, LLC.  Again, the problem with SSL's instruction is that it treats the parent and subsidiary as a single entity for purposes of imputing knowledge from the parent to the subsidiary.  This contrary to law:  "Before a parent's knowledge will be imputed to its subsidiary, it must be shown that the parent's employees informed of the infringement were under a duty to report that information to the subsidiary."  *See DC Comics, Inc. v. Powers*, 465 F. Supp. 843, 849 n. 8**

**(SDNY 1978).  Citrix's proposed instruction mirrors the language of the FCBA model and will assist the jury.  Accordingly, Citrix's proposed instruction should be adopted.**

**JURY INSTRUCTION 3.8:  WILLFUL INFRINGEMENT**

SSL'S PROPOSED INSTRUCTION

In this case**, [**SSL] argues both that [Citrix] infringed and, further that [Citrix] infringed willfully.

If you have decided that [Citrix] has infringed [a valid claim of either the '796 or '011 patents]

you must go on and address the additional issue of whether or not this infringement was willful.

Willfulness requires you to determine by clear and convincing evidence that [Citrix] acted

recklessly.  To prove that [Citrix] acted recklessly, [SSL] must prove two things by clear and

convincing evidence:  The first part of the test is objective:  the patent holder must persuade you

that [Citrix] acted despite a high likelihood that [Citrix]'s actions infringed a valid and

enforceable patent.  In making this determination, you may not consider [Citrix]'s state of mind.

Legitimate or credible defenses to infringement, even if not ultimately successful, demonstrate a

lack of recklessness.  Only if you conclude that [Citrix]'s conduct was reckless do you need to

consider the second part of the test.  The second part of the test does depend on the state of mind

of [Citrix].  [SSL] must persuade you that [Citrix] actually knew or should have known that its

actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.

To determine whether [Citrix] had this state of mind, consider all facts which may include, but

are not limited, to:

> (1) Whether or not [Citrix] acted in accordance with the standards of commerce for its
>
>     industry;
>
> (2) Whether or not [Citrix] intentionally copied a product of [V-One's or SSL]'s that is
>
>     covered by the ['796 or '011] patent;
>
> (3) Whether or not there is a reasonable basis to believe that [Citrix] did not infringe or
>
>     had a reasonable defense to infringement;

(4) Whether or not [Citrix] made a good-faith effort to avoid infringing the ['796 and

'011 patents, for example, whether Citrix attempted to design around the '796 and

'011 patents; and]

(5) Whether or not [Citrix] tried to cover up its infringement.


[None of these factors are determinative, and the list of factors is not an exhaustive list of

things you should consider.  Your determination of willfulness should incorporate the totality of

the circumstances.[17]]


**SSL'S POSITION:  Because "V-One" was a prior owner of the patents in suit, and because it made products, whether or not Citrix copied those products is relevant for willfulness.  In addition, the patents themselves reference implementation through V-One's SmartGate product.**


[CITRIX'S PROPOSED INSTRUCTION]

In this case**,** [SSL] argues both that [Citrix Systems] infringed and, further that [Citrix

Systems] infringed willfully.  If you have decided that [Citrix Systems] has infringed [a valid

claim of either the '796 or '011 patents] you must go on and address the additional issue of

whether or not this infringement was willful.  Willfulness requires you to determine by clear and

convincing evidence that [Citrix Systems] acted recklessly.  To prove that [Citrix Systems] acted

recklessly, [SSL] must prove two things by clear and convincing evidence:  The first part of the

test is objective:  the patent holder must persuade you that [Citrix Systems] acted despite a high

likelihood that [Citrix Systems'] actions infringed a valid and enforceable patent.  In making this

determination, you may not consider [Citrix Systems'] state of mind.  Legitimate or credible

---

[17] <u>Authority</u>:   The Federal Circuit Bar Association, *Model Patent Jury Instructions*, 3.8 (last edited Feb. 2012) (modified); *Convolve, Inc. v. Dell, Inc., et al.*, Civil Action No. 2:08-CV-244 (CE) (E.D. Tex. 2011); *In re Seagate Tech., LLC,* 497 F.3d 1360 (Fed. Cir. 2007).

defenses to infringement, even if not ultimately successful, demonstrate a lack of recklessness. Only if you conclude that [Citrix Systems'] conduct was reckless do you need to consider the second part of the test.  The second part of the test does depend on the state of mind of [Citrix Systems].  [SSL] must persuade you that [Citrix Systems] actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.  To determine whether [Citrix Systems] had this state of mind, consider all facts which may include, but are not limited, to:

    (1) Whether or not [Citrix Systems] acted in accordance with the standards of commerce for its industry;

    (2) Whether or not [Citrix Systems] intentionally copied a product of [SSL's] that is covered by the ['796 or '011] patent;

    (3) Whether or not there is a reasonable basis to believe that [Citrix Systems] did not infringe or had a reasonable defense to infringement;

    (4) Whether or not [Citrix Systems] made a good-faith effort to avoid infringing the ['796 and '011 patents, for example, whether Citrix Systems attempted to design around the '796 and '011 patents; and

    (5) Whether or not [Citrix Systems] tried to cover up its infringement.

In this case, [SSL] argues both that [Citrix Online] infringed and, further that [Citrix Online] infringed willfully.  If you have decided that [Citrix Online] has infringed [a valid claim of either the '796 or '011 patents] you must go on and address the additional issue of whether or not this infringement was willful.  Willfulness requires you to determine by clear and convincing evidence that [Citrix Online] acted recklessly.  To prove that [Citrix Online] acted recklessly, [SSL] must prove two things by clear and convincing evidence:  The first part of the test is

objective:  the patent holder must persuade you that [Citrix Online] acted despite a high

likelihood that [Citrix Online's] actions infringed a valid and enforceable patent.  In making this

determination, you may not consider [Citrix Online's] state of mind.  Legitimate or credible

defenses to infringement, even if not ultimately successful, demonstrate a lack of recklessness.

Only if you conclude that [Citrix Online's] conduct was reckless do you need to consider the

second part of the test.  The second part of the test does depend on the state of mind of [Citrix

Online].  [SSL] must persuade you that [Citrix Online] actually knew or should have known that

its actions constituted an unjustifiably high risk of infringement of a valid and enforceable

patent.  To determine whether [Citrix Online] had this state of mind, consider all facts which

may include, but are not limited, to:

(1)  Whether or not [Citrix Online] acted in accordance with the standards of commerce
     for its industry;

(2)  Whether or not [Citrix Online] intentionally copied a product of [SSL's] that is
     covered by the ['796 or '011] patent;

(3)  Whether or not there is a reasonable basis to believe that [Citrix Online] did not
     infringe or had a reasonable defense to infringement;

(4)  Whether or not [Citrix Online] made a good-faith effort to avoid infringing the ['796
     and '011 patents, for example, whether Citrix Systems attempted to design around the
     '796 and '011 patents; and]

(5)  Whether or not [Citrix Online] tried to cover up its infringement.

**CITRIX'S POSITION: Citrix objects to SSL's proposed construction
because it improperly conflates the two separate defendants, Citrix Systems,
Inc. and Citrix Online, LLC.  SSL's instruction improperly imputes the
alleged knowledge of the parent to subsidiary.  This is contrary to law:
"Before a parent's knowledge will be imputed to its subsidiary, it must be**

shown that the parent's employees informed of the infringement were under a duty to report that information to the subsidiary."  *See DC Comics, Inc. v. Powers*, 465 F. Supp. 843, 849 n. 8 (SDNY 1978).  Citrix's proposed instruction mirrors the language of the FCBA model and will assist the jury. Accordingly, Citrix's proposed instruction should be adopted.

Citrix also objects to SSL's insertion of "V-One" because it is irrelevant as a matter of law and not supported by the FCBA model patent jury instructions.  The patent holder is "SSL" and the issue of "whether or not Citrix intentionally copied a product of V-One that is covered by the '796 or '011 patents" is irrelevant for the issue of willfulness.  Accordingly, SSL's inserted language should not be adopted.

**JURY INSTRUCTION 4.1:  INVALIDITY-BURDEN OF PROOF**

[SSL PROPOSED INSTRUCTION]

I will now instruct you on the rules you must follow in deciding whether or not [Citrix] has proven that [the asserted] claims [ ] of the ['796 and '011 patents] patent are invalid.  To prove that any claim of a patent is invalid, [Citrix] must persuade you by clear and convincing evidence, i.e., you must be left with a clear conviction that the claim is invalid.

> **SSL'S POSITION:  Again, SSL's Instruction mirrors the Federal Circuit Bar Association's model instructions word-for-word.  All the while, Citrix proposes an argumentative and leading jury instruction that will unfairly confuse the jury into believing any evidence not before the USPTO should be given extraordinary weight.  There is no such distinction made under the law – the presumption of validity set forth in 35 U.S.C. § 282 ("[e]ach claim of a patent . . . shall be presumed valid") applies regardless of whether or not the prior art was before the patent office.  As such, Citrix's proposed instruction should not be adopted.**

[CITRIX PROPOSED INSTRUCTION]

I will now instruct you on the rules you must follow in deciding whether or not [Citrix] has proven that claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent are invalid.  To prove that any claim of a patent is invalid, Citrix must persuade you by clear and convincing evidence, i.e., you must be left with a clear conviction that the claim is invalid.

[Patent invalidity is a defense to patent infringement.  Even though the PTO examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.  As you consider these issues, remember that the Citrix bears the burden of proving] by clear and convincing evidence [that the claims are invalid].

38

[In determining whether Citrix has proven by clear and convincing evidence that the asserted claims are invalid, you may consider that you have heard evidence that the PTO had no opportunity to evaluate before granting the '796 and '011 patents.  You should determine whether the evidence before you is materially new, and if so, you consider that fact when determining whether Citrix has proven their invalidity defense by clear and convincing evidence.

Citrix contends the asserted claims of the '796 patent are invalid because they are anticipated and because they are obvious.  Citrix contends that the asserted claims of the '011 patent are also invalid because they are anticipated and because they are obvious.  Citrix also contends that claims 2 and 4 of the '011 patent are invalid because they fail to meet the written description requirement.

In making your determination as to invalidity, you should consider each claim and each ground for invalidity separately.  I'm now going to instruct you on the invalidity issues that you will have to decide in this case.[18]]

 

      **CITRIX'S POSITION:  Citrix's proposed instruction mirrors the FCBA model, but also describes how patent invalidity is a defense to patent infringement.  It also provides necessary context and clarity to the jury of the scope of their responsibilities.  The instruction is neither argumentative nor leading as it merely describes the invalidity contentions in this case.  As such, Citrix's proposed instruction should be adopted.**

---

[18] <u>Authority</u>: Nat'l Jury Instruction Project, *Model Patent Jury Instructions*, (June 17, 2009), Instruction No. 5.1; Sample Patent Jury Charge of the Honorable Leonard Davis, Chief District Judge, http://www.txed.uscourts.gov/page1.shtml?location=info:judge&judge=7; *Convolve, Inc. v. Dell, Inc., et al.*, Civil Action No. 2:08-CV-244 (CE) (E.D. Tex. 2011)

**JURY INSTRUCTION 4.2a:  WRITTEN DESCRIPTION**

The patent law contains certain requirements for the part of the patent called the specification.  [Citrix] contends that [claims 2 and 4 of the '011] patent are invalid because the specification of the patent does not contain an adequate written description of the invention.  To succeed, [Citrix] must show by clear and convincing evidence that the specification fails to meet the law's requirements for written description of the invention.  In the patent application process, the applicant may keep the originally filed claims, or change the claims between the time the patent application is first filed and the time a patent is issued.  An applicant may amend the claims or add new claims.  These changes may narrow or broaden the scope of the claims.  The written description requirement ensures that the issued claims correspond to the scope of the written description that was provided in the original application.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed.  The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent application.  The full scope of a claim or any particular requirement in a claim need not be expressly disclosed in the original patent application if a person having ordinary skill in the field of technology of the patent at the

40

time of filing would have understood that the full scope or missing requirement is in the written

description in the patent application.[19]

---

[19] Authority:  The Federal Circuit Bar Association Model Patent Jury Instructions (4.2a) (last edited February 2012).

### 4.3a  PRIOR ART

Prior art may include items that were publicly known or that have been used or offered for sale, publications, or patents that disclose the claimed invention or elements of the claimed invention.  To be prior art, the item or reference must have been made, known, used, published, or patented before [August 26, 1997].  However, prior art does not include a publication that describes the inventor's own work and was published less than one year before the date of invention.

For the claim to be invalid because it is not new, [Citrix] must show that all of the requirements of that claim were present in a single previous device or method that was known of, used, or described in a single previous printed publication or patent.  We call these things "anticipating prior art."  To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, either stated expressly or implied to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention.]

**4.3b ANTICIPATION**

[SSL'S PROPOSED INSTRUCTION]

In order for someone to be entitled to a patent, the invention must actually be "new" and the inventor must not have lost her or his rights by delaying the filing of an application claiming the invention. In general, inventions are new when the identical [product or process] has not been made, used, or disclosed before.  Anticipation must be determined on a claim-by-claim basis.

[Citrix] contends that claim [7] of the ['011] patent is invalid because the claimed invention is anticipated or because [SSL] lost the right to obtain a patent.  [Citrix] must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claim is invalid.

Here is a list of ways that [Citrix] can show that a patent claim was not new or that the patentee lost the right to patent the claim:

(1)     An invention is not new if it was known to or used by others in the United States before the [August 26, 1997]].  An invention is known when the information about it was reasonably accessible to the public on that date.

(2)     An invention is not new if it was already patented or described in a printed publication, anywhere in the world before the [August 26, 1997]. A description is a "printed publication" only if it was publicly accessible [(*i.e.*, **"catalogued or indexed in a meaningful way"[20])**.]  .

(3)     [SSL] has lost her or his rights if the claimed invention was already patented or described in a printed publication, anywhere in the world by [SSL] or anyone else, more than a year before [August 26, 1997], which is the effective filing date of the application for the ['796 and '011] patents.  An invention was patented by another if the other patent describes the same invention claimed by [SSL] to a person having ordinary skill in the technology.

(4)     [SSL] has lost her or his rights if the claimed invention was publicly used, sold, or offered for sale in the United States more than one year before [August 26, 1997], which is the effective filing date of the application for the ['796 and '011] patents.  An

---

[20]  *SRI Int'l, Inc. v. Internet Sec. Sys. Inc.*, 511 F.3d 1186, 1197 (Fed. Cir. 2008).

invention was publicly used when it was either accessible to the public or commercially exploited.  An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, i.e., a description to one having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice.

**SSL'S POSITION:  SSL's proposed instruction mirrors the language of the FCBA, except for the addition of one clarifying clause: (i.e., "catalogued or indexed in a meaningful way."  This clause is necessary to clarify when an Internet resource should be deemed publicly accessible.  The added language is quoted from SRI Int'l, Inc. v. Internet Sec. Sys. Inc., 511 F.3d 1186, 1197 (Fed. Cir. 2008), an authoritative case on the subject.**

CITRIX'S PROPOSED INSTRUCTION

In order for someone to be entitled to a patent, the invention must actually be "new" and the inventor must not have lost her or his rights by delaying the filing of [the] application claiming the invention.  In general, inventions are new when the identical product or process has not been made, used, or disclosed before.  Anticipation must be determined on a claim-by-claim basis.

Citrix contends that claim 7 of the '011 patent is invalid because the claimed invention is anticipated or because SSL lost the right to obtain a patent.  Citrix must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claim is invalid.        Here is a list of ways that Citrix can show that claim 7 of the '011 Patent was not new or that the patentee lost the right to patent the claim:

(1)        An invention is not new if it was known to or used by others in the United States before the August 26, 1997.  An invention is known when the information about it was reasonably accessible to the public on that date.

(2)        An invention is not new if it was already patented or described in a printed publication, anywhere in the world before the August 26, 1997.  A description is a "printed publication" only if it was publicly accessible.

(3)      SSL has lost her or his rights if the claimed invention was already patented or described in a printed publication, anywhere in the world by SSL or anyone else, more than a year before August 26, 1997, which is the effective filing date of the application for the '796 and '011 patents.  An invention was patented by another if the other patent describes the same invention claimed by SSL to a person having ordinary skill in the technology.

(4)      SSL has lost her or his rights if the claimed invention was publicly used, sold, or offered for sale in the United States more than one year before August 26, 1997, which is the effective filing date of the application for the '796 and '011 patents.  An invention was publicly used when it was either accessible to the public or commercially exploited.  An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, i.e., a description to one having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice.[21]]

> **CITRIX'S POSITION:  First, despite SSL's assertion, its proposed instruction does not "mirror" the language of the FCBA.  Indeed, SSL adds unsupported attorney argument that is legally incorrect, prejudicial, and confusing to the jury.  The standard for public accessibility is set forth in *In re Klopfenstein*, 380 F.3d 1345, 1347-52 (Fed. Cir. 2004) ("there are many ways in which a reference may be disseminated to the interested public" and "distribution and indexing are not the only factors to be considered in the § 102(b) 'printed publication' inquiry").  Second, Citrix's proposed instruction mirrors the language of the FCBA model word-for-word and  will assist the jury.  Accordingly, Citrix's proposed instruction should be adopted.**

---

[21] Authority:  35 U.S.C. § 102; The Federal Circuit Bar Association Model Patent Jury Instructions (4.3b) (last edited February 2012); *In re Klopfenstein*, 380 F.3d 1345, 1347-52 (Fed. Cir. 2004); *Stamps.com, Inc. v. Endicia, Inc.*, 437 Fed.Appx. 897, 903 (Fed. Cir. 2011); *Orion IP, LLC v. Hyundai Motor America*, 605 F.3d 967, 974 (Fed. Cir. 2010).

# JURY INSTRUCTION 4.3c:  OBVIOUSNESS

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

**[Citrix contends that all of the asserted claims of the '796 and '011 patents are invalid as obvious.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time the application was filed which in this case is August 26, 1997.  This means that even if all the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim, a person of ordinary skill in the field, who knew about all of the prior art, would have come up with the claimed invention.]**

> **SSL'S POSITION:  Citrix proposes an entire paragraph that is not included in the FCBA model jury instructions and should therefore be excluded.  The proposed paragraph adds argumentative and prejudicial language.  Further, the added clause "would have come up with the claimed invention" is vague and that terminology has never been adopted by this Court or the Federal Circuit as a proper obviousness standard.**

> **CITRIX'S POSITION:  Citrix's proposed paragraph should be adopted because it merely provides context for the obviousness issue to be decided by the jury.  The paragraph is not argumentative or prejudicial in any way, but rather a statement of undisputed facts specific to this particular case.  As such, Citrix's proposed instruction should be adopted.**

[Citrix] may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art [as of August 26, 1997].

46

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field that someone would have had [as of August 26, 1997], the scope and content of the prior art, and any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness.  Most, if not all, inventions rely on building blocks of prior art.  In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that [as of August 26, 1997] there was a reason that would have prompted a person having ordinary skill in the field to combine the known elements in a way [that] the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements [in the] claimed [inventions]; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combination[] of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces.  To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success.  Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention was obvious, consider each claim separately.  Do not use hindsight, i.e., consider only what was known [as of August 26, 1997].

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention and afterwards that may shed light on the obviousness or not of the claimed invention, such as:

47

(1) Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market pressure, advertising or similar activities);

(2) Whether the invention satisfied a long-felt need;

(3) Whether others had tried and failed to make the invention;

(4) Whether others invented the invention at roughly the same time;

(5) Whether others copied the invention;

(6) Whether there were changes or related technologies or market needs contemporaneous with the invention;

(7) Whether the invention achieved unexpected results;

(8) Whether others in the field praised the invention;

(9) Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

(10) Whether others sought or obtained rights to the patent from the patent holder; and

(11) Whether the inventor proceeded contrary to accepted wisdom in the field.[22]

---

[22] Authority:   35 U.S.C.  §  103   The Federal Circuit Bar Association Model Patent Jury Instructions (4.3c) (last edited February 2012) (modified); *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007).

**JURY INSTRUCTION 4.3c(i): LEVEL OF ORDINARY SKILL**

In deciding what the level of ordinary skill in the field is, you should consider all the evidence introduced at trial, including but not limited to:   (1) the levels of education and experience of the inventor[s] and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.[23]

**JURY INSTRUCTION 4.3c(ii) SCOPE AND CONTENT OF THE PRIOR ART**

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art.

The scope and content of prior art for deciding whether the invention was obvious includes prior art in the same field as the claimed invention, regardless of the problem addressed by the item or reference, and prior art from different fields that a person of ordinary skill in the art using common sense might combine if familiar so as to solve the problem, like fitting together the pieces of a puzzle.

---

[23] Authority:  The Federal Circuit Bar Association Model Patent Jury Instructions (4.3c(i)) (last edited February 2012).

## JURY INSTRUCTION 6.1:  DAMAGES - INTRODUCTION

If you find that [Citrix] infringed any valid claim of the ['796 or '011 patents], you must then consider what amount of damages to award to [SSL].   I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

The damages you award must be adequate to compensate [SSL] for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put [SSL] in approximately the same financial position that it would have been in had the infringement not occurred.

[SSL] has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that [SSL] establishes that it more likely than not suffered. **[While SSL is not required to prove damages with mathematical precision, it must prove them with reasonable certainty.  The patent owner is not entitled to damages that are remote or speculative.]**

> **SSL'S POSITION:  Citrix proposes two sentences that are not included in the FCBA model jury instructions and should therefore be excluded.  These sentences are highlighted within the instruction.  The proposed material adds argumentative and prejudicial language.**

> **CITRIX'S POSITION:  The additional two sentences proposed by Citrix are taken directly from the FCBA Committee Comments and Authorities of Instruction 6.1, which includes additional and alternative issues for consideration.  As indicated in the Comments and Authorities, the proposed language is supported by *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1350 (Fed. Cir. 1991) and *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340.  The additional language is not argumentative or prejudicial, rather it will assist the jury in understanding the scope of their responsibilities.**

There are different types of damages that [SSL] may be entitled to recover.  In this case, [SSL] seeks a reasonable royalty.  A reasonable royalty is defined as the money amount [SSL or

the predecessor patent owner] and [Citrix] would have agreed upon as a fee for use of the

invention at the time prior to when infringement began.

I will give more detailed instructions regarding damages shortly.  Note, however,  that

[SSL] is entitled to recover no less than a reasonable royalty for each infringing sale or use.[24]

---

[24] <u>Authority</u>:  The Federal Circuit Bar Association Model Patent Jury Instructions (6.1) (last
edited February 2012); Committee Comments and Authorities, citing *Lucent Techs., Inc. v.
Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009) (vacating and remanding jury award as
excessive); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360 (Fed. Cir. 1991).

## JURY INSTRUCTION 6.6:  REASONABLE ROYALTY – DEFINITION

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.

**[A reasonable royalty can be a single lump sum amount, or it can be a percentage properly attributed to the infringing activity.  A lump sum amount is a royalty payment where the patent owner receives a single, upfront payment.  A running royalty is a royalty where the patent owner collects ongoing, per unit, or percentage payments over a period of time.  If a percentage is chosen as the royalty method, SSL must further prove the number of direct acts of infringement of the Asserted Claims because the amount of damages is limited by the number of specific instances of direct infringement.]**

**SSL'S POSITION:  Citrix proposes a paragraph that is not included in the FCBA model jury instructions and should therefore be excluded.  The proposed paragraph is contrary to established precedent and it adds argumentative and highly prejudicial language.  Citrix seeks to add a burden for SSL to "prove the number of direct acts of infringement of the Asserted Claims" despite the fact that Citrix itself does not even track the number of times its customers use the infringing online computer software products. Citrix's extraordinary requirement is contrary to law.** *See Symantec Corp. v. Computer Associates Intern., Inc.***, 522 F.3d 1279, 1293 (Fed. Cir. 2008) (vacating summary judgment of no inducing infringement and ruling that where patentee showed that there was no use for the accused product other than to infringe the claimed method).**

**CITRIX'S POSITION:  The jury in this matter will be asked to understand and consider two types of reasonable royalty structures -- running royalty and lump sum -- the first three sentences of the disputed language provide a neutral explanation to jury regarding the types of available payment structures.  The proposed language is supported by law (***Interactive Pictures Corp.  v.  Infinite Pictures, Inc***., 274 F.3d 1371, 1384 (Fed.  Cir.  2001) and is in no way  argumentative or prejudicial.  To the contrary the proposed language will be helpful to the jury.  The last sentence recognize the legal precedent that "[a] defendant's liability for indirect infringement must relate**

**to the identified instances of direct infringement."** *Dynacore Holdings Corp.*
*v. U.S. Philips Corp.*, **363 F.3d 1263, 1274 (Fed. Cir. 2004);** *see also ACCO*
*Brands, Inc. v. ABA Locks Mfr. Co., Ltd.*, **501 F.3d 1307, 1312 (Fed. Cir. 2007)**
**(reversing denial of judgment of a matter of law as to jury verdict of inducement**
**where patent owner "failed to point to specific instances of direct infringement").**
.

In considering this hypothetical negotiation, you should focus on what the expectations of the

patent holder and the infringer would have been had they entered into an agreement at that time, and

had they acted reasonably in their negotiations. In determining this, you must assume that both

parties believed the patent was valid and infringed and the patent holder and infringer were willing to

enter into an agreement. The reasonable royalty you determine must be a royalty that would have

resulted from the hypothetical negotiation, and not simply a royalty either party would have

preferred. Evidence of things that happened after the infringement first began can be considered in

evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty

would have resulted from a hypothetical negotiation. Although evidence of the actual profits an

alleged infringer made may be used to determine the anticipated profits at the time of the

hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the

alleged infringer made.

**[In this case, the parties agree that the hypothetical negotiation for the licensing of**

**the '796 patent would have taken place around June 2000 between V-One, the original**

**owner of the patents-in-suit and ExpertCity, the company that developed the GoTo**

**Services. The parties disagree on whether the hypothetical negotiation for the '796 patent**

**would have resulted in a lump sum or a running royalty.**

**In this case, the parties agree that the hypothetical negotiation for the licensing of**

**the '011 patent would have taken place in late 2004 between V-One, the original owner of**

**the patents-in-suit and Citrix. The parties agree that the hypothetical negotiation**

regarding the '011 patent would have resulted in a lump sum.[25]]

    **JOINT  POSITION:  The parties do not dispute the addition of this bracketed language.**

---

[25]  <u>Authority:</u>  The Federal Circuit Bar Association Model Patent Jury Instructions (6.6) (last edited February 2012); *Interactive Pictures Corp.  v.  Infinite Pictures, Inc.*, 274 F.3d 1371, 1384 (Fed.  Cir.  2001) (noting that court has upheld damages awards based on lump-sum royalties); *Stickle v.  Heublein, Inc.*, 716 F.2d 1550, 1563 (Fed.  Cir.  1983); *Dynacore Holdings Corp.  v.  U.S.  Philips Corp.*, 363 F.3d 1263, 1274 (Fed.  Cir.  2004) ("A defendant's liability for indirect infringement must relate to the identified instances of direct infringement.").

**JURY INSTRUCTION 6.7:  REASONABLE ROYALTY FACTORS**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1) The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2) The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4) The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5) The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6) The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7) The duration of the patent and the term of the license.

(8) The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10) The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11) The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13) The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14) The opinion and testimony of qualified experts.

(15) The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

**[In addition to all of these other factors, you may all consider the existence of non-infringing alternatives as one factor in determining the reasonable royalty.  Non-infringing alternatives exist where the Accused Products faced competition from a wide variety of devices that were on the market or sold for part or all of the accounting period.  A non-infringing alternative must possess the beneficial characteristics of the patent device or method.  If purchasers are motivated to purchase because of the particular features available only from the patent product, as opposed to the general functionality, products without such features – even if otherwise competing in the marketplace – would not be acceptable non-infringing substitutes.[26]]**

---

[26] Authority: The Federal Circuit Bar Association Model Patent Jury Instructions (6.7) (last edited February 2012); Nat'l Jury Instruction Project, *Model Patent Jury Instructions*, (June 17, 2009) (modified*); SRI Int'l Inc. v. Internet Security Sys., Inc.*, No. 04-1199-SLR, 2011 U.S. Dist.

**SSL'S POSITION: Citrix proposes a paragraph that is not included in the FCBA model jury instructions and should therefore be excluded.  The proposed paragraph is contrary to established precedent, which would allow Citrix to place a special emphasis on one potential factor over others, and the paragraph also adds argumentative and prejudicial language.  Further, even if acceptable non-infringing alternatives may be part of the *Georgia-Pacific* analysis, their consideration is subsumed within the 15 factors listed above and should not be separately set forth.  Finally, any instruction on "acceptable" noninfringing alternatives must fully explain that it is Citrix's burden to establish any given product as an acceptable alternative, including proving that Citrix has the capability (equipment, know-how, and personnel) to actually implement such an alternative and that the alternative would have been acceptable to Citrix's customers.**

**CITRIX'S POSITION: SSL provides no legal authority to support its objection.  SSL concedes that "non-infringing alternatives" are relevant to a reasonably royalty determination.  As such, the additional paragraph merely provides necessary clarity to the jury concerning the relevance of non-infringing alternatives to reasonable royalties.  The paragraph is neither argumentative nor prejudicial.  The FCBA model does not expressly address the issue of non-infringing alternatives and given that this is an issue that the jury will be asked to consider, Citrix requests that the Court include the propose neutral instruction that sets forth the standard by which the issue should be considered.  The proposed language states the proper legal standard for the jury to consider.**

---

LEXIS 125550, at *5-7 (D. Del. Oct. 31, 2011); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991).

**JURY INSTRUCTION \_\_\_:  APPORTIONMENT / ENTIRE MARKET VALUE [ADDED**

**INSTRUCTION]**

[Damages must be apportioned to the value contributed by the invention; that is,

SSL must separate or apportion the damages between the portion of the accused product

that is the patented feature and the unpatented features of the accused products.

Therefore, except as specifically provided in this instruction, in applying the fifteen factors

I've just stated, you may only consider as the royalty base only the portion of the value of

the entire product that is associated with the patented feature, as compared to the portion

of the value associated with other features, such as unpatented elements, or features or

improvements developed by the accused infringer.  You may not consider the entire value

of a product containing non-patented elements unless you find (1) that the patented feature

is functionally integrated with the non-patented product, and (2) that the patented feature

is the basis for customer demand for the sale of the entire product.[27]]

> **SSL'S POSITION: This section was "ADDED" by Citrix and it is not part of**
> **the Federal Circuit Bar Association's model jury instructions.  As such, the**
> **entire section should be struck pursuant to this Court's Order to follow those**
> **instructions.  Further, the contents are contrary to established precedent.**
>
> **CITIX'S POSITION: SSL provides no legal authority to support its**
> **objection, nor does it offer a counter-proposal.  In contrast, Citrix has**
> **provided ample legal support  for the instruction in the references cited in**
> **the footnote to the proposed instruction.  Furthermore, Citrix is being**

---

[27] Authority: *See* 35 U.S.C.  284 (authorizing "a reasonable royalty <u>for the use made of the invention</u> by the infringer") (emph.  added); *Lucent Techs., Inc.  v.  Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed.  Cir.  2009) ("For the entire market value rule to apply, the patentee must prove that 'the  patent-related feature is the 'basis for customer demand.'"); *see also Garretson v. Clark*, 111 U.S.  120, 121 (1884) ("When a patent is for an improvement, and not for an entirely new machine… the patentee must show in what particulars his improvement has added to the usefulness of the machine… <u>[T]he patentee…must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features</u>; or he must show … that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine…is properly and legally attributable to the patented feature.") (emph. added).

**consistent with the Court's instruction and with te FCBA model in suggesting a well-founded additional instruction that is not included in the FCBA but which is fully supported by the law and relevant to this case. Accordingly, Citrix's proposed instruction should be adopted.**

## JURY INSTRUCTION 6.8:  WHEN DAMAGES BEGIN

**SSL's PROPOSED INSTRUCTION**

In determining the amount of damages, you must determine when the damages began.

For method claim 27 of the '796 patent and method claim 7 of the '011 patent, damages commence on the date that [Citrix Systems and Citrix Online have] first started to infringe each claim.[28]

[If you find that SSL or V-One does not sell a product covered by the '796 or '011 patent damages begin without the requirement for actual notice.  If you find that the '796 and '011 patents were granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began.[29]  If you find that SSL or V-One never sold a product covered by the '796 or '011 patent, you do not need to consider the remaining instructions within this section.]

For claims 2 and 4 of the '011 patent, damages commence on the date that [Citrix Systems and Citrix Online have] both infringed and been notified of the alleged infringement of the ['796 and '011 patents].

If you find that [SSL, or V-One the predecessor owner of the patents in suit, sold] a product that included the claimed invention, you must determine whether [SSL or V-One]

---

[28]  As stated in the FCBA Model Jury Instructions:

In determining when damages begin with regard to method claims, there is no notice requirement. 35 U.S.C. § 287(c)(2)(F); *see Am. Med. Sys.*, 6 F.3d at 1538 ("The law is clear that the notice provisions of section 287 do not apply where the patent is directed to a process or method.").  Accordingly, the calculation of damages for infringement of method claims should begin as of the date the patent issued or the date the infringement began, whichever was first.  *Crystal Semiconductor*, 246 F.3d at 1353.

[29]  Authority:  The Federal Circuit Bar Association Model Patent Jury Instructions (6.7) (last edited February 2012).

"marked" that product with the patent number. "Marking" is placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the products that include the patented invention. [SSL] has the burden of establishing that [SSL and V-One] substantially complied with the marking requirement.  This means [SSL] must show that [SSL or V-One] marked substantially all of the products it [made, offered for sale, or sold under the '796 and '011] patents.

[If SSL or V-One have] not marked that product with the patent number, you must determine the date that [Citrix] received actual notice of the ['796 and '011 patents] and the specific product alleged to infringe.  Actual notice means that [SSL] communicated to [Citrix] a specific charge of infringement of the ['796 and '011 patents] by a specific accused product or device.  The filing of the complaint in this case qualified as actual notice, so the damages period begins no later than the date the complaint was filed.  However, [SSL] contends that Citrix received actual notice of the ['796 and '011 patents] when Citrix entered into contracts with V-One, the original owner of the patents.  [SSL] has the burden of establishing that it is more probable than not [Citrix] received notice of infringement [prior to the filing of the Complaint on April 11, 2008].

**SSL'S POSITION: Citrix's proposed instruction will confuse the jury. Citrix's proposed instruction ignores the comment in the FCBA model jury instructions that states:  "In determining when damages begin with regard to method claims, there is no notice requirement. 35 U.S.C. § 287(c)(2)(F); *see Am. Med. Sys.*, 6 F.3d at 1538 ('The law is clear that the notice provisions of section 287 do not apply where the patent is directed to a process or method.')."  As such, it would be legally erroneous to instruct the jury that actual notice is required for the two undisputed "method claims" in suit, specifically, claim 27 of the '796 patent and claim '7 of the '011 patent. SSL's added instruction reflects the correct legal standard for method claims.  Further, the only claim asserted for the '796 patent is a method claim.  SSL also contends that Citrix received actual notice of the patents in suit from contracts it entered into with a prior owner of the patents in suit, and SSL's other proposed change reflects this issue.  Finally, because neither**

**party asserts that SSL or V-One made any product covered by the claims in suit, SSL's instruction and ordering is proper.**

## CITRIX'S PROPOSED INSTRUCTION

In determining the amount of damages, you must determine when the damages began. Damages commence on the date that [Citrix Systems and Citrix Online have] both infringed and been notified of the alleged infringement of the ['796 and '011 patents but in no event can damages begin earlier April 11, 2002].

If you find that [SSL, V-One the predecessor owner of the patents in suit,  or any licensees sold] a product that included the claimed invention, you must determine whether [SSL, V-One or any licensees] "marked" that product with the patent number. "Marking" is placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the products that include the patented invention. [SSL] has the burden of establishing that [SSL, V-One and any licensees] substantially complied with the marking requirement. This means [SSL] must show that [SSL and V-One] marked substantially all of the products it [made, offered for sale, or sold under the '796 and '011 patents and that [SSL] made reasonable efforts to ensure that its licensees who made, offered for sale, or sold products under the ['796 or '011 ] patent marked the products.

[If SSL, V-One or its licensees have] not marked that product with the patent number, you must determine the date that [each of Citrix Systems and Citrix Online] received actual notice of the ['796 and '011 patents] and the specific product alleged to infringe. Actual notice means that [SSL] communicated to [each of Citrix Systems and Citrix Online] a specific charge of infringement of the ['796 and '011 patents] by a specific accused product or device. The filing of the complaint in this case qualified as actual notice, so the damages period begins no later than

[April 11, 2008].  [SSL] has the burden of establishing that it is more probable than not [Citrix]

received notice of infringement [prior to the filing of the Complaint on April 11, 2008].

[If you find that SSL and V-One and licensee do does not sell a product covered by the

'796 or '011 patent damages begin without the requirement for actual notice. If you find that the

'796 and '011 patents were granted before the infringing activity began, damages should be

calculated as of the date you determine that the infringement began [but in no event earlier than

April 11, 2002].[30]

**CITRIX'S POSITION: First, Citrix's proposed instruction mirrors the language of the FCBA model.  Citrix objects because SSL attempts to add language that is unnecessary and incorrect as a matter of law.  "Where a patent contains both method and apparatus claims, and there is a tangible item by which notice of the asserted method can be given, the patentee must mark the tangible item to comply with the Marking statute, 35 U.S.C. § 287." *Halliburton Services v. Smith Int'l Inc.*, 317 F. Supp. 2d 719, 725 (E.D. Tex. 2004) (citing *Am. Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538-39 (Fed. Cir. 1993)).  This is true even when only a method claim is asserted in litigation under the patent.  *See Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 434 F. Supp. 2d 257, 263 (S.D.N.Y 2006) (holding that "plaintiffs were required to comply with section 287(a) regardless of whether they assert only the method claims of the '784 patent.");** *see also* **Halliburton Servs. v. Smith Int'l Inc., 317 F. Supp. 2d 719, 725 (E.D. Tex. 2004) (relying on *Am. Med. Sys.* to require marking where plaintiff "distributed tangible items created by the [patent] methods and by which [it] could have given notice");** *Philips Elecs. N. Am. Corp. v. Contec Corp.*, **312 F. Supp. 2d 649, 651-52 (D. Del. 2004) (same);** *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, **No. Civ. A. 99-309, 2001 WL 66345, at \*4 (D. Del. Jan. 4, 2001) (same);** *Mosel Vitelic Corp. v. Micron Tech., Inc.*, **162 F. Supp. 2d 307, 2000 WL 1728351, at \*1 (D. Del. 2000) (finding "immaterial" the distinction between asserting only method claims and asserting both method and apparatus claims).  Second, SSL's instruction excludes the relevant language of the FCBA model that addresses the patent owners obligation to prove that its licensees marked the product, or that it undertook due diligence to ensure that the licensees marked.  Third, SSL's instruction improperly suggest that SSL is entitled to damages prior to April 11, 2002 in violation of the six year statute of limitations.  Finally, SSL inserts an inappropriate summary of its contentions into its proposed instructions which is argumentative and**

---

[30]   Authority:   The Federal Circuit Bar Association Model Patent Jury Instructions (6.7) (last edited February 2012).

**prejudicial.  Factual contentions should not be  included, but if they are then both parties should be able to provide a statement.**

The following instructions are proposed by Citrix for inclusion by the Court as part of general closing instructions, to be given before the substantive instructions above.

SSL'S POSITION GENERALLY

Citrix attempts to add approximately a dozen sections to these instructions that are not part of the Federal Circuit Bar Association's model jury instructions. Each of the Sections below that are denoted as "ADDED" are found nowhere in the FCBA's model instructions that the parties were directed to use as a model. Unless otherwise agreed, these "ADDED" instructions are unnecessary and should therefore be deleted from the instructions in this case. ]

CITRIX'S POSITION GENERALLY

SSL's only objection to a number of proposed instructions is that they are not included in the Federal Circuit Bar Association (FCBA) patent jury instructions model. SSL's position is baseless. At the May 21, 2012 pre-trial conference, the Court instructed the parties to use the FCBA patent jury instructions as a model. The FCBA model is a starting point -- not the end point -- because it does not include a number of instructions that provide necessary clarity to the jury of the scope of their responsibilities. For example, the FCBA model does not include general instructions, instructions on considering witness testimony, how to examine evidence, what is evidence, what is not evidence, expert witnesses, credibility of witnesses, stipulations, the parties and their contentions, claim interpretation, apportionment/entire market value, and deliberation instructions. In fact, SSL agrees that certain additional instructions, *i.e.*, the parties' and their contentions, provide "necessary clarity to the jury of the scope of their responsibilities" despite not being included in the FCBA model. The FCBA model should be tailored to this particular case, and thus, Citrix's proposed jury instructions will assist the jury and should be adopted.

65

## JURY INSTRUCTION:  DELIBERATION INSTRUCTIONS [ADDED
## INSTRUCTION]

Nothing that I may have said or done during the course of this trial is intended to indicate any view of mine as to which party should or should not win this case.  As I instructed you previously, you, the jury, you are the sole judge of the credibility of the testimony and the weight to be given the evidence.

These instructions are given to you as a whole, and you are not to single out one instruction alone as stating the law, but must consider the instructions as a whole.  You have heard all of the evidence in the case and you have heard the arguments of counsel.  The Court has given you the charge in this case.  In a few moments you will retire to the jury room, select one of your members to act as foreperson, and begin performing the function for which you have been chosen and for which you have been empaneled, in accordance with the oath you took as jurors.  You will remember that at the beginning of the trial, the Court admonished you not to discuss the case with each other until it was submitted to you.

Now is the time for you to begin your discussion and you certainly may express an opinion from the evidence that you have heard and use any reasonable means to persuade other members of the jury to your convictions and to your honest opinion.  You are to reach a verdict which speaks the truth, and which does justice to all parties without favor, bias, or prejudice in any particular way, either for or against any party to this lawsuit.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous.  But, do not surrender your honest conviction as to the weight or effect of the evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous. As soon as you have reached a verdict, you will let this fact be known to the officer who will be waiting upon you and he will report to the Court.

Your verdict will be in the form of Questions for you to answer. You will take these Questions to the jury room, and when you have reached a unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form and then advise the Security Officer that you have reached a verdict. During your deliberations you may have any of the exhibits which have been offered into evidence, and the Court will send them to you upon written request. If you desire further instructions, your foreperson may make this known in writing, and the Court will try to comply with your wishes. All communications with the Court must be in writing, but at no time should you indicate to the Court or to anyone else how the jury is divided in answering any particular Question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror concerning the testimony.

I now hand the Questions to the Security Officer and you will follow him to the jury room, select one of your members as foreperson, and begin your deliberations.[31]

---

[31] *Fiber Sys. Int'l v. Applied Optical Sys.*, Civil Action No. 2-06-CV-473 (TJW) (E.D. Tex. 2009); *Smith & Nephew, Inc. v. Arthrex, Inc.*, Civil Action No. 2-07-CV-335 (TJW) (E.D. Tex. 2010).

**SSL'S POSITION:  This section was "ADDED" by Citrix and it is not part of the Federal Circuit Bar Association's model jury instructions.  As such, the entire section should be struck pursuant to this Court's Order to follow those instructions.]**

**CITRIX'S POSITION:  SSL does not object to the substance of this instruction, nor does it offer a counter-proposal.  Citrix's proposed jury instructions are based on the FCBA's model, which expressly does not cover all necessary jury instructions, including non-patent jury instructions.  This proposed instruction is founded on appropriate legal authority, and accordingly, it should be adopted.**

**JURY INSTRUCTION___:  GENERAL INSTRUCTIONS** [ADDED instruction]

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.

In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them. [32]


**SSL'S POSITION:  This section was "ADDED" by Citrix and it is not part of the Federal Circuit Bar Association's model jury instructions.  As such, it should be struck pursuant to this Court's Order to follow those instructions.**


**CITRIX'S POSITION:  SSL does not object to the substance of this instruction, nor does it offer a counter-proposal.  Citrix's proposed jury instructions are based on the FCBA's model, which expressly does not cover all necessary jury instructions, including non-patent jury instructions.  This proposed instruction is founded on appropriate legal authority, and accordingly, it should be adopted.**

---

[32] Authority:  *i4i Ltd. P'Ship & Infrastructures for Info., Inc. v. Microsoft Corp.*, No. 07-cv-113 (E.D. Tex. (LED), Court's Charge (D.I.323)

**JURY INSTRUCTION___:   CONSIDERING WITNESS TESTIMONY** [ADDED

instruction**]**

You the jurors are the sole judges of the credibility of all witnesses and the weight and

effect of all evidence. By the Court allowing testimony or other evidence to be introduced over

the objection of an attorney, I did not indicate any opinion as to the weight or effect of such

evidence.

When the Court sustained an objection to a question addressed to a witness, the jury must

disregard the question entirely, and may draw no inference from the wording of it or speculate as

to what the witness would have testified to, if he or she had been permitted to answer the

question.

At times during the trial it was necessary for the Court to talk with the lawyers here at the

bench out of your hearing, or by calling a recess. We met because often during a trial something

comes up that does not involve the jury. You should not speculate on what was discussed during

such times.

In determining the weight to give to the testimony of a witness, you should ask yourself

whether there was evidence tending to prove that the witness testified falsely concerning some

important fact, or whether there was evidence that at some other time the witness said or did

something, or failed to say or do something, that was different from the testimony the witness

gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not

necessarily mean that the witness was not telling the truth as he or she remembers it, because

people may forget some things or remember other things inaccurately. So, if a witness has made

a misstatement, you need to consider whether that misstatement was an intentional falsehood or

simply an innocent lapse of memory; and the significance of that may depend on whether it has

70

to do with an important fact or with only an unimportant detail.[33]

**SSL'S POSITION:  This section was "ADDED" by Citrix and it is not part of the Federal Circuit Bar Association's model jury instructions.  As such, it should be struck pursuant to this Court's Order to follow those instructions.**

**CITRIX'S POSITION:  SSL does not object to the substance of this instruction, nor does it offer a counter-proposal.  Citrix's proposed jury instructions are based on the FCBA's model, which expressly does not cover all necessary jury instructions, including non-patent jury instructions.  This proposed instruction is founded on appropriate legal authority, and accordingly, it should be adopted.**

---

[33] <u>Authority</u>:  *i4i Ltd. P'Ship & Infrastructures for Info., Inc. v. Microsoft Corp.*, No. 07-cv-113 (E.D. Tex. (LED), Court's Charge (D.I.323)

**JURY INSTRUCTION___:  HOW TO EXAMINE THE EVIDENCE** [ADDED

INSTRUCTION]

Certain testimony in this case has been presented to you through a deposition.  A

deposition is the sworn, recorded answers to questions asked a witness in advance of the trial.

Under some circumstances, if a witness cannot be present to testify from the witness stand at

trial, the witness' testimony may be presented, under oath, in the form of a deposition.  Some

time before this trial, attorneys representing the parties in this case questioned this witness under

oath.  A court reporter was present and recorded the testimony.  This deposition testimony is

entitled to the same consideration and is to be judged by you as to credibility and weighed and

otherwise considered by you insofar as possible the same as if the witness had been present and

had testified from the witness stand in court.

While you should consider only the evidence in this case, you are permitted to draw such

reasonable inferences from the testimony and exhibits as you feel are justified in the light of

common experience.  In other words, you may make deductions and reach conclusions that

reason and common sense lead you to draw from the facts that have been established by the

testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater

number of witnesses may have testified to the contrary, if after considering all the other evidence

you believe that single witness.[34]

**SSL'S POSITION:  This section was "ADDED" by Citrix and it is not part of
the Federal Circuit Bar Association's model jury instructions.  As such, it
should be struck pursuant to this Court's Order to follow those instructions.**

---

[34] *i4i Ltd. P'Ship & Infrastructures for Info., Inc. v. Microsoft Corp.*, No. 07-cv-113 (E.D. Tex.
(LED), Court's Charge (D.I.323) (modified); Committee On Pattern Jury Instructions, District
Judges Association – Fifth Circuit, Fifth Circuit Pattern Jury Instructions – Civil (2006),
Instruction No. 2.23 (deposition testimony).

**CITRIX'S POSITION  SSL does not object to the substance of this instruction, nor does it offer a counter-proposal.  Citrix's proposed jury instructions are based on the FCBA's model, which expressly does not cover all necessary jury instructions, including non-patent jury instructions.  This proposed instruction is founded on appropriate legal authority, and accordingly, it should be adopted.**

**JURY INSTRUCTION___:  WHAT IS EVIDENCE** [ADDED INSTRUCTION]

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits which are received into evidence; and

3. any facts to which the lawyers have agreed.[35]

**SSL'S POSITION:  This section was "ADDED" by Citrix and it is not part of the Federal Circuit Bar Association's model jury instructions.  As such, it should be struck pursuant to this Court's Order to follow those instructions.**

**CITRIX'S POSITION:  SSL does not object to the substance of this instruction, nor does it offer a counter-proposal.  Citrix's proposed jury instructions are based on the FCBA's model, which expressly does not cover all necessary jury instructions, including non-patent jury instructions.  This proposed instruction is founded on appropriate legal authority, and accordingly, it should be adopted.**

---

[35] <u>Authority</u>:   Ninth Circuit Jury Instructions Committee, Ninth Circuit Manual of Model Jury Instructions (2007), Instruction No. 1.6.

### JURY INSTRUCTION___: WHAT IS NOT EVIDENCE [ADDED INSTRUCTION]

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1) Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they say in their opening statements, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I give a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.[36]


**SSL'S POSITION:  This section was "ADDED" by Citrix and it is not part of the Federal Circuit Bar Association's model jury instructions.  As such, it should be struck pursuant to this Court's Order to follow those instructions.**

**CITRIX'S POSITION:  SSL does not object to the substance of this instruction, nor does it offer a counter-proposal.  Citrix's proposed jury instructions are based on the FCBA's model, which expressly does not cover**

---

[36] Authority:  Ninth Circuit Jury Instructions Committee, Ninth Circuit Manual of Model Jury Instructions (2007), Instruction No. 1.7.

**all necessary jury instructions, including non-patent jury instructions.  This proposed instruction is founded on appropriate legal authority, and accordingly, it should be adopted.**

**JURY INSTRUCTION___:  EXPERT WITNESSES** [ADDED INSTRUCTION]

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—he is called an expert witness—is permitted to state his opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether to rely upon it.[37]

**SSL'S POSITION:  This section was "ADDED" by Citrix and it is not part of the Federal Circuit Bar Association's model jury instructions.  As such, it should be struck pursuant to this Court's Order to follow those instructions.**

**CITRIX'S POSITION:  SSL does not object to the substance of this instruction, nor does it offer a counter-proposal.  Citrix's proposed jury instructions are based on the FCBA's model, which expressly does not cover all necessary jury instructions, including non-patent jury instructions.  This proposed instruction is founded on appropriate legal authority, and accordingly, it should be adopted.**

---

[37] Authority:  Committee On Pattern Jury Instructions, District Judges Association – Fifth Circuit, Fifth Circuit Pattern Jury Instructions – Civil (2006), Instruction No. 2.19.

**JURY INSTRUCTION___:  CREDIBILITY OF WITNESSES** [ADDED

INSTRUCTION]

In deciding the facts in this case, you may have to decide which testimony to believe and

which testimony not to believe.  You may believe everything a witness says, or part of it, or none

of  it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about

it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of

witnesses who testify about it.[38]

**SSL'S POSITION:  This section was "ADDED" by Citrix and it is not part of
the Federal Circuit Bar Association's model jury instructions.  As such, it
should be struck pursuant to this Court's Order to follow those instructions.**


**CITRIX'S POSITION:  SSL does not object to the substance of this
instruction, nor does it offer a counter-proposal.  Citrix's proposed jury
instructions are based on the FCBA's model, which expressly does not cover
all necessary jury instructions, including non-patent jury instructions.  This
proposed instruction is founded on appropriate legal authority, and
accordingly, it should be adopted.**

---

[38] Authority:  Ninth Circuit Jury Instructions Committee, Ninth Circuit Manual of Model Jury
Instructions (2007), Instruction No. 1.11.

**JURY INSTRUCTION___: STIPULATIONS** [ADDED INSTRUCTION]

The parties have agreed, or stipulated to the following facts.  This means that both sides agree that these are the fact.  You must therefore treat these facts as having been proved:

      a.      SSL Services, LLC, is the owner of both of the Asserted Patents.

      b.      SSL filed the Complaint in this action on April 11, 2008.

      c.      The application that led to the '796 patent was filed on August 26, 1997, and the '796 patent issued on May 9, 2000.

      d.      The application that led to the '011 patent was filed on February 26, 1999, as a continuation of the '796 patent, filed on August 26, 1997.  The '011 patent issued on December 5, 2000.

      e.      The effective filing dates of both the '796 and '011 Patents is August 26, 1997.

      f.      For purposes of this trial, the date of invention for the inventions claimed in claim 27 of the '796 and claims 2, 4 and 7 of '011 Patents is the effective filing date (i.e., August 26, 1997).

      g.      The following references were neither cited by the applicants to the PTO during prosecution of the '796 and '011 Patents nor cited by the PTO either on the face of the patents-in-suit or in the file histories of the patents-in-suit:

      1.      "Communication Method with Data Compression and Encryption for Mobile Computing Environment," by Takahashi et al., ("Takahashi")

      2.      AutoSOCKS by Aventail Corporation as described in "Aventail AutoSOCKS The Client Key to Network Security," an Aventail Corporation White Paper (Feb. 1997) ("AutoSOCKS")

      3.      "Transparent Authentication and Confidentiality for Stream Sockets," by Andre Zuquete and Paulo Guedes, IEEE Micro, vol. 16, no. 3, pp. 34-41 (June 1996) ("the PES Paper")

        4.      U.S. Patent No. 6,101,543 filed on October 25, 1996 and issued on August 8, 2000 ("the '543 patent")

        5.      "Texas A&M University Anarchistic Key Authentication," by David Safford et al., published in the Sixth USENIX UNIX Security Symposium (July 24, 1996) ("AKA"),

        6.      RFC 1508 "Generic Security Service Application Program Interface," J. Linn, September 1993 ("RFC 1508"), attached as Exhibit N.

        7.      Pseudo-Network Drivers and Virtual Networks, by S.M. Bellovin, published in the USENIX Winter Technical Conference (January 24, 1990) ("Pnet")

        8.      Computer Networks, 3rd edition, by Andrew S. Tanenbaum, published March 6, 1996 ("Tanenbaum")

        h.      Citrix and SSL are not currently competitors and SSL does not currently make any products.

        i.      For purposes of this litigation there are no relevant, material differences between GoToMeeting, GoToWebinar and GoToTraining.

**SSL'S POSITION:  This section was "ADDED" by Citrix and it is not part of the Federal Circuit Bar Association's model jury instructions.  As such, it should be struck pursuant to this Court's Order to follow those instructions. In addition, "stipulated facts" are not proper subject matter for jury instructions.**

**CITRIX'S POSITION:  SSL provides no legal basis for its assertion that "stipulated facts" are not proper subject matter for jury instructions. Moreover, SSL does not object to any of the stipulated facts, and such agreed upon facts will assist the jury.  Accordingly, this instruction should be adopted.**

SIGNED this _____ day of June, 2012.


_____
RODNEY GILSTRAP JR.
UNITED STATES DISTRICT JUDGE

DATED: June 4, 2012

/s/ *Robert L. Kinder*
Harry Lee Gillam , Jr
Melissa Richards Smith
Gillam & Smith, LLP
303 South Washington Avenue
Marshall, TX 75670
903-934-8450
Fax: 903-934-9257
gil@gillamsmithlaw.com
melissa@gillamsmithlaw.com

Gary M. Hoffman
DC Bar No.  141481
hoffmang@dicksteinshapiro.com
Charles D. Ossola
DC Bar No. 295022
ossolac@dicksteinshapiro.com
Eric Oliver
DC Bar No. 443697
olivere@dicksteinshapiro.com
Robert L. Kinder
DC Bar No. 494941
kinderr@dicksteinshapiro.com
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC  20006-5403
Telephone: (202) 420-2200
Facsimile : (202) 420-2201

**Counsel for SSL Services, LLC**

/s/ *Erica D. Wilson*
Jennifer Parker Ainsworth
Texas State Bar No. 00784720
jainsworth@wilsonlawfirm.com
WILSON, ROBERTSON
  & CORNELIUS, P.C.
900 ESE Loop 323, Suite 400
P. O. Box 7339 [75711]
Tyler, Texas  75701
(903) 509-5000 (Telephone)
(903) 509-5092 (Facsimile)

Erica D. Wilson
CA State Bar No. 161386
ewilson@goodwinprocter.com
Thomas F. Fitzpatrick
CA State Bar No. 193565
tfitzpatrick@goodwinprocter.com
Andy H. Chan
CA State Bar No. 242660
achan@goodwinprocter.com
GOODWIN PROCTER LLP
135 Commonwealth Drive
Menlo Park, CA  94025
(650) 752-3100 (Telephone)
(650) 853-1038 (Facsimile)

J. Anthony Downs
Massachusetts State Bar No. 552839
jdowns@goodwinprocter.com
Lana S. Shiferman
Massachusetts State Bar No. 645024
lshiferman@goodwinprocter.com
GOODWIN PROCTER LLP
53 State Street
Boston, MA 02109
(617) 570-1000 (Telephone)
(617) 523-1231 (Facsimile)

**Counsel for Citrix Systems, Inc., and
Citrix Online, LLC**

**APPROVED AS TO
FORM AND
SUBSTANCE:**

Respectfully submitted,                    Respectfully submitted,


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record listed below are being

served with a copy of this document by e-mail or the Court's ECF System this 4th day of

June 2012.


/s/ Robert L. Kinder
Robert L. Kinder

2