**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **SSL SERVICES, LLC** | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:08-cv-158-JRG |
| | § | |
| **CITRIX SYSTEMS, INC., et al.** | § | |
| Defendants. | § | |
| | § | |
| | § | |

## JURY INSTRUCTIONS

Members of the Jury:

You have now heard the evidence in this case. I now instruct you on the law that you must apply to that evidence. It is your duty to follow the law as I give it to you. However, as I have said previously, you the jury are the judges of the facts. Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

The attorneys will soon make their closing arguments. The closing arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist you in recalling and understanding the evidence and the parties' contentions.

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have introduced them. You may also consider any stipulations or agreements of the parties in this case.

By allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence. As stated before,

you are the sole judges of the credibility of all witnesses and what weight and effect to give to all the evidence in this case.

When the Court sustained an objection to a question addressed to a witness, you must disregard the question entirely, and may draw no inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess and talking to them when you were out of the courtroom.   This happened because often during a trial, something comes up that does not involve the jury. You should not speculate on what was said during such discussions that took place outside of your presence.

Certain testimony in this case has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. If a witness cannot be present to testify in person from the witness stand, the witness's testimony may be presented, under oath, in the form of a deposition. Before this trial, attorneys representing the parties in this case questioned these deposition witnesses under oath. A court reporter was present and recorded the testimony. Deposition testimony is entitled to the same consideration as testimony given by a witness in person from the witness stand. Accordingly, you should judge the credibility of and weigh the importance of deposition testimony, to the best of your ability, just as if the witness had testified in court in person.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason

2

and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

You may properly determine that the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence, you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence – such as testimony of an eyewitness. The other is indirect or circumstantial evidence – that is, the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that you find the facts based on the evidence presented, both direct and circumstantial.

When knowledge of a technical subject may be helpful to the jury, a person who has special training or experience in that technical field – called an "expert witness" – is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is solely up to you to decide whether to rely upon it or not.

There are two standards of proof that you will apply in this case.   As I mentioned at the beginning of the trial, preponderance of the evidence means evidence that persuades you that a claim is more likely true than not true. In determining whether any fact has been proved by a preponderance of the evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them.

Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to the matter at issue. When a party has the burden of proving any claim or defense

by clear and convincing evidence, it means the evidence must have persuaded you that the claim or defense is highly probable. In determining whether any fact has been proven by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard. If the proof establishes in your mind a firm belief or conviction, then the standard has been met.

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

Plaintiff SSL Services, LLC (who you've heard referred to throughout the trial as SSL) contends that the use of certain products of Defendants Citrix Systems, Inc. and Citrix Online LLC (who have often been referred to collectively throughout the trial as Citrix) infringe claim 27 of United States Patent No. 6,061,796, or the '796 patent.   The specific Citrix products accused of infringing claim 27 of the '796 patent are known as Citrix's "GoTo Services," which include GoToMyPC, GoToMeeting, GoToWebinar, GoToTraining and GoToAssist.   SSL also claims that Citrix has actively induced others to infringe Claim 27 of the '796 patent.   SSL also claims that Citrix has contributorily infringed claim 27 of the '796 patent. And, SSL claims that Citrix has willfully infringed the '796 patent.

SSL also contends that Citrix makes, uses, offers to sell, or sells products including Access Gateway and NetScaler that infringe claims 2 and 4 of United States Patent No. 6,158,011 (which I also may call the '011 patent).   SSL further contends that the use of Access Gateway or certain

features of NetScaler infringe claim 7 of the '011 patent.   SSL claims that Citrix has actively induced others to infringe Claims 2, 4 and 7 of the '011 patent.   SSL also claims that Citrix has contributorily infringed claims 2, 4 and 7 of the '011 patent.   Also, SSL seeks a finding that Citrix has willfully infringed the '011 patent.   As I did at the beginning of this trial, I may refer to the '796 and '011 patents as "the asserted patents" or the "patents-in-suit."   Collectively, I may refer to the GoToServices, Netscaler and Access Gateway as the Citrix accused products or services.

The patent claims at issue are claim 27 in the '796 patent and claims 2, 4 and 7 in the '011 patent.   As a group, these are sometimes referred to as the "the asserted claims."

Citrix denies that it has infringed the '796 patent or the '011 patent.   Citrix also denies that it has induced others to infringe the '796 patent or the '011 patent.   Citrix also denies that it has willfully infringed.   Citrix denies that SSL is entitled to any damages or other relief.

Furthermore, Citrix contends that claims 2, 4, and 7 of the '011 patent are invalid because they are either anticipated by or rendered obvious by one or more prior art references.   Citrix contends that claims 2 and 4 of the '011 patent are also invalid for failure to meet the written description requirement.   Invalidity is a defense to infringement.   Therefore, even though the U.S. Patent and Trademark Office (or PTO) has allowed the asserted claims, you the jury must decide whether those claims are invalid.

Your job is to decide whether the asserted claims have been infringed and whether any of the asserted claims are invalid.   If you decide that any claim of the patent has been infringed and is not invalid, you will then need to decide what amount of money damages, if any, are to be awarded to SSL as compensation for such infringement.   You will also need to decide whether the

infringement was willful.   If you decide that any infringement was willful, that decision should not affect the amount of any damage award you make.   I will take willfulness into account later.

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims themselves that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers collectively depends on what each of its claims covers.

You first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The law says that it is my role to define the terms of the claims, and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims, and I have provided to you my definitions of certain claim terms.   These are in your juror notebooks. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions that I have supplied and apply them to the issues that you are asked to decide, including the issues of infringement and invalidity.

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device satisfies each of these requirements in that sentence, then it is covered by the claim.

6

There can be several claims in a patent. A claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by-claim basis. In patent law, the requirements of a claim are often referred to as the "claim elements" or "claim limitations." When a product meets all of the requirements of a claim, the claim is said to "cover" that product, and that product is said to "fall" within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product. If a product is missing even one limitation or element of a claim, the product is not covered by the claim.   If the product is not covered by the claim, that product does not infringe that claim.

The beginning portion, or preamble, of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means "including" or "containing." When "comprising" is used in the preamble, a device that includes all the limitations of the claim, as well as additional elements, is covered by the claim.

A claim requirement may describe a certain functionality or capability that the device must possess. In such cases, a device satisfies the requirement if it is reasonably capable of operating in the recited manner.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply those definitions that I provide to you.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product must meet in order to be covered by that claim,

7

you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

I will now explain to you the meaning of some of the words of the claims in this case. In doing so, I will explain some of the requirements of the claims. As I have previously instructed you, you must accept my definition of these words in the claims as correct. For any words in the claim for which I have not provided you with a definition, you should apply their common and ordinary meaning. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide, not mine.

You have been provided with copies of the '796 and '011 patents and copies of the claim term definitions, and you may use them in your deliberations.

As a preliminary matter, I have determined that a number of the steps of claim 27 of the '796 Patent and claim 7 of the '011 Patent must be performed in a specific order.   In claim 27, there are four ordered groups of steps in the claimed invention.   The order is as follows.   First, the connection request and destination address is intercepted.   Second, communication is established with the authentication server and a session key is generated.   Third, a communication channel is established between the server and the destination client. Finally, the destination client is able to decrypt and encrypt files.

I have applied this general outline to claim 27 and divided the steps of claim 27 into four groups.   The steps in each group must be performed before the steps in the next group.   For example, all the steps in Group I must be performed before the steps in Group II.   All the steps in Groups I and II must be performed before the steps in Group III.   Finally, all of the steps in

Groups I, II and III must be performed before the steps in Group IV.   Steps within a Group, however, do not need to be performed in any particular order.   The following summarizes the required order of the steps for claim 27:

### Group I

[b] -- "intercepting function calls and requests for service sent by an applications program in one of said client computers to a lower level set of communication drivers" and

[d] -- "intercepting a destination address during initialization of communications between said one of said client computers and a second of said client computers on said virtual private network"

### Group II

[c] -- "causing an applications level authentication and encryption program said one of said client computers to communicate with the server, generate a session key, and use the session key generated by the applications level authentication and encryption program to encrypt files sent by the applications program before transmittal over said open network"

[e] -- "causing said applications level authentication and encryption program to communicate with the server in order to enable the applications level authentication and encryption program to generate said session key" and

[f] -- "transmitting said destination address to said server".

### Group III

[g] -- "causing said server to communicate with the second of said two client computers."

### Group IV

[h] -- "enabling said second of said two client computers to recreate the session key"

[i] -- "causing said authentication software to encrypt files to be sent to the destination address using the session key" and

[j] -- "transmitting the encrypted files directly to the destination address."

This general outline for the required order of steps for claim 27 of the '796 patent is also applicable to claim 7 of the '011 patent.

I have determined that the preambles, that is the beginning portions, of claim 27 of the '796 patent and claims 4 and 7 of the '011 patent are limitations of the claims.

I have also defined the following claim terms for you:

1)   The term "**multi-tier**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "more than one level or layer."

2)   The phrase "**virtual private network**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "a system for securing communications between computers over an open network."

3)   The term "**server**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "software running on a computer that provides services to client computers."

4)   The term "**plurality**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "more than one."

5)   The phrase "**lower level set of communications drivers**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "set of communications drivers below the applications layer."

6)   The phrase "**session key**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "a sequence of bits that is input into an encryption algorithm to encrypt data for a session."

7)   The phrase "**generate a session key**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "to produce a session key".

8)   The term "**encrypt**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "to render unintelligible without decrypting."

9)   The phrase "**client computer**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "a computer that request data or services from a server."

10)   The phrases "**intercepting function calls and requests for service**," "**intercept function calls and requests for service**," and "**intercepting said function calls and requests for service**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "using a shim to intercept or divert a request for a desired function, service, operation or event."

11)   The phrases "**authentication and encryption program"** and **"encryption and**

**authentication software**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "a program that verifies the identity of a client or server and renders data unintelligible without decrypting."

12)    The phrase "**encrypt files**" (as used in claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "to render a set of data used by a program unintelligible without decrypting."

13)    The phrase "**destination address**" (as used in claim 27 of the '796 patent) means "the network address of a computer or server."

14)    The phrase "**intercepting a destination address**" (as used in claim 27 of the '796 patent) means "using a shim to intercept or divert the network address of a computer or server."

15)    The phrase "**recreate the session key**" (as used in claim 27 of the '796 patent) means "recreate the sequence of bits that is input into an encryption algorithm to encrypt data for a session."

16)    The phrase "**transmitting the encrypted files directly to the destination address**" (as used in claim 27 of the '796 patent) means "transmitting the encrypted files from a first client computer to a second client computer."

17)    The phrase "**mutually authenticate**" (as used in claims 2 and 4 of the '011 patent) means "a server verifies the identity of the client computer and the client computer verifies the identity of the server."

18)    The term "**shim**" (as required by claim 27 of the '796 patent and claims 2, 4, and 7 of the '011 patent) means "software that is added between two existing layers, which utilizes the same function calls of the existing layers."

I will now define for you certain other claim terms that are written in what is called a "means-plus-function" format.   The patent statute permits certain elements of a claimed invention to be expressed simply as a "means" for performing a certain function, without reciting in the claim any structure, material or acts in support of the function.   These claim terms are construed to cover the corresponding structure, material or acts described in the specification for performing the claimed function, and equivalents of such structure, material or acts.

The recited function for the phrase "**means for transmitting data to and receiving data from an open network**" (as used in claim 27 of the '796 patent) is "transmitting data to and receiving data from an open network."   The corresponding structure is "the lower level

11

communications drivers and hardware (such as a network or modem connection) described in the specification or equivalents thereof."

I will now instruct you how to decide whether or not Citrix has infringed one or more of the asserted claims of the '796 and '011 patents.   Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another claim.

There are two types of claims that SSL alleges Citrix infringes – method claims and apparatus claims.   The method claims are claim 27 of the '796 patent and claim 7 of the '011 patent.   A method claim is infringed only when a person, without the patent owner's permission, performs each and every step of the method claim in the United States while the patent is in force. The apparatus claims are claims 2 and 4 of the '011 patent.   Infringement of an apparatus claim occurs when a person, without the owner's permission, makes, uses, offers to sell, or sells the patented invention anywhere in the United States while the patent is in force.

In this case, SSL has accused Citrix of three types of infringement.   First SSL accuses Citrix of directly infringing claim 27 of the '796 patent through the use of various versions of GoToMyPC, GoToMeeting and GoToAssist.   SSL also accuses Citrix of directly infringing claim 7 of the '011 patent through the use of Access Gateway and Access Gateway Enterprise Edition which is a feature of NetScaler.   SSL asserts that Citrix infringes claims 2 and 4 of the '011 patent by making, using, selling or offering for sale Access Gateway and NetScaler (with Access Gateway Enterprise Edition), which SSL contends contains all of the requirements of claims 2 and 4 of the '011 patent.

Second, SSL contends that Citrix infringes indirectly by contributing to the infringement by others, such as Citrix's customers.   Third, SSL contends that Citrix induces infringement by affirmatively intending to cause direct infringement by others.

I will first tell you about direct infringement, then I will tell you about contributory infringement, and lastly I will tell you about inducement.

There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents."   In order to prove direct infringement by literal infringement of the asserted method claims (claim 27 of the '796 patent and claim 7 of the '011 patent) SSL must prove by a preponderance of the evidence that Citrix actually performed each and every step of the claimed method in the United States.   In order to prove direct infringement by literal infringement of the asserted apparatus claims (claims 2 and 4 of the '011 patent) SSL must prove by a preponderance of the evidence, that Citrix Systems, Inc. made, used, sold, or offered for sale within the United States or imported into the United States products that include each and every requirement of claims 2 and 4 of the '011 patent.

In order to infringe a patent claim, a product or method of use must include each and every requirement of the claim.   In determining whether a Citrix accused product or service infringes one or more of SSL's asserted claims, you must compare the accused product or service with each and every one of the requirements of a claim to determine whether an accused products or service contains each and every requirement recited in a claim.   A claim requirement is present if it exists in an accused product or service or its method of use is just as it is described in the claim language, either as I have explained the language to you or, if I did not explain it, as it would be understood by one of skill in the art.   If any of the accused products or services omit even a single requirement recited in a claim, then you must find that the particular product or service does not literally infringe that particular claim.

You must determine, separately for each asserted claim, whether or not there is infringement.

13

As I have previously explained, claim 27 of the '796 patent includes requirements that are in means-plus-function form.

A product or a process meets a means-plus-function requirement of a claim if: (1) it has a structure or a set of structures that perform the identical function recited in the claim, and (2) that structure is either identical or "equivalent" to the described structures that I defined earlier as performing the function of "transmitting data to and receiving data from an open network."   If the product does not perform the specific function recited in the claim, the "means-plus-function" requirement is not met, and the product does not literally infringe the claim.   Alternatively, even if the product has a structure that performs the function recited in the claim but the structure is not either identical or "equivalent" to the structures that I defined to you as being described in the '796 patent and performing this function, the product does not literally infringe the asserted claim.

A structure may be found to be "equivalent" to one of the structures I have defined as being described in the '796 patent if a person having ordinary skill in the field of technology of the '796 patent either would have considered the differences between them to be insubstantial at the time the '796 patent issued or if that person would have found the structures performed the function in substantially the same way to accomplish substantially the same result.   In deciding whether the differences would be "insubstantial," you may consider whether a person having an ordinary level of skill in the field of technology of the patent would have known of the interchangeability of the two structures or sets of structures. Interchangeability itself is not sufficient; in order for the structures to be considered to be interchangeable, the interchangeability of the two structures must have been known to persons of ordinary skill in that art at the time the patent issued.   The fact that a structure is known now and is "equivalent" is not enough.   The structure must also have been available at the time the '796 patent issued.

14

In order to prove direct infringement by literal infringement of a means-plus -function limitation, SSL must prove the above requirements are met by a preponderance of the evidence.

SSL alleges that Citrix infringes claim 27 of the '796 patent and claims 2 and 4 of the '011 patent under the "doctrine of equivalents."   If a person practices a method that does not meet all of the requirements of a method claim and thus does not literally infringe that claim, or if a person makes, uses, sells, offers to sell within or imports into the United States a product that does not meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that method or product satisfies that claim under the doctrine of equivalents.

Under the doctrine of equivalents, a method or product infringes a claim if the accused method or product performs steps or contains elements corresponding to each and every requirement of the claim that is equivalent to, even though not literally met by, the accused method or product.   You may find that a step or element is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the action or structure:   (1) performs substantially the same function, (2) in substantially the same way, (3) to achieve substantially the same result as the requirement of the claim.   In order for the action or structure to be considered interchangeable, the action or structure must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent.   Interchangeability at the present time is not sufficient.   In order to prove infringement by "equivalents," SSL must prove the equivalency of the actions or structure to a claim element by a preponderance of the evidence.

The prior art may preclude a finding of infringement under the doctrine of equivalents.   I will explain what "prior art" is, but generally speaking, "prior art" is things that were already known or done before the invention.   In reaching your decisions in this case, you must use the definition of "prior art" that I provide to you.

To determine whether the prior art precludes a finding of infringement under the doctrine of equivalents for a particular product or process that is accused of infringing a particular claim, you must determine what products or processes are in the "prior art" as well as what products or processes would have been obvious from the "prior art" to a person having an ordinary level of skill in the field of technology of the patent at the time of the invention.

If Citrix establishes that a product or process that (1) meets the same claim requirements as the product or process that is accused of infringing and (2) has the same allegedly "equivalent" alternative feature(s) as the product or process that is accused of infringing is in the prior art or would have been obvious from the prior art to a person having ordinary skill the field of technology of the invention as of August 26, 1997, you must find that the claim has not been infringed.

Citrix has the burden of proving that this hypothetical, equivalent claim was within the prior art at the time of the alleged infringement, by a preponderance of the evidence.

You may not find that a product or process infringes a claim under the doctrine of equivalents if you find that: (1) the allegedly "equivalent" alternative feature(s) of that product or process were described somewhere in the patent and (2) that the product or process is not covered literally by any claims of the patent.

You may not determine that an alternative aspect of a product or process is equivalent to an unmet requirement of a claim if a finding of infringement under the doctrine of equivalents would

16

effectively eliminate that requirement.   Specifically, the alleged equivalent cannot eliminate or ignore an element or requirement of the claim.

SSL also alleges that Citrix indirectly infringed the asserted patent claims.   There are two types of indirect infringement:   inducing infringement and contributory infringement.   The act of encouraging or inducing others to infringe a patent is called "inducing infringement."   The act of contributing to the infringement of others by, for example, supplying them with components for use in the patented invention, is called "contributory infringement."

SSL alleges that Citrix is liable for infringement by actively inducing its customers to directly infringe the '796 or '011 patents literally or under the doctrine of equivalents.   As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

Citrix is liable for active inducement of a claim only if SSL proves by a preponderance of the evidence that:

> (1) the acts are actually carried out by Citrix's customers and directly infringe that claim;

> (2) Citrix took action during the time the '796 or '011 patents were in force intending to cause the infringing acts by Citrix's customers; and

> (3) Citrix was aware of the '796 or '011 patents and knew that the acts, if taken, would constitute infringement of those patents or Citrix believed there was a high probability that the acts, if taken, would constitute infringement of the '796 or '011 patents but deliberately avoided confirming that belief.

In order to establish active inducement of infringement, it is not sufficient that Citrix's customers themselves directly infringe the claim.   Nor is it sufficient that Citrix was aware of the act(s) by Citrix's customers that allegedly constitute the direct infringement.   Rather, you must find that Citrix specifically intended its customers to infringe the '796 or '011 patents or that Citrix believed there was a high probability that its customers would infringe the '796 or '011

17

patents but remained willfully blind to the infringing nature of its customer's acts, in order to find inducement of infringement.

SSL argues that Citrix is liable for contributory infringement by contributing to the direct infringement of the '796 and '011 patents by Citrix.   As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

Citrix is liable for contributory infringement of a claim if SSL proves by a preponderance of the evidence:

> (1) Citrix sells, offers to sell, or imports within the United States a component of a product, or apparatus for use in a process during the time the '796 and '011 patents are in force;
>
> (2) the component or apparatus has no substantial, non-infringing use;
>
> (3) the component or apparatus constitutes a material part of the invention;
>
> (4) Citrix is aware of the '796 and '011 patents and knows that the products or processes for which the component or apparatus has no other substantial use may be covered by a claim of the '796 or '011 patent or may satisfy a claim of the '796 or '011 patent under the doctrine of equivalents; and
>
> (5) that use directly infringes the claim.

In order to prove contributory infringement, SSL must prove each of the above requirements is met.   This proof of each requirement must be by a preponderance of the evidence.

In this case, SSL argues both that Citrix infringed and, further that Citrix infringed willfully.   If you have decided that Citrix has infringed a valid claim of either the '796 or '011 patents, you must go further and address the additional issue of whether or not this infringement was willful.   Willfulness requires you to determine by clear and convincing evidence that Citrix acted recklessly.   To prove that Citrix acted recklessly, SSL must prove by clear and convincing evidence, that Citrix actually knew or should have known that its actions constituted an

18

unjustifiably high risk of infringement of a valid and enforceable patent.    To determine whether

Citrix had this state of mind, consider all the facts which may include, but are not limited, to:

> (1) Whether or not Citrix acted in accordance with the standards of commerce for its industry;
>
> (2) Whether or not Citrix intentionally copied a product of the patent holder that is covered by the '796 or '011 patent;
>
> (3) Whether or not there is a reasonable basis to believe that Citrix did not infringe or had a reasonable defense to infringement;
>
> (4) Whether or not Citrix made a good-faith effort to avoid infringing the '796 and '011 patents, for example, whether Citrix attempted to design around the '796 and '011 patents; and
>
> (5) Whether or not Citrix tried to cover up its infringement.

None of these factors are determinative, and this list of factors is not an exhaustive list of

things you should consider.    Your determination of willfulness should incorporate the totality of

the circumstances based on the evidence presented during the trial.

I will now instruct you on the rules you must follow in deciding whether or not Citrix has

proven that claims 2, 4, and 7 of the '011 patent are invalid.    To prove that any claim of a patent is

invalid, Citrix must persuade you by clear and convincing evidence.

The patent law contains certain requirements for the part of the patent called the

specification.    Citrix contends that claims 2 and 4 of the '011 patent are invalid because the

specification of the patent does not contain an adequate written description of the invention.    To

succeed, Citrix must show by clear and convincing evidence that the specification fails to meet the

law's requirements for the written description of the invention.    In the patent application process,

the applicant may keep the originally filed claims, or change the claims between the time the patent

application is first filed and the time a patent is issued.    An applicant may amend the claims or add

new claims.    These changes may narrow or broaden the scope of the claims.    The written

19

description requirement ensures that the issued claims correspond to the scope of the written description that was provided in the original application.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of the technology of the patent when the application was filed.   The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent application.   The full scope of a claim or any particular requirement in a claim need not be expressly disclosed in the original patent application if a person having ordinary skill in the field of the technology of the patent at the time of filing would have understood that the full scope or missing requirement is in the written description in the patent application.

Prior art may include items that were publicly known or that have been used or offered for sale, publications, or patents that disclose the claimed invention or elements of the claimed invention.   To be prior art, the item or reference must have been made, known, used, published, or patented before August 26, 1997.   However, prior art does not include a publication that describes the inventor's own work and was published less than one year before the date of invention.

For the claim to be invalid because it is not new, Citrix must show that all of the requirements of that claim were present in a single previous device or method that was known of,

used, or described in a single previous printed publication or patent.   We call these things "anticipating prior art."   To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, that is, either stated expressly or implied to a person having ordinary skill in the art of the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention.

In order for someone to be entitled to a patent, the invention must actually be "new" and the inventor must not have lost her or his rights by delaying the filing of the application claiming the invention.   In general, inventions are new when the identical product or process has not been made, used, or disclosed before.   Anticipation must be determined on a claim-by-claim basis.

Citrix contends that claim 7 of the '011 patent is invalid because the claimed invention is anticipated or because SSL lost the right to obtain a patent.   Citrix must convince you of this by clear and convincing evidence.   Here is a list of ways that Citrix can show that claim 7 of the '011 Patent was not new or that the patentee lost the right to patent the claim:

(1)    An invention is not new if it was known to or used by others in the United States before the August 26, 1997.   An invention is known when the information about it was reasonably accessible to the public on that date.

(2)    An invention is not new if it was already patented or described in a printed publication, anywhere in the world before the August 26, 1997.   A description is a "printed publication" only if it was publicly accessible.

(3)    SSL has lost its rights if the claimed invention was already patented or described in a printed publication, anywhere in the world, more than a year before August 26, 1997, which is the effective filing date of the application for the '796 and '011 patents.   An invention was patented by another if the other patent describes the same invention claimed by SSL to a person having ordinary skill in the technology.

(4)    SSL has lost its rights if the claimed invention was publicly used, sold, or offered for sale in the United States more than one year before August 26, 1997, which is the effective filing date of the application for the '796 and '011 patents.   An invention was publicly used when it was either accessible to the public or commercially exploited.   An

invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, that is, a description to one having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice.

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Citrix contends that the asserted claims of the '011 patent are invalid as obvious.   Citrix may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art as of August 26, 1997.   In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field that someone would have had as of August 26, 1997, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness.   Most, if not all, inventions rely on building blocks of prior art.   In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that, as of August 26, 1997, there was a reason that would have prompted a person having ordinary skill in the field to combine the known elements in a way that the claimed invention does, taking into account the following factors: (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements in the claimed inventions; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combination

22

of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces.   To find that prior art rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success.   Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight, that is, consider only what was known as of August 26, 1997.

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention and afterwards that may shed light on the obviousness or not of the claimed invention, such as:

(1) Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market pressure, advertising or similar activities);

(2) Whether the invention satisfied a long-felt need;

(3) Whether others had tried and failed to make the invention;

(4) Whether others invented the invention at roughly the same time;

(5) Whether others copied the invention;

(6) Whether there were changes or related technologies or market needs contemporaneous with the invention;

(7) Whether the invention achieved unexpected results;

(8) Whether others in the field praised the invention;

(9) Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

(10) Whether others sought or obtained rights to the patent from the patent holder; and

(11) Whether the inventor proceeded contrary to accepted wisdom in the field.

23

In deciding what the level of ordinary skill in the field is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventors and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art.

The scope and content of prior art for deciding whether the invention was obvious includes prior art in the same field as the claimed invention, regardless of the problem addressed by the item or reference, and prior art from different fields that a person of ordinary skill in the art using common sense might combine if familiar so as to solve the problem, like fitting together the pieces of a puzzle.

If you find that Citrix infringed any valid claim of the '796 or '011 patents, you must then consider what amount of damages to award to SSL.   I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

The damages you award must be adequate to compensate SSL for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put SSL in approximately the same financial position that it would have been in had the infringement not occurred.

SSL has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that SSL establishes that it more

likely suffered than not.   The patent owner is not entitled to damages that are remote or speculative.

There are different types of damages that SSL may be entitled to recover.   In this case, SSL seeks a reasonable royalty.   A reasonable royalty is defined as the money amount SSL or the predecessor patent owner and Citrix would have agreed upon as a fee for use of the invention at the time prior to when infringement began.   A reasonable royalty can be a single lump sum amount, or it can be a percentage properly attributed to the infringing activity.   A lump sum amount is a royalty payment where the patent owner receives a single, upfront payment.   A running royalty is a royalty where the patent owner collects ongoing, per unit, or percentage payments over a period of time.

I will give more detailed instructions regarding damages shortly.   Note, however, that SSL is entitled to recover no less than a reasonable royalty for each infringing sale or use.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place between them at a time prior to when the infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and the patent holder and infringer were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from this hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be

25

considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

In this case, the parties agree that the hypothetical negotiation for the licensing of the '796 patent would have taken place around June 2000 between V-One, the original owner of the patents-in-suit and ExpertCity, the company that developed the GoTo Services.   The parties disagree on whether the hypothetical negotiation for the '796 patent would have resulted in a lump sum or a running royalty.

In this case, the parties agree that the hypothetical negotiation for the licensing of the '011 patent would have taken place in late 2004 between V-One, the original owner of the patents-in-suit, and Citrix.   The parties agree that the hypothetical negotiation regarding the '011 patent would have resulted in a lump sum.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

> (1) The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty;

> (2) The rates paid by the licensee for the use of other patents comparable to the patent-in-suit;

> (3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold;

(4) The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;

(5) The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter;

(6) The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales;

(7) The duration of the patent and the term of the license;

(8) The established profitability of the product made under the patents, its commercial success, and its current popularity;

(9) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

(10) The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

(11) The extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions;

(13) The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

(14) The opinion and testimony of qualified experts; and

(15) The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

Damages should be apportioned to the value contributed by the invention; that is, SSL must apportion the damages between the portion of the accused product that is the patented feature and the unpatented features of the accused products.   Therefore, expect as specifically provided in this instruction, in applying the fifteen factors I've just read to you, you should only consider as the royalty base the portion of the value of the entire product that is associated with the patented feature, as compared to the portion of the value associated with other features, such as unpatented elements, or features or improvements developed by the accused infringer, if any.   You may not consider the entire value of a product containing non-patented elements unless you find (1) that the patented feature is functionally integrated with the non-patented product, and (2) that the patented feature is the basis for customer demand for the sale of the entire product.

In determining the amount of damages, you must determine when the damages began. For method claim 27 of the '796 patent, damages commence on the date that Citrix first started to infringe that claim, but in no event earlier than April 11, 2002.

With regard to the '011 patent, if you find that SSL or V-One sells or has sold a product that includes the claimed invention, you must determine whether SSL or V-One has "marked that product with the patent number.   "Marking" is placing either the word "patent" or the

abbreviation "pat." with the patent's number on substantially all of the products that include the patented invention.   SSL has the burden of establishing that it substantially complied with the marking requirement.   This means SSL must show that it (or its predecessor V-One) marked substantially all of the products it made, offered for sale, or sold under the '011 patent, and that SSL or V-One made reasonable efforts to ensure that its licensees who made, offered for sale, or sold products under the '011 patent marked the products.

If SSL has not marked the product with the patent number, you must determine the date that Citrix received actual notice of the '011 patent and the specific product alleged to infringe. Actual notice means that SSL or V-One communicated to Citrix a specific charge of infringement of the '011 patent by a specific accused product or device.   The filing of the complaint in this case qualified as actual notice, so the damages period begins no later than the date the complaint was filed.

If you find that SSL or V-One did not sell a product covered by the '011 patent, damages begin without the requirement for actual notice.   If you find that the '011 patent was granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began.   We will now hear closing arguments from the attorneys for the parties.   SSL goes first, then Citrix, and then SSL has the final argument.   The Plaintiff may make its closing argument at this time.


### --- PARTIES PRESENT CLOSING ARGUMENTS ---


I would now like to provide you with a few final instructions before you begin your deliberations.   You must perform your duties as jurors without bias or prejudice as to any party.

The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as I have given it to you, and reach a just verdict, regardless of the consequences.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. This is true in patent cases between corporations, partnerships, or individuals. A patent owner is entitled to protect its patent rights under the United States Constitution. This includes bringing suit in a United States District Court for money damages for infringement. The law recognizes no distinction among types of parties. All corporations, partnerships and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you will each have a copy of this charge to take with you.   If you desire to review any of the exhibits which the Court has admitted into evidence, you should advise me by a written note delivered to the Court Security Office, and I will send that exhibit or exhibits to you. Once you retire, you should select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial. After you have reached your verdict, your Foreperson is to fill in on the verdict form which reflects your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict and I have discharged you, you are not required to talk with anyone about the case unless the Court orders otherwise.

You may now retire to the jury room to deliberate.