**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **SSL SERVICES, LLC** *Plaintiff,* | § § § | |
| v. | § | CIVIL ACTION NO. 2:08-cv-158-JRG |
| **CITRIX SYSTEMS, INC., et al.** *Defendants.* | § § § § § | |

**MEMORANDUM OPINION AND ORDER**

## I. INTRODUCTION

Before the Court are the parties' competing motions regarding entry of a final judgment. Having considered the parties' written submissions and the oral arguments of counsel, and for the reasons set forth below, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Plaintiff SSL Services, LLC's ("SSL") Motion for (1) Prejudgment Interest, (2) Post-Judgment Interest, (3) Enhanced Damages, and (4) Entry of Final Judgment (Dkt. No. 274); and **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants Citrix Systems, Inc. and Citrix Online, LLC's (collectively, "Citrix") Motion for Entry of Final Judgment and Request that it be Awarded Prevailing Party Status (Dkt. No. 275). The Court has separately entered a Final Judgment contemporaneously herewith, consistent with the findings and holdings of this Opinion.

## II. FACTS & PROCEDURAL BACKGROUND

SSL filed this patent infringement action on April 11, 2008, alleging that Citrix infringes claim 27 of U.S. Patent No. 6,061,796 ("the '796 patent"). In May 2009, SSL amended its complaint to additionally allege infringement of claims 2, 4 and 7 of U.S. Patent No. 6,158,011 ("the '011 patent"). On June 18, 2012, following a 5-day jury trial, the jury returned a unanimous

verdict, finding that Citrix did not infringe claim 27 of the '796 patent, but did infringe claims 2, 4 and 7 of the '011 patent. The jury also found that the '011 patent was not invalid, that Citrix's infringement was willful and awarded lump-sum damages of $10,000,000.00. (Dkt. No. 260.)

## III. DISCUSSION

### A. Enhanced Damages

The jury found that Citrix willfully infringed the '011 patent through the use and sale of its Access Gateway and Netscaler products. (Dkt. No. 260.) Citrix first began selling the infringing technologies in 2004 and 2005 after it acquired Net6 and Netscaler, the companies that originally developed these infringing products. Though Citrix's infringement did not begin until 2004, the evidence at trial established that Citrix first became aware of the '011 patent in 2000 and 2001 through a business relationship with V-One Corporation ("V-One"), who was the original assignee of the '011 patent.[1] Evidence of such knowledge is demonstrated through, among other things, the executed contractual agreements that Citrix and V-One negotiated and entered into specifically identifying the '011 patent by application number (PTX-162, 2000 agreement) and patent number (PTX-167, 2001 agreement). During trial, Mr. Bill Mangum, a former Citrix executive, admitted that he had knowledge of the '011 patent as a result of Citrix's relationship with V-One. June 14, 2012 AM Trial. Tr. at 126: 12-23, 128:5-16, 129:8-11.

Before charging the jury in this case, the Court issued a finding establishing Citrix's objective recklessness based on SSL's presentation of "clear and convincing evidence that Citrix acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." June 18, 2012 AM Trial Tr. at 6:20-24 (Kinder Dec., Ex. 4) (applying *Bard Peripheral*

---

1 SSL acquired the '011 patent following V-One's bankruptcy.

*Vascular, Inc. v. W.L. Gore * Assoc., Inc.*, 682 F.3d 1003 (Fed. Cir. 2012)). The jury then determined, by clear and convincing evidence, that "Citrix actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent." (Dkt. No. 256 [Jury Instructions], at 18-19.)

*a. Applicable Law*

The Court has discretion under 35 U.S.C. § 284 to "increase damages up to three times the amount found or assessed" when there is a finding of willful infringement or bad-faith on the part of the infringing party. *SRI Int'l., Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1468-69 (Fed. Cir. 1997). Determining whether to enhance damages requires a two-step process. "First, the fact-finder must determine whether an infringer is guilty of conduct upon which increased damages may be based. If so, the court then determines, exercising its sound discretion, whether, and to what extent, to increase the damage award given the totality of the circumstances." *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed. Cir. 1996) (citing *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992)).

Enhanced damages are a punitive measure taken by a court to penalize a willful infringer for his or her increased culpability. *See Jurgens*, 80 F.3d at 1570. However, a court must refrain from awarding damages based on the weight of the evidence supporting willfulness and the closeness of the issues at trial. *See Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1582 (Fed. Cir. 1992); *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997). "The paramount determination in deciding enhancement and the amount thereof is the egregiousness of the defendants' conduct based on all the facts and circumstances." *Read Corp.*, 970 F.3d at 826.

Courts normally consider the following factors in deciding whether to enhance damages and the amount of enhancement: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the others' patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) closeness of the case; (6) duration of the defendant's misconduct; (7) remedial action by the defendants; (8) the defendant's motivation for harm; and (9) whether the defendant attempted to conceal its misconduct. *Id*. at 827.

*b. Copying*

SSL contends that it presented circumstantial evidence of copying sufficient for this factor to weigh in favor of enhancement. *See DataTreasury Corp. v. Wells Fargo & Co.* 2010 WL 5140716, at *3 (E.D. Tex. Sept. 27, 2010) (considering circumstantial evidence of copying when no direct evidence of copying presented). Specifically, SSL argues that Citrix had full knowledge of the '011 patent and V-One's patented technology due to its close working relationship with V-One from 1999-2002, when the companies developed the Citrix Extranet system, and that such relationship is circumstantial evidence that the infringing products were copied from V-One. (Dkt. No. 274, at 9.) Citrix responds that the evidence presented at trial established that Citrix's infringing products were independently developed by third-party companies Net6 and Netscaler, and that Citrix did not even implement the infringing products until it acquired Net6 in 2004 and NetScaler in 2005. (Dkt. No. 276, at 11.) Citrix also contends that none of the Citrix engineers involved in the Citrix/V-One relationship were involved in the acquisition of either Net6 or

NetScaler, and that Citrix did not change the Access Gateway or NetScaler architecture based on information it obtained from V-One. *Id*.

The record demonstrates that Net6 and NetScaler did, in fact, independently develop the infringing products and there is no evidence – circumstantial or otherwise – indicating that Net6 or NetScaler copied V-One's designs when the products were developed. Consequently, this factor does not weigh in favor of enhancing damages.

*c. Investigation and Good Faith Belief of No Liability*

SSL argues that Citrix never performed an analysis of the accused products to determine whether they infringed the '011 patent, despite the fact that Citrix had knowledge of the '011 patent for over eight years. (Dkt. No. 274, at 9.) Further, SSL contends that Citrix never conducted any sort of investigation regarding the validity of the '011 patent after it acquired and began selling the infringing products, nor did it perform any non-infringement analysis. *See Bott v. Four Star Corp.*, 807 F.2d 1567, 1572 (Fed. Cir. 1986) (affirming finding of willful infringement where a defendant had knowledge of the patent-in-suit long before the first sale of its product where defendant never asked for or received a written legal opinion on validity or infringement).

Citrix responds that (1) it did not have any specific knowledge of the scope or content of the '011 patent because Mr. Mangum was the only Citrix employee who received documentation listing the patent (and he does not now recall even reading the patent), (2) that it was never informed by V-One or SSL that it was infringing the '011 patent when it began selling the Access Gateway products, and (3) Citrix *did* investigate SSL's infringement theory when the '011 patent was added to this lawsuit in 2009 and determined that it had a valid non-infringement argument

and a defensible invalidity position. Supporting its claim with regard to validity, Citrix notes that the '011 patent is being reexamined by the USPTO and that it currently stands rejected under the same prior art that was asserted at trial in Citrix's invalidity case. (Dkt. No. 276, at 3-4.)

Despite Citrix's assertion that Mr. Mangum was the only person at Citrix with any sort of knowledge of V-One's patents, it is undisputed that Citrix (not Mr. Mangum) is a party to two contracts with V-One that specifically identify the '011 patent. In the Court's view, this fact – when taken together with the multi-year design and development relationship between V-One and Citrix – clearly demonstrates that Citrix (beyond just Mr. Mangum) had actual knowledge of the '011 patent. Citrix and V-One operated in similar spaces within the secure telecommunications industry and Citrix could have investigated V-One's patents to determine whether any of its technology infringed the V-One patents in 2000 and 2001.[2] In fact, there were ample opportunities for Citrix to investigate whether its products infringed the '011 patent: (1) when it first learned of the '011 patent in 2000 and 2002; (2) when it acquired Net6 and NetScaler in 2004 and 2005; and (3) when it was first accused of patent infringement by SSL in 2008. Despite having such opportunities, the record is entirely devoid of any evidence that Citrix ever investigated whether its products might infringe the '011 patent until it was sued by SSL over the '011 patent in 2009.

Despite its failure to investigate the '011 patent over the course of several years, Citrix contends that when it finally did investigate (in 2009, when the '011 patent was added to this case), it immediately "concluded that the '011 patent was not infringed and was invalid." (Dkt. No. 276,

---

[2] The Court recognizes that the infringing products were not acquired by Citrix until 2004-2005, but Citrix did not present any evidence that it ever compared its then existing products with V-One's patents to identify potential infringement issues. This fact demonstrates that Citrix recklessly avoided to undertake any type of investigation of V-One's patents, including the '011 patent.

at 4.) Out of Citrix's many alleged defenses, it focuses primarily on the issue of validity. Specifically, Citrix contends that it "was so convinced of the invalidity of the '011 [patent] that on September 18, 2010, Citrix filed a request for reexamination with the PTO, arguing that the asserted claims of the '011 [patent] are invalid in view of the prior art." *Id.* To date, the reexamination at the USPTO is ongoing and the asserted claims of the '011 patent currently stand rejected based on two prior art references, that were also asserted at trial. Citrix points to this evidence as conclusive evidence that it has a good faith belief of no liability. The Court disagrees.

Irrespective of a patent examiner's current rejection of the asserted claims at the USPTO, the Court undertook a thorough evaluation of the '011 patent claims and the prior art before determining that SSL presented "clear and convincing evidence that Citrix acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." June 18, 2012 AM Trial Tr. at 6:20-24.[3] Further, the jury fully evaluated the asserted prior art references during trial before rendering its verdict that the prior art references presented at trial do not invalidate the asserted claims of the '011 patent. The Court recognizes that the jury is bound to evaluate the issue of invalidity at a higher standard than the USPTO. Nevertheless, the Court is of the considered opinion that the asserted prior art references simply do not invalidate the '011 patent under any standard of review.

Taking Citrix's position to its logical conclusion, the Defendants argue that a finding of willfulness can never be upheld when the infringed patent claims are initially rejected by the

[3] Citrix has indicated that it will renew its judgment as a matter of law regarding willfulness upon entry of the final judgment in this case. The Court expects to issue an opinion in response to that motion with a full discussion of the basis for its ruling from the bench regarding the objective prong of *Bard*.

USPTO, even though the reexamination proceeding is far from complete.[4] The Court declines to adopt this approach and instead prefers an independent analysis of Citrix's invalidity defenses. The ongoing reexamination process cannot support the type of absolute bar that Citrix seeks. In this case, Citrix's failure to investigate the '011 patent year after year (and after it became aware of it) far outweighs any good-faith belief that it may have formed when it finally did investigate the patent and initiated the reexamination proceedings. Further, as discussed above, the Court is not convinced that Citrix will ultimately prevail on its invalidity defense, despite the ongoing proceedings at the USPTO. The Court is persuaded that Citrix's eight-year long failure to investigate the '011 patent supports enhancement.

*d. Close Case*

A court can consider the closeness of the case. *Read Corp.*, 970 F.2d at 827. Potential circumstances of a close case include "deadlock on the issue of infringement during deliberation, or potentially returning a verdict of validity and infringement but agreeing with defendants' valuation of damages." *Creative Internet*, 889 F. Supp. 2d at 866 (FULL CITE?); *see also Wordtech Sys. v. Integrated Networks Solutions, Inc.*, No. 2:04-cv-01971, 2009 U.S. Dist. LEXIS 2806, at *5 (E.D. Cal. Jan. 14, 2009) (finding that the trial evidence overwhelmingly favored a finding for plaintiff "as evidenced by the relatively short deliberations required for the jury to reach a unanimous verdict on all causes of action"), *rev'd on other grounds* 609 F.3d 1308 (Fed. Cir. 2010).

[4] The Federal Circuit recently affirmed a finding of willfulness and enhanced damages even though the USPTO found that certain prior art references raised a substantial new question of patentability sufficient to initiate reexamination proceedings. *K-Tec, Inc. v. Vita-Mix Corp.*, ---F.3d---, 2012 WL 3856914 (Fed. Cir. 2012). Despite the initiation of proceedings, K-Tec ultimately prevailed and the patent survived reexamination. The Court is also of the opinion that the '011 patent will likely survive reexamination.

SSL argues that the closeness of the case factor weighs in favor of enhancing damages. After a week-long trial, the jury deliberated for only three hours. The jury returned a unanimous verdict on all questions presented, finding the asserted claims of the '011 patent were willfully infringed and not invalid. SSL also contends that the Court's finding that Citrix acted objectively reckless according to the *Bard* case also indicates that this is not a close case.

Citrix responds that this was a close case because it presented a compelling case of non-infringement and invalidity of the '011 patent. The jury apparently did not see it that way. Citrix focuses its argument on its validity defense, and places special emphasis on the pending reexamination proceedings at the USPTO, in which the asserted claims currently stand rejected based on the same prior art that Citrix presented at trial. (Dkt. No. 276.) Citrix also relies on the fact that the jury returned a verdict of non-infringement with regard to the '796 patent as further evidence that this was a "close case."

The jury's decision with regard to the '796 patent is irrelevant to the Court's evaluation of the *Read* factors with regard to the '011 patent. The Court evaluates willfulness on a patent-by-patent basis, and did so in this case. The jury found that Citrix willfully infringed the '011 patent, that the '011 patent not invalid and it awarded SSL a $10 million lump-sum award. The jury's award was the precise amount presented to the jury by SSL's damages expert and asked for by SSL in its closing arguments. June 18, 2012 AM Trial Tr. at 67:1-2. As discussed above, the Court is not persuaded that the ongoing proceedings at the USPTO effectively tie the Court's hands and mandate a finding that this is a close case, especially in light of the other evidence. With regard to the '011 patent, the Court concludes that this was not a close case. Accordingly, this factor weighs in favor of enhancement.

*e. Length of Ongoing Infringement*

"[P]ost-Seagate courts have repeatedly held that the length of time a defendant infringes with notice of the asserted patent affects misconduct when analyzing enhanced damages." *Creative Internet*, 689 F. Supp. 2d at 869 (finding an inference of misconduct where Defendant continued infringement before, during, and after the suit was filed). In this case, Citrix had knowledge of SSL's patents as early as 2000 and the parties agree that the date of first infringement for the '011 patent was late 2004. Citrix has continually infringed since that time, for nearly eight years. Its infringement even continued after SSL filed this lawsuit and asserted the '011 patent. This factor supports enhancement.

*f. Defendants' Size and Financial Condition*

"Defendant's size and financial condition should be viewed both relative to the Plaintiff and also individually to ensure that enhanced damages would 'not unduly prejudice [defendant's] non-infringing business." *Creative Internet*, 689 F. Supp. 2d at 866 (finding Yahoo's profit margins to be evidence that it was large enough and profitable enough to pay enhanced damages) (citations omitted); *see also Read*, 970 F.2d at 827 (citing with approval trial court's holding that, [i]f defendant were the giant and plaintiff the small independent, I would make it treble") (citations omitted).

In 2011, Citrix's annual revenue exceeded $2.2 billion and it recorded a net income of $463 million. (Dkt. No. 274, at 11.) Over the course of this litigation, since 2008, Citrix's accumulated total revenue exceeds $7.3 billion and its accumulated net income exceeds $1 billion. *Id*. Due to Citrix's large size and solid financial condition, enhanced damages would not unduly

prejudice Citrix's non-infringing business. Unquestionably, Citrix is large enough and profitable enough to pay enhanced damages. This factor clearly weighs in favor of enhancement.

*g. Remaining Factors and Enhancement*

The remaining *Read* factors are either neutral or do not apply. The Court has the discretion to enhance damages against Citrix up to three times the jury verdict of $10,000,000, but under a fair and careful evaluation of the *Read* factors, the Court believes that trebling the damages is not appropriate in this case. However, some lesser but meaningful enhancement is warranted in light of Citrix's willful infringement and its failure to investigate the '011 patent, despite having actual knowledge of the '011 patent (and V-One's technology) since 2000. Therefore, the Court awards an additional $5,000,000 to the jury's damages award, making the total award $15,000,000.

**B. Prejudgment Interest**

Upon a finding of patent infringement, "the court shall award patent damages … together with interest and costs as fixed by the court." 35 U.S.C. § 284. Prejudgment interest should be awarded under Section 284 absent some justification for withholding such an award. *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983); *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1378 (Fed. Cir. 2010). The purpose of prejudgment interest is to place the patentee in as good a position as he would have been had the infringer paid a reasonable royalty instead of infringing. *Beatrice Foods v. New England Printing*, 923 F.2d 1576, 1580 (Fed. Cir. 1991).

SSL contends that prejudgment interest should be based upon the real borrowing rate for funds that the patent holder (then, V-One) was obligated to pay in 2004 when infringement first

began.[5] (Dkt. No. 274, at 3) (citing *Muniauction, Inc. v. Thomson Corp.*, 502 F.Supp. 2d 477, 484-85 (W.D. Pa. 2007) ("Awarding plaintiff prejudgment interest at its borrowing rate for what it actually lost as a result of defendants' infringement.") Alternatively, SSL asks for an interest rate set at the prime rate plus one percent. *Id*. (citing *Transclean Corp. v. Bridgewood Servs., Inc.*, 2001 U.S. Dist. LEXIS 24383, *45 (D. Minn. Jan. 8, 2001) ("We find an interest rate of prime plus one percent to be appropriate …").

Citrix urges the Court to limit or altogether deny prejudgment interest on the grounds that SSL unreasonably delayed in filing suit in an effort to increase damages. Citrix contends that SSL (and earlier, V-One) failed to provide notice to Citrix of infringement for several years, and that this "tactical" delay justifies limiting prejudgment interest to start from May 22, 2009, when SSL first asserted the '011 patent as part of this litigation. (Dkt. No. 276, at 21.) Citrix advocates for a 3.25% prejudgment interest rate, which was the prime interest rate in effect in May 2009. (Dkt. No. 209-1, at 3.)

After carefully considering the parties' positions, and working to place the patent holder in as good a position as it would have been had it been paid a reasonable royalty, the Court awards SSL prejudgment interest on the $10,000,000 damages award at the prime rate of 5.18% per annum (beginning in December 2004) through the date of this Final Judgment, compounded quarterly. This 5.18% rate is the prime rate averaged over the actual period of infringement. The Court believes that averaging the prime rate over the applicable timeline when the infringement occurred is the fairest way to achieve the compensatory purpose of pre-judgment interest.

---

[5] The parties agree that infringement first began in 2004. (Dkt. No. 274, at 3.)

**C. Post-Judgment Interest**

The parties agree that post-judgment interest should be set, pursuant to 28 U.S.C. §1961(a), at the statutory rate. The Court concurs.

**D. Prevailing Party Status and Costs**

Both SSL and Citrix believe they are the prevailing party in this case for purposes of Fed. R. Civ. P. 54 and 35 U.S.C. § 285.[6] In a patent case, Federal Circuit law governs the determination of which party has prevailed for purposes of Fed. R. Civ. P. 54(d) and 35 U.S.C. § 285. *Manildra Milling Corp. v. Oglivie Mills, Inc.*, 76 F.3d 1178, 1182 (Fed. Cir. 1996). To be a "prevailing party," the Federal Circuit requires that: (1) the party have received at least some relief on the merits and (2) that relief must materially alter the legal relationship between the parties by modifying one party's behavior in a way that "directly benefits" the opposing party. *Shum v. Intel Corp.*, 629 F.3d 1360, 1367 (Fed. Cir. 2010); *Farrar v. Hobby,* 506 U.S. 103, 111-13 (1992). "Courts frequently disallow costs when both parties have achieved some success." *Collegenet, Inc. v. Applyyourself, Inc.*, 2004 U.S. Dist. LEXIS 18841, *13-14 (D. Or. Feb. 10, 2004) (citing *Lifescan, Inc. v. Home Diagnostics*, 2001 U.S. Dist. LEXIS 22311, No. CIV A 96-597, 2001 WL 1339405, at *2 (D. Del. Oct. 30, 2001).

In this case, Citrix prevailed with regard to the '796 patent (a finding of non-infringement) and SSL prevailed with regard to the '011 patent (a finding of willful infringement, that the patent was not invalid and a maximum requested damages award). Clearly, both parties

[6] In a Motion filed July 23, 2012, Citrix notes that it "recognizes that motions for costs and/or attorney's fees under Rule 54 and 35 U.S.C. § 285 are made after issuance of the final judgment and that the filing of a brief in support of 'prevailing party' status is ordinarily unnecessary. However … to avoid both parties expending unnecessary time in calculating costs and fees, Citrix believes it to be appropriate to decide 'prevailing party' status prior to entry of final judgment." (Dkt. No. 275.) The Court agrees and resolves the issue of "prevailing party" status at this time.

achieved some success and sustained some failure. Accordingly, the Court finds that neither SSL nor Citrix is the "prevailing party" and holds that each side shall bear its own costs.

## IV. Conclusion

Based on the foregoing, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Plaintiff SSL Services, LLC's ("SSL") Motion for (1) Prejudgment Interest, (2) Post-Judgment Interest, (3) Enhanced Damages, and (4) Entry of Final Judgment (Dkt. No. 274); and **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants Citrix Systems, Inc. and Citrix Online, LLC's (collectively, "Citrix") Motion for Entry of Final Judgment and Request that it be Awarded Prevailing Party Status (Dkt. No. 275). A consistent Final Judgment is entered contemporaneously herewith.

**So ORDERED and SIGNED this 17th day of September, 2012.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE