**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **SSL SERVICES, LLC** | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:08-cv-158-JRG |
| | § | |
| **CITRIX SYSTEMS, INC., et al.** | § | |
| *Defendants.* | § | |
| | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the parties' post-trial motions.  Having considered the parties' written submissions, the Court: (1) **DENIES** Citrix Systems, Inc. and Citrix Online, LLC's ("Citrix") Motion for Judgment as a Matter of Law and New Trial on Damages Pursuant to Fed. R. Civ. P. 50 and 59 (Dkt. No. 299); (2) **DENIES** SSL's Motion for Judgment as a Matter of Law that the '796 Patent is Infringed (Dkt. No. 300); (3) **DENIES** SSL's Motion for a New Trial on the '796 Patent (Dkt. No. 301); (4) **DENIES** Citrix's Motion for Judgment as a Matter of Law and New Trial Concerning Non-Infringement and Invalidity of the '011 Patent (Dkt. No. 302); and (5) **DENIES** Citrix's Motion for Judgment as a Matter of Law and New Trial That it has not Willfully Infringed the '011 Patent (Dkt. No. 304).

## I.      BACKGROUND

SSL Services, LLC ("SSL") filed this patent infringement action on April 11, 2008, alleging that Citrix infringes claim 27 of U.S. Patent No. 6,061,796 ("the '796 patent").   In May 2009, SSL amended its complaint to additionally allege infringement of claims 2, 4 and 7 of U.S. Patent No. 6,158,011 ("the '011 patent").   On June 18, 2012, following a 5-day jury trial, the jury returned a unanimous verdict, finding that Citrix did not infringe claim 27 of the '796 patent, but

did infringe claims 2, 4 and 7 of the '011 patent.   The jury also found that the '011 patent was not

invalid, that Citrix's infringement was willful and awarded lump-sum damages of $10,000,000.00.

## II.    APPLICABLE LAW REGARDING RULE 50

Judgment as a matter of law is only appropriate when "a reasonable jury would not have a

legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a).

"The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to

patent law, reviewed under the law of the regional circuit in which the appeal from the district

court would usually lie."  *Finisar Corp. v. DirectTV Group, Inc.*, 523 F.3d 1323, 1332 (Fed. Cir.

2008).   The Fifth Circuit "uses the same standard to review the verdict that the district court used

in first passing on the motion."  *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995).   Thus, a

jury verdict must be upheld, and judgment as a matter of law may not be granted, unless "there is

no legally sufficient evidentiary basis for a reasonable jury to find as the jury did."  *Id.* at 700.

The jury's verdict must be supported by "substantial evidence" in support of each element of the

claims.  *Am. Home Assurance Co. v. United Space Alliance*, 378 F.3d 482, 487 (5th Cir. 2004).

A court reviews all evidence in the record and must draw all reasonable inferences in favor

of the nonmoving party; however, a court may not make credibility determinations or weigh the

evidence, as those are solely functions of the jury.  *See Reeves v. Sanderson Plumbing Prods.,*

*Inc.,* 530 U.S. 133, 150-51 (2000).   The moving party is entitled to judgment as a matter of law

"only if the evidence points so strongly and so overwhelmingly in favor of the []moving party that

no reasonable juror could return a contrary verdict."  *Porter v. Epps,* 659 F.3d 440, 445 (5th Cir.

2011) (alteration in original, citation omitted).

### III.    APPLICABLE LAW REGARDING RULE 59

Under Rule 59(a) of the Federal Rules of Civil Procedure, a new trial can be granted to any party to a jury trial on any or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court."   Fed. R. Civ. P. 59(a).   "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612-13 (5th Cir. 1985).   The Court must view the evidence "in a light most favorable to the jury's verdict, and [] the verdict must be affirmed unless the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary conclusion."   *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992).

### IV.    CITRIX'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL ON DAMGES PURSUANT TO FED. R. CIV. P. 50 AND 59 (DKT. NO. 299)

Citrix seeks judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) regarding damages on the grounds that (1) SSL is not entitled to pre-suit damages due to its failure to comply with the marking requirements of 35 U.S.C. § 287; (2) that the jury's award should be vacated because it was based on expert testimony that relied upon a non-comparable distribution agreement that should not have been admitted into evidence; and (3) that no reasonable jury could have arrived at the jury's $10 million award given the financial condition of V-One (the predecessor in interest to the '011 patent) at the time of the hypothetical negotiation.   (Dkt. No. 299.)   In the alternative to its motion for judgment as a matter of law under Rule 50, Citrix moves for a new trial pursuant to Rule 59 on the grounds that the jury verdict is against the weight of the evidence.

### A.  Judgment as a Matter of Law Regarding Marking Under 35 U.S.C. § 287(a)

Citrix first contends that no reasonable jury could have found that SSL and V-One complied with the marking requirements of 35 U.S.C. § 287(a).

i.   *Applicable Law*

As a prerequisite for obtaining pre-suit damages, the burden is on the patent owner to demonstrate that it complied with the marking requirements of 35 U.S.C. § 287(a).  *Maxwell v. Baker, Inc.,* 86 F.3d 1098, 1111 (Fed. Cir. 1996); *see also SmithKline Diags., Inc. v. Helena Labs. Corp.,* 926 F.2d 1161, 1164 (Fed. Cir. 1991).   The patent owner is required to plead and prove that it provided actual or constructive notice to an alleged infringer.  *Maxwell,* 86 F.3d at 1111.

To prove actual notice, a patent owner must show that it affirmatively communicated a "specific charge of infringement by a specific accused product or device."  *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994).   Merely showing that an alleged infringer knew that a particular infringer knew that a particular patent existed is insufficient to prove actual notice of infringement of that patent.  *Amsted*, 24 F.3d at 187.   It is not up to the alleged infringer to investigate whether its products infringe; rather the burden is on the patent owner to provide notice of infringement.  *See In re Seagate Tech., LLC,* 497 F.3d 1360, 1371 (Fed. Cir. 2007).

However, a patent owner can demonstrate constructive notice by showing that any patent articles made, offered for sale, or sold in the United States were appropriately marked.  *On Command Video Corp. v. LodgeNet Entm't Corp.*, No. C 95-546, 1995 U.S. Dist. LEXIS 20192, at *6 (N.D. Cal. 1995).   A patent owner that fails to make this showing if barred from recovering damages for any period prior to actual notice.  35 U.S.C. § 287(a).   However, the "recovery of

damages is not limited where there is no failure to mark, i.e., … where there are no products to mark." *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1219-20 (Fed. Cir. 2002) (abrogated on other grounds).   Put simply, there is no obligation to mark if a "patented article" does not exist.

> ii.    *Analysis*

Citrix argues that the jury's $10 million damages award (the precise amount advocated for by SSL's expert) is unsupported by the evidence because SSL or V-One failed to comply with the marking statute by failing to mark a "patented article" sold to the public and covered by the '011 patent.   Supporting this contention, Citrix notes that SSL's witness, Margaret Grayson – the former CEO at V-One – testified "both at trial and in her deposition" that V-One's SmartGate product embodied the patent-in-suit.   (Dkt. No. 299.)   Citrix further contends that the evidence presented at trial shows that SmartGate was sold by V-One beginning in June 2005 and that it was further sold from 2005 to 2009.   *Id*.   According to Citrix, SSL did not offer any evidence suggesting or providing that SSL or V-One ever marked the SmartGate product as required by 35 U.S.C. § 287.

SSL responds that it or V-One had no obligation to mark the SmartGate product because it is not a "patented article" covered by the '011 patent.   To support this position, SSL notes that the marking question was expressly presented to the jury in the Court's jury instructions:

> With regard to the '011 patent, if you find that SSL or V-One sells or has sold a product that includes the claimed invention, you must determine whether SSL or V-One has marked that product with the patent number…

> If you find that SSL or V-One did not sell a product covered by the '011 patent, damages begin without requirement for actual notice.

5

(6/18/12 AM Tr. at 61-62, Jury Instructions.)   Further, SSL argues that Ms. Grayson never testified *at trial* that SmartGate was covered by the '011 patent and that it is improper for Citrix to rely upon deposition testimony that was never presented to the jury.   (Dkt. No. 315, at 6.)   SSL also contends that it met its burden to show that SmartGate is not a patented article covered by the '011 patent because it presented evidence to the jury showing that the '011 patent itself describes SmartGate as a prior art system that is distinct from the claimed invention of the '011 patent.   *Id.* at 4.

In this case, substantial evidence supports the jury's conclusion that SSL complied with the marking statute of 35 U.S.C. § 287.   Both SSL and Citrix relied heavily on Figure 2 of the '011 patent at trial, which depicted a prior art system.   The specification is clear that the prior art system shown in Figure 2 can be SmartGate and that SmartGate is not the invention claimed in the '011 patent.   *See* '011 patent, col. 8, ll. 6-26 (explaining that SmartGate is depicted as the prior art system of Figure 2, which is not the invention, but instead "the software represented by SmartGate is simply referred to as client authentication software.").   This evidence of SmartGate as a *prior art* system to the '011 patent provides substantial evidence that SmartGate is not *covered* by the '011 patent, but is actually *prior art* to the '011 patent.   Further, the testimony of Ms. Grayson that was presented to the jury does not support the conclusion that she believed that the SmartGate product covered the claims of the '011 patent.   The transcript reveals that when questioned by Citrix's counsel on the issue, Ms. Grayson did not express any understanding regarding whether or not SmartGate "embodied" the '011 patent.   (6/12/12 PM Tr. at 66:16-67:15).   In conclusion, there exists substantial evidence to support the jury's verdict finding that no claim of the '011 patent was covered by the SmartGate product.

**B.  Judgment as a Matter of Law Regarding Allegedly Non-Comparable Licenses**

Citrix next contends that the record lacks substantial evidence supporting the royalty rate that underpinned the jury's $10 million lump sum award because the royalty rate was based upon an allegedly non-comparable license.

i.      *Applicable Law*

To ascertain the reasonable royalty, patentees commonly consider a hypothetical negotiation in which the asserted patent claims are assumed valid, enforceable and infringed, and attempt to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began.  *Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).   Under Federal Circuit law, "[a]ny rate determined by the trier of fact must be supported by relevant evidence."  *Unisplay, S.A. v. Am. Elec. Sign Co.,* 69 F.3d 512, 517 (Fed. Cir. 1995).   Further, any "licenses relied on by the patentee in proving damages [must be] sufficiently comparable to the hypothetical license at issue" to support a reasonable royalty analysis.  *Lucent,* 580 F.3d at 1325; *see also Georgia-Pacific Corp. v. U.S. Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y.).   The patent holder has the "burden to prove that licenses relied on were sufficiently comparable to sustain" its damages award.  *Lucent,* 580 F.3d at 1332.

ii.     *Analysis*

The royalty rate SSL's damages expert used to calculate the lump sum award was derived from 2000 and 2001 Licensing and Distribution Agreements ("Licensing Agreements") entered into between V-One and Citrix.   The Licensing Agreements incorporate the '011 patent as relevant to the underlying technology of the Licensing Agreements.  *See* PTX-167.   During the

7

pre-trial conference, this Court found the Licensing Agreements to be properly admissible into evidence, ruled that they were appropriate for comparison in this matter for purposes of a reasonable royalty analysis and found that they were relevant to numerous *Georgia-Pacific* factors.  They were pre-admitted into evidence for SSL's use at trial to support the opinion of SSL's damages expert.

Citrix contends that the Licensing Agreements should never have been admitted into evidence because they are not sufficiently comparable to the non-exclusive domestic patent license that would result from the hypothetical negotiation of a *Georgia-Pacific* analysis.  Citrix contends that the Licensing Agreements merely provided for rebranding and support services; and that they did not provide Citrix with any *patent* license or the right to make, use or sell any product other than the Citrix Extranet specifically identified in the Licensing Agreement.  Further, Citrix argues that the Licensing Agreement gave Citrix "rights to the entire [SmartGate] product," which SSL's expert conceded "would not be part of" a hypothetical patent licenses.  (Dkt. No. 299, at 10.)

SSL responds that (1) Citrix waived the right to challenge the sufficiency of the jury's verdict pursuant to Rule 50(b) because it failed to challenge the comparability of the V-One agreement in a Rule 50(a) motion; (2) the Licensing Agreement were properly admitted and considered by the jury because they are sufficiently "comparable"; and (3) SSL's expert exhaustively analyzed the similarities and differences between the Licensing Agreements to the hypothetical negotiations.

In this case, substantial evidence supports the jury's damages award and the Licensing Agreements are sufficiently "comparable" to be probative of the hypothetical negotiation.  While

it is true that the Licensing Agreements are not *patent* licenses, they are sufficiently comparable because they involve the actual parties to the hypothetical negotiation (V-One and Citrix) and because they incorporate the '011 patent as relevant to the technology underlying the Licensing Agreement.   *See* PTX-167.   The Licensing Agreements were properly admitted and, as Citrix's damages expert admitted on the stand, "as far as we know, that's as close as – to comparable as we're going to get."   (6/15/12 PM Tr., at 95:20-21.)   The Licensing Agreements were properly admitted for the additional reason that they are relevant to other *Georgia-Pacific* factors, not just as "comparable licenses."   For example, as SSL's expert explained, the Licensing Agreements are relevant to establish the licensing policies and concerns of V-One, and the competitive position of the parties.   (6/13/12 PM Tr., at 150:15-154:5.)   SSL's expert further explained that the Licensing Agreements involved the same parties and that they were executed just prior to the date of the hypothetical negotiation.   In conclusion, the Licensing Agreements were properly admitted into evidence and relied upon by SSL because they are relevant to numerous *Georgia-Pacific* factors.[1]

### C.   Judgment as a Matter of Law Regarding The Value of V-One and the Revenue Base

Finally, Citrix contends that the jury's damages award is unsupported because (1) no reasonable jury could find that the '011 patent was worth more than V-One's total valuation as a company at the time of the hypothetical negotiation; and (2) because the award was erroneously derived from a revenue base that did not account for actual usage of the accused Access Gateway ("Access Gateway") features.

---

[1] Having found that the Licensing Agreements were properly admitted into evidence and considered the jury, the Court does not reach the question of whether Citrix waived this issue by failing to address their comparability arguments in a Rule 50(a) motion.

        *i.*     *Applicable Law*

A patentee is entitled to damages for infringement adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and cost as fixed by the court.   35 U.S.C. § 284.   To carry its burden of proof on damages, a patent owner must sufficiently tie the expert testimony on damages to the facts of the case.   *Uniloc USA v. Microsoft Corp.*, 632 F.3d 1292, 1317-18 (Fed. Cir. 2011).

        *ii.*     *Analysis*

During trial, V-One's former CEO, Margaret Grayson, testified that V-One as a company had a valuation of $3 million in November 2004; the same time period as the hypothetical negotiation for the '011 patent.   Citrix argues that no reasonable juror could have found that a prudent business would have paid more for a non-exclusive license to a single patent than what it could have paid to acquire the entire company.   (Dkt. No. 299.)   The Court disagrees.   The mere fact that V-One was valued at $3 million in 2004 or that SSL acquired the '011 patent in a 2005 transaction for $800,000 does not suggest that the jury's verdict was "either so outrageously high or so outrageously low as to be unsupportable as an estimation of a reasonable royalty."   *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995).   As SSL's expert explained at trial, the V-One valuation and patent-portfolio sale took place under the "very different" circumstances of a "fire sale" and have little influence on the assessment of patent damages.   (6/13/12 PM Tr., at 35-36.)   Here, the jury carefully considered all of the evidence and determined that V-One's valuation in 2004 and the amount paid for the patents in 2005 did not limit the reasonable royalty that was due to SSL.   There was substantial evidence in the record to support such a conclusion.

Citrix also argues that SSL's expert provided insufficient testimony to support the jury's verdict because his royalty rate was not tied to evidence of actual use of the accused Access Gateway feature found within Citrix's Xen App Platinum and Xen Desktop Platinum ("Xen Platinum") products.   Citrix argues that Xen Platinum products include "many, many additional features" beyond the accused Access Gateway.   In fact, Citrix argues that substantial evidence shows that the vast majority of purchasers of Xen Platinum products did not use the Access Gateway functionality.   Again, the Court disagrees.   SSL's expert offered testimony and presented several Citrix internal documents that specifically stated that Access Gateway was vital to the success of the Xen Platinum products and that the patented features within Access Gateway drove sales.   (6/13/12 PM Tr., at 120:7-121:3; PTX-255.)   SSL's expert also analyzed several Citrix documents detailing how Citrix attributed revenue to Access Gateway from the Xen Platinum products, which reflected Citrix's own valuation of Access Gateway to the Xen Platinum products.   (PTX-233; 234.)   In conclusion, there was substantial evidence of actual use of the accused Access Gateway products within the Xen Platinum products to support the jury's damages award.

### D.  Conclusion

Based on the foregoing, the Court **DENIES** Citrix's Motion for Judgment as a Matter of Law and New Trial on Damages Pursuant to Fed. R. Civ. P. 50 and 59 (Dkt. No. 299).

## V.    SSL'S MOTION FOR JUDGMENT AS A MATTER OF LAW THAT THE '796 PATENT IS INFRINGED (DKT. NO. 300)

SSL contends that it is entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) on the grounds that Citrix improperly prejudiced the jury by its comparison of the accused GoTo products with preferred embodiments of the '796 patent, by narrowing the claim

constructions adopted by the Court and by applying product-specific non-infringement arguments to all of the GoTo products.   (Dkt. No. 300.)   SSL further contends that it entitled to judgment as a matter of law of direct and indirect infringement of the '796 patent by Citrix's use of the GoTo Products.   *Id.*

### A.  Judgment as a Matter of Law Regarding Comparison of Accused Products to the Preferred Embodiments

SSL first contends that it entitled to judgment as a matter of law because Citrix improperly prejudiced the jury by comparing the accused GoTo products to the preferred embodiment of the '796 patent.

### i.    *Applicable Law*

To prove infringement, the plaintiff must show the presence of every element or its equivalent in the accused device.  *Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985).   Determining infringement is a two-step process: "'[f]irst, the claim must be properly construed to determine its scope and meaning.   Second, the claim as properly construed must be compared to the accused device or process.'"   *Absolute Software, Inc. v. Stealth Signal, Inc.,* 659 F.3d 1121, 1129 (Fed. Cir. 2011) (citing *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993)).   "A determination of infringement is a question of fact that is reviewed for substantial evidence when tried to a jury."   *ACCO Brands, Inc. v. ABA Locls Mfr. Co.*, 501 F.3d 1307, 1311 (Fed. Cir. 2007).

### ii.    *Analysis*

In arguing that the accused GoTo products did not infringe claim 27 of the '796 patent, Citrix's expert relied upon (among other things) a figure from the '796 patent that depicts the preferred embodiment of the invention.   SSL contends that Citrix's subsequent comparison of the

accused GoTo products to Figure 3, a preferred embodiment, was "highly prejudicial" and "misleading," suggesting to the jury that the claimed invention was no broader than the example shown in Figure 3.   (Dkt. No. 300, at 8.)   The Court disagrees for at least two reasons.

*First*, SSL has waived any objection it might have had to the testimony presented at trial because it failed to object to such testimony during the direct examination at trial.   *See SynQor, Inc. v. Artesyn Techs., Inc.,* No. 2:07-cv-497, U.S. Dist. LEXIS 91693, at *84-85 (E.D. Tex. Aug. 17, 2011).   Though the Court denied SSL's pre-trial motion *in limine* regarding the comparison of preferred embodiments to the claims, such ruling did not relieve SSL of its obligation to renew its objection to the evidence at trial.   In fact, in the Order ruling on the parties' motions *in limine*, the Court explicitly stated that "[t]he Court's ruling on a motion *in limine* **is not a definitive ruling on the admissibility of evidence**."   (Dkt. No. 219, at 1(emphasis added).)   The Court further warned that "an order denying a motion *in limine* does not relieve a party from making an objection at trial." *Id*.   In this case, SSL did not definitively object to the admission of Citrix's expert's testimony regarding the comparison of the preferred embodiments to the claims.   (*See* 6/15/12 AM Tr. at 81:19-88:6 ("Figure 3 is a preferred embodiment.   It is not the claim.   So long as it's identified as such, I have no objection.").)   Immediately following this statement, Citrix's expert identified Figure 3 as the preferred embodiment and testified that he was not informing the jury that Figure 3 was the only way to implement the claimed invention.   By failing to expressly object to the testimony when it was presented at trial, SSL has therefore waived any objection that it might have had.

*Second*, Citrix's expert's testimony regarding the preferred embodiments amounted to nothing more than an effort to educate the jury about the teachings of the '796 patent.   On

cross-examination, Citrix's expert testified that Figure 3 is "a preferred embodiment of the invention, yes." (6/15/12 AM Tr. at 138:12-17.) Citrix's expert also testified that it would be improper to predicate an infringement opinion based on a comparison of Figure 3 and the accused products. (6/15/12 AM Tr. at 137:12-18.) Citrix's expert even explained "that's why I continually tie it back to the claim language, and that's why we had the claim on the board." *Id.* In sum, the jury was presented with substantial evidence and testimony to show that Figure 3 was only a preferred embodiment and that infringement was determined by analyzing the claims and not the preferred embodiments.

In conclusion, Citrix's testimony regarding the preferred embodiment was proper and, in any event, SSL waived any objection it may have had by failing to object during trial.

**B. Judgment as a Matter of Law Regarding Allegedly Improper Testimony Related to the Court's Claim Construction of "Destination Address"**

SSL next contends that is entitled to judgment as a matter of law because Citrix improperly prejudiced the jury by asserting that the accused GoTo products did not use the destination address recited in the claims by improperly adding limitations to the Court's construction of "destination address." The Court disagrees.

Citrix's expert correctly told the jury that the Court construed "destination address" to mean "the network address of a computer or server." (6/15/12 AM Tr. at 32:25-33:5.) Citrix's expert further explained in detail his opinion as to why MeetingID in GoToMeeting, Machine Key/QuickConnect ID in GoToMyPC, and SessionID/Query Key in GoToAssist cannot be "destination addresses" as that term was construed by the Court. (Dkt. No. 312 at 14-17, 24-25.) Such explanation did not depend upon limiting the claim term "destination address" to an IP address, but rather was based on Citrix's expert's explanation of how the GoTo products actually

function.  *Id.*  As such, Citrix's expert's testimony on the "destination address" limitation fully supports the jury's finding that Citrix does not infringe the '796 Patent.

In conclusion, Citrix's testimony regarding the comparison of the GoToProducts to the "Destination Address" was proper.

### C. Judgment as a Matter of Law Regarding Which GoTo Products Met the Step Order Limitation Literally and Under the Doctrine of Equivalents

SSL also contends that Citrix prejudiced the jury by confusing which GoTo Products met the step order limitation set forth in the Court's claim construction literally and under the doctrine of equivalents.  The Court disagrees.  Citrix's expert explicitly stated that his step order argument did not apply to GoToMeeting, but only applied to GoToMyPC and GoToAssist (6/15/12 AM Tr. at 79:16-21, 80:19-81:4.)  In conclusion, the record is clear that Citrix's testimony regarding the step order limitation did not apply to GoToMeeting, but did apply to GoToMyPC.

### D. Judgment as a Matter of Law of Direct Infringement of the '796 Patents

SSL contends that it is entitled to judgment as a matter of law of direct infringement of the '796 Patent by Citrix's use of the GoTo Products because SSL's evidence before the jury demonstrated that: (1) each GoToProduct includes a shim that intercepts and diverts function calls and requests for service; (2) each GoTo Product uses a Destination Address as recited in Claim 27; (3) GoToMeeting, GoToWebinar, GoToTraining and GoToAssist each literally meet Claim 27's group order requirement; (4) GoToMyPC meets the group order requirement of claim 27 under the doctrine of equivalents; and (5) the GoTo Products meet all other limitations of Claim 27.  The Court disagrees.

15

Reviewing the evidence at trial as a whole, Citrix proffered substantial evidence on multiple grounds that support the jury's finding of non-infringement, including that (1) the GoTo Products do not have "shims" and that the "intercepting" steps are not practiced; (2) SSLs expert's opinion that MeetingID, Machine Name Key, and Session ID are computer "network addresses" was wrong and that the GoTO Products do not meet the "destination address" limitations; and (3) neither GoToMyPC nor GoToAssist meet the step order requirement recited in the Court's *Markman* ruling.   Citrix's opposition (Dkt. No. 312) to SSL's judgment as a matter of law cites to substantial trial testimony to support each of the non-infringement positions identified above. The Court finds this testimony to be compelling on this issue.   In conclusion, substantial evidence supports the jury verdict of non-infringement of the '796 patent.

### E.  Judgment as a Matter of Law of Indirect Infringement of the '796 Patents

SSL finally contends that it is entitled to judgment as a matter of law of indirect infringement of the '796 patent.  The Court disagrees.  As discussed above, Citrix introduced substantial evidence at trial demonstrating that the use of the GoTo Products does not directly infringe claim 27.  Therefore, Citrix cannot indirectly infringe as a matter of law.  *See Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1360 (Fed. Cir. 2012) ("Inducement of infringement requires that there be a showing of an underlying act of direct infringement."); *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004).   In conclusion, substantial evidence supports the jury verdict of non-infringement of the '796 patent.

### F.  Conclusion

Based on the foregoing, the Court **DENIES** SSL's Motion for Judgment as a Matter of Law that the '796 Patent is Infringed (Dkt. No. 300).

## VI.   SSL'S MOTION FOR A NEW TRIAL ON THE '796 PATENT (DKT. NO. 301)

Pursuant to Fed. R. Civ. P. 59, SSL moves for a new trial with respect to infringement, willful infringement and damages of the '796 Patent.   (Dkt. No. 301.)   SSL's Motion relies on the same arguments as discussed above with regard to SSL's judgment as a matter of law of infringement of the '796 Patent.   As noted above, the Court disagrees with each of SSL's arguments and finds that substantial evidence supports the jury' verdict of non-infringement of the '796 Patent.   Accordingly, the Court **DENIES** SSL's Motion for a New Trial on the '796 Patent (Dkt. No. 301).

## VII.   CITRIX'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL CONCERNING NON-INFRINGEMENT AND INVALIDTY OF THE '011 PATENT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 50 AND 59 (DKT. NO. 302)

Citrix contends that it is entitled to judgment as a matter of law or a new trial concerning the non-infringement and invalidity of the '011 Patent on the grounds that: (1) the Jury's verdict that Access Gateway and NetScaler ("Netscaler") infringe Claims 2, 4, and 7 of the '011 Patent is not supported by substantial evidence; (2) no reasonable jury could find contributory or induced infringement; and (3) no reasonable jury could find Claims 2, 4, and 7 of the '011 Patent valid. (Dkt. No. 302.)   Further, Citrix seeks a new trial because it contends that: (1) the Court improperly precluded a Citrix witness from offering testimony concerning Citrix's state of mind; and (2) the Court improperly precluded evidence of the reexamination.   *Id.*

### A. Judgment as a Matter of Law Regarding Whether the Jury's Infringement Verdict as to Access Gateway and Netscaler is Supported by Substantial Evidence

Citrix contends the jury's infringement verdict is not supported by substantial evidence because (1) SSL proffered no evidence that Access Gateway and Netscaler "encrypt files" and (2)

SSL did not adduce substantial evidence that that Access Gateway and Netscaler are "arranged to perform computer authentication."   The Court disagrees.

### 1.   *SSL Proferred Substantial Evidence to Prove that Access Gateway and Netscaler "Encrypt Files"*

The Court construed the term "encrypt files" as "to render a set of data used by a program unintelligible without decrypting."   (Dkt. No. 123, at 33.)   The Court's claim construction elaborated that "at a minimum the encryption must occur at the file level."   *Id*.   Citrix contends that SSL did not present evidence at trial to establish that Access Gateway or Netscaler encrypt "files" as required by claims 2, 3 and 4 of the '011 patent.   (Dkt. No. 302, at 6.)   In particular, Citrix argues that SSL's expert "did not discuss the accused Access Gateway or Netscaler software, explain how the accused software performs encryption, or how the accused software could possible satisfy the 'encrypt files' limitation of claims 2, 4 and 7 as construed by the Court." (Dkt. No. 302, at 6.)

SSL responds that, on multiple occasions, its expert "showed the jury copies of diagrams provided in Citrix documents that illustrate the flow of data in the Access Gateway and Netscaler products."   (Dkt. No. 314, at 5.)   SSL cites to the following trial exhibits, which their expert testified about in detail during the trial: PTX-350 at SSL001008, PTX-014 at CT-S1630582, and PTX-015 at CT-S3233710.   Each of these exhibits were presented to the jury and explained by SSL's expert to show that data is used by a program (for example, Internet Explorer) that is incorporated by a shim and directed to the Net6VPN.exe program where it is encrypted.   (Dkt. No. 314, at 6.)

The Court finds that substantial evidence supports the jury's verdict that Access Gateway and Netscaler "encrypt files," as that term is construed by the Court.   SSL and its expert displayed

several demonstrative slides which provided evidence sufficient for the jury to determine that the

Access Gateway and Netscaler products did indeed encrypt files.   All of the figures and text on

those demonstrative slides were taken directly from the source documents that were entered into

evidence. While Citrix argues that SSL's expert alleged that a "file" is the same as a "packet" or

"datagram," (which would contradict the Court's Claim Construction Order), the record is clear

that SSL's expert did not testify as such.   For example, when referring to one of the applications

listed in the Citrix diagrams, SSL's expert testified as follows:

> Q.      Let's take a program like Internet Explorer.   If you're
> familiar – you were to go on the Internet, you know, Internet
> Explorer is the Microsoft version of a web browser, right?   That's
> an application program correct?
>
> A.      It is indeed.

(6/13/12 AM Tr. at 92:7-12.)   This is consistent with SSL's expert's testimony overall, which

showed how data that is used by a program (*e.g.,* Internet Explorer) is intercepted by a shim and

directed to the Net6VPN.exe program where it is encrypted.   For this reason alone, substantial

evidence supported the jury's verdict with regard to the "encrypt files" limitation.

> 2.   *SSL Proferred Substantial Evidence to Prove that Access Gateway and Netscaler are "Arranged to Perform Computer Authentication"*

Citrix next contends that the jury's verdict is not supported by substantial evidence to show

that Access Gateway and Netscaler are "arranged to perform computer authentication," as required

by claims 2 and 4 of the '011 patent.   (Dkt. No. 302, at 7.)   Citrix argues that SSL presented no

evidence at trial to demonstrate that either Access Gateway or Netscaler actually contain software

that is configured to or capable of performing computer authentication.   *Id*. at 8.   The Court

disagrees.

During trial, SSL's expert explained to the jury (using the Citrix diagram shown on CT-S1630582 of PTX-014) that:

> This shows that the – the application level encryption and authentication software in Access Gateway is actually what I've highlighted in red here.   It's a Citrix program called Net6VPN.exe. And that provide the – what's required here in this limitation, mutually authenticating the server and the client and generating a session key.

(6/13/12 AM Tr. at 47:11-18.)   In explaining how mutual authentication was performed, SSL's expert further showed pages from PTX-363, which is a Citrix Access Gateway guide for administrators.   For example, SSL's expert showed CT-S0753576 of PTX-363 to the jury, which describes that Access Gateway products use SSL, and that certificates are used in connection with authentication for the Access Gateway products.   SSL's expert further explained that a "server certificate" is used to authenticate client computers, which "explains configuring secure management and how that is used to actually authenticate the computers."   (6/13/12 AM Tr. at 48:6-8.)   These are merely representative (and not exhaustive) examples of the testimony presented which establish clear support for the jury's finding that Access Gateway and Netscaler are configured to perform computer authentication.

### B.  Judgment as a Matter of Law Regarding Whether a Reasonable Jury Could Find Contributory or Induced Infringement

Citrix argues that no reasonable jury could find contributory or induced infringement because (1) SSL proferred no evidence of any underlying or direct infringement; (2) SSL did not adduce evidence of lack of substantial non-infringing uses for contributory infringement; and (3) SSL failed to adduce that Citrix had the requisite knowledge and specific intent for induced infringement.   (Dkt. No. 302, at 11-13.)   The Court disagrees.

*1.  SSL Presented Substantial Evidence of Direct Infringement*

The only two bases for Citrix's argument that SSL did not present substantial evidence of direct infringement relate to the "encrypt files" and "computer authentication" limitations.   As discussed, above, SSL presented substantial evidence to support the jury's verdict with regard to these limitations.   Accordingly, substantial evidence supported the jury's verdict of direct infringement.

### 2.   *SSL Presented Substantial Evidence of Contributory Infringement*

Citrix contends that the jury's verdict regarding contributory infringement is not supported by substantial evidence because SSL did not show that the accused devices have "no substantial non-infringing uses."   *See Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2067 (2011); 35 U.S.C. § 271(c).   Citrix's argument rests on two points: (1) that the Access Gateway functionality of Netscaler is only an add-on to Netscaler and not the main reason that customers purchase the device and (2) that the Access Gateway products can be used in a non-infringing manner.   (Dkt. No. 302, at 12.)   The Court disagrees.

In *Ricoh Co. v. Quanta Computer, Inc.*, the Federal Circuit concluded that the embedding of an infringing component into a larger product with some additional, separable feature is not sufficient to escape liability as long as the embedded component itself has no substantial non-infringing uses.   550 F.3d 1325, 1337 (Fed. Cir. 2008).   A presumption is made that "one who sells a product containing a component that has no substantial noninfringing use in that product does so with the intent that the component will be used to infringe."   *Id*. at 1338.   Therefore, even if Access Gateway were an add-on feature to Netscaler, this fact alone is not sufficient to prevent liability for Citrix's contributory infringement.   If the Access Gateway product itself is not a staple product capable of substantial non-infringing uses, then its inclusion in

21

Netscaler must be with the intent that the Access Gateway product will be used in an infringing manner.

In this case, Citrix's witnesses testified that the Access Gateway products can operate in three different modes.   (6/14/12 AM Tr. at 134:17-138:23.)   Operation of the VPN SSL mode is separate from and not incidental or necessary to the practice of the other two operating modes. Citrix's own testimony was therefore sufficient to convey to the jury that the Access Gateway products, and thus Netscaler, were not the type of articles or commodities of commerce that would avoid a finding of liability.   The Citrix products include multiple ways of use, one of which clearly infringes the asserted claims of the '011 patent.   Thus, Citrix cannot take shelter in arguing their products are staple articles capable of a substantial non-infringing use.   The Court finds that there is substantial evidence which can support a jury verdict of contributory infringement.

### 3.  SSL Presented Substantial Evidence of Contributory Infringement

Citrix also contends that substantial evidence was not presented at trial to show that Citrix knew of the '011 patent and had the specific intent to induce others to infringe the '011 patent.

Regarding knowledge, the evidence at trial clearly demonstrates that Citrix was aware of the '011 patent and its subject matter.   A former employee of Citrix testified that, acting on behalf of Citrix, he reviewed and negotiated multiple license agreements between Citrix and V-One. (6/14/12 AM Tr. at 84:6-85:8, 88:18-89:1, 98:25-99:7.)   Attached to each of those agreements was an identification of relevant patents and patent applications owned by V-One.   *Id.* at 86:13-15.   Citrix's former employee testified that he was aware of the V-One patents, including the '011 patent, as a result of his review of the Citrix/V-One license agreements.   *Id.* at 129:8-11.

Regarding intent, the evidence presented at trial indicates that Citrix knew or should have known of the '011 patent and that Citrix directed its customers to use the Access Gateway and Netscaler products, knowing that the customers would be infringing the patents-in-suit.   For example, testimony was presented to the jury by Mr. Smith, a Citrix witness, showing that Citrix provided its customers with detailed documentation on how to use the Access Gateway products in an infringing manner.   The testimony included the following: "Included with the purchase of these products are technical manuals.   The technical manuals cover the configuration of all the features of the product, including SSL VPN."   (6/13/12 PM Tr. at 8:22-9:2); *see also,* PTX-014, 015, 350, 395 (examples of technical documents provided to Citrix's customers and shown to the jury).   The jury's finding of induced infringement regarding the issues of knowledge and intent are supported by substantial evidence.

### C.   Judgment as a Matter of Law Regarding Whether a Reasonable Jury Could Find Claims 2, 4, and 7 of the '011 Patent Not Invalid

Citrix argues that it presented clear and convincing evidence that (1) claims 2 and 4 of the '011 Patent are invalid for failure to meet the written description requirement of 35 U.S.C. § 112, ¶ 1 because they do not describe the claimed computer authentication; (2) claim 7 is anticipated under 35 U.S.C. § 102 by a reference entitled: "Communication Method with Data Compression and Encryption for Mobile Computer Environment" by Takahashi et al. ("Takahashi"); and (3) that claims 2, 4, and 7 under 35 U.S.C. § 103 by the combination of Takahashi and RFC 1508. The Court disagrees.

#### 1.   Citrix Failed to Present Clear and Convincing Evidence that Claims 2 and 4 are Invalid for Lack of Written Description

As discussed above, the Court's claim construction order construed claims 2 and 4 as requiring computer authentication.   Citrix argues that claims 2 and 4 are invalid under 35 U.S.C. §

23

112 because the specification of the '011 Patent does not disclose or describe computer authentication.  (Dkt. No. 302.)

At trial, Citrix's expert, Dr. Smith, opined that he did not believe that the '011 patent described computer authentication.  (6/15/12 AM Tr. at 118:2-3.)  He testified that the '011 patent only described *user* authentication.  *Id*. at 121:19-122:10.  SSL's expert, on the other hand, when asked whether he had found sufficient written description for the claim feature of authenticating a client computer, pointed to a specific line number in the specification of the '011 patent: "If you see in Column 2, it says – let's see.  Around about Line 32, it says … while a detailed description of a mutual authentication and encryption system and method suitable for use in connection with the present invention can be found in U.S. Patent No. 5,602,918, which is incorporated herein by reference."  (6/15/12 PM Tr. at 133:18-134:23.)  In other words, SSL's expert explained that a portion of the written description that supported the Court's claim construction of the authenticating a client computer was found in the '918 patent, which is incorporated into the specification of the '011 patent by reference.  As the Citrix noted during claim construction:

> The '918 patent, which is incorporated by reference, also confirms that "mutual authentication" is a process in which two entities to a communication verify one another's identity.  In this case, the claims explicitly recite two entities to be authenticated – the "client computer" and the "server."

(Dkt. No. 101, at 28.)[2]  Given the record before the Court and the evidence presented at trial, the Court finds substantial evidence to support the jury's verdict that Citrix failed to meet its burden

---

2 SSL argues, and the Court agrees, that Citrix arguments regarding the lack of written description argument should be barred by the doctrine of judicial estoppel.  *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . . .  This rule, known as judicial estoppel,

that claims 2 and 4 of the '011 patent are invalid for failing to meet the written description requirement of 35 U.S.C. § 112.

> 2.  *Citrix Failed to Present Clear and Convincing Evidence that Claim 7 is Anticipated by Takahashi*

For a prior art reference to anticipate a patent claim, it must describe each and every limitation of the claimed invention.   *See ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340, 1244 (Fed. Cir. 2012) (citing *Am. Calcar, Inc. v. Am. Honda Motor Corp.*, 651 F.3d 1318, 1341 (Fed. Cir. 2011)).   Citrix contends that Takahashi anticipates claim 7 of the '011 patent. SSL disagreed and presented substantial evidence in support of its position.

At trial, SSL's expert identified at least one requirement or limitation of claim 7 that was not present in Takahashi:

> Q.      Based on your investigation and analysis, did you find that there was one claim feature missing from – from the Takahashi reference given respect to Claim 7
> A.      Yes, indeed.
> Q.      And what was that?
> A.      That's the applications level authentication and encryption program.

(6/15/12 PM Tr. at 129:15-22.)   SSL's expert then proceeded to explain why the object in Takahashi that Citrix's expert had identified as being an applications level authentication and encryption program was not analogous to the recited applications level authentication and encryption program.   In doing so, SSL's expert presented to the jury the Takahashi reference, DTX-13, and focused the jury on Figure 8 on CT-S1876234.   Figure 8 includes a box labeled Compress and Encryption Process which Citrix's expert indicated to be the claimed applications

---

'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'") (internal citations omitted).   Citrix's written description arguments are an about face from claim construction, which recite that its proposed construction was supported by the disclosure of the '918 patent, which was incorporated by reference.

level authentication and encryption program.   SSL's expert disagreed that the identified software was actually at the application level.   (6/15/12 AM Tr. at 104:24-105:16.)

In sum, the Court finds that substantial evidence supports the jury's verdict that Citrix did not present clear and convincing evidence of anticipation, particularly for the reason that the object identified in Takahashi by Citrix's expert was not analogous to the recited applications level authentication and encryption program in the claims.

> 3.   *Citrix Failed to Present Clear and Convincing Evidence that Claims 2, 4 and 7 Are Rendered Obvious by the Combination of Takahashi and RFC 1508*

Under 35 U.S.C. § 103, a claim is invalid if the patented invention would have been obvious in light of the prior art to a person having ordinary skill in the art at the time the invention was disclosed.   *See KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 401 (2007); 35 U.S.C. § 103. A determination of obviousness requires an inquiry into the scope and content of the prior art, the level of ordinary skill in the art, and the differences between the claimed inventions and the prior art. *Graham v. John Deere Co*., 383 U.S. 1, 17 (1966).

In this case, it is clear from the record that Citrix did not meet its burden of showing by clear and convincing evidence that Claim 2, 4, and 7 of the '011 patent are obvious in view of Takahashi and RFC.   SSL's expert provided the following explanation for why Takahashi and RFC 1508 failed to teach the authentication limitation of the claims:

> Q.   And can you explain why you don't believe that they do?
>
> A.   This is a generic security service application program interface, which is just a framework.   It's – it's a place where you can put various mechanisms.   You can write various mechanisms and add them to this, but this is merely a framework. And this does not show you how to do authentication.
>
> It provides none of the details that you would need in order to actually implement authentication.   It simply provides the framework.

26

(6/15/12 PM Tr. at 132:16-133:1.)   In other words, the jury was presented evidence sufficient to show that, while RFC 1508 taught a framework, the necessary details for applying the specific authentication recited in claims 2 and 4 were not present in RFC 1508.   Citrix did not present substantial evidence which would support a jury verdict that the authentication limitation is disclosed by RFC 1508.   Further, as discussed above, Takahashi is also deficient with regard to at least the authentication limitation of the claims.   In sum, substantial evidence supports the jury's conclusion that Citrix did not show by clear and convincing evidence that claims 2, 4 and 7 were invalid as obvious by the combination of Takahashi and RFC 1508.

4.   *The USPTO Recently Confirmed the Validity of Claims 2, 4 and 7 of the '011 Patent*

On November 29, 2012, the reexamination of claims 2, 4 and 7 of the '011 patent concluded, with the USPTO *confirming* the validity of all reexamined claims.   The USPTO examiner considered both the Takahashi and RFC 1508 references and found that they did not anticipate or render obvious claims 2, 4 and 7.   The USPTO specifically found that "there is insufficient evidence to conclude that the authentication/encryption of Takahashi … are performed at the applications level."   While the jury's verdict is independent of the analysis undertaken at the USPTO, the USPTO decision at least validates the jury's finding that claims 2, 4 and 7 of the '011 patent are not invalid under 35 U.S.C. § 102 and § 103.

**D.  Motion for a New Trial Regarding the Court's Evidentiary Rulings**

Finally, Citrix moves for a new trial pursuant to Fed. R. Civ. P. 58 on the grounds that (1) the Court improperly precluded a Citrix witness from offering testimony concerning state of mind; and (2) the Court improperly precluded evidence of the reexamination proceedings of the '011 patent.   (Dkt. No. 302, at 27-30.)

*1.   The Court Properly Precluded Marco Murgia From Offering Testimony Concerning Citrix's State of Mind*

On May 24, 2012, the Court granted SSL's Motion *in Limine* No. 9 (Dkt. No. 197, at 25), which required the parties to "approach the bench before offering opinion testimony by a lay witness so the Court can evaluate whether the testimony to be rendered is appropriate under Federal Rules of Evidence 701."   (Dkt. No. 219, at 3.) At trial, Citrix approached the bench and sought permission to allow certain fact witnesses to testify as to their opinion regarding whether the Citrix products infringed the asserted patents.  Specifically, Citrix sought to introduce the evidence and testimony of its corporate representative, Mr. Marco Murgia, to testify as to his opinion that Citrix did not infringe the '011 patent and that the '011 patent was not valid. According to Citrix, Mr. Murgia would have expressed such belief without applying this Court's claim construction.   (6/14/12 AM Tr. at 7:16-19.)   The Court denied this request on the grounds that it would be significantly prejudicial to allow a fact witnesses to testify as to his opinions on the issues of infringement and validity, particularly when the testimony expressing such an opinion would be rendered *without* regard for how this Court has construed the claims.

Citrix argues that Mr. Murgia's testimony was required to provide evidence of Citrix's intent or "state of mind," which may be considered in determining whether Citrix met the "specific intent" prong of the willfulness inquiry.   However, nothing prevented Citrix from offering other, non-opinion testimony from Mr. Murgia that would have provided the jury with evidence of Citrix's intent and motivation regarding the '011 patent.   As such, the Court did not err in precluding Mr. Murgia's opinion testimony regarding his subjective beliefs regarding infringement and invalidity, particularly when he did not consider this Court's claim construction order when forming such beliefs.

2.   *The Court Properly Precluded Evidence of the Reexamination Proceedings of the '011 Patent*

Citrix also argues that the Court erred in not allowing evidence of a then-pending reexamination of the '011 patent to be introduced at trial.   As this Court has previously observed, the probative value of evidence relating to an ongoing reexamination is "substantially outweighed by its prejudicial effect."   *i4i Ltd. P'ship v. Microsoft Corp.*, 670 F. Supp. 2d 568, 588 (E.D. Tex. 2009).   The Court's decision to preclude evidence of the ongoing reexamination was validated, in a way, when the USPTO ultimately confirmed the validity of claims 2, 4 and 7 in an Action issuing after trial.   As this Court has repeatedly observed, "final" does not usually mean "final" at the USPTO, and introducing evidence of ongoing reexamination proceedings therefore provides limited probative value but has a substantial prejudicial effect.   The Court was correct to preclude such evidence.

### E.  Conclusion

Based on the foregoing, the Court **DENIES** Citrix's Motion for Judgment as a Matter of Law and New Trial Concerning Non-Infringement and Invalidity of the '011 Patent Pursuant to Federal Rules of Civil Procedure 50 and 59 (Dkt. No. 302).

## VIII.  CITRIX'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL THAT IT HAS NOT WILLFULLY INFRINGED THE '011 PATENT (DKT. NO. 304)

Citrix seeks judgment as a matter of law that Citrix has not willfully infringed the '011 patent on the grounds that its non-infringement and validity defenses were reasonable, and that Citrix had no duty to investigate whether it infringed the '011 patent, because no evidence was presented showing that Citrix should have investigated whether it infringed the '011 patent. (Dkt. No. 304.)   SSL argues that it presented "clear and convincing evidence that Citrix had acted

29

despite an objectively high likelihood that its actions constituted infringement of a valid patent."
(6/18/12 AM Tr. at 6:12-24.)   SSL contends that the jury's verdict of willfulness was supported
by both the Court's finding on objective recklessness and the jury's finding by clear and
convincing evidence that "Citrix actually knew or should have known that its actions constituted
an unjustifiably high risk of infringement of a valid and enforceable patent."   (Dkt. No. 256, Jury
Instructions, at 18-19.)

### A.  Legal Standard

In analyzing whether infringement is willful, the fact-finder applies the standard of willful
infringement set forth in *Seagate*.   The "patentee must show by clear and convincing evidence
that the infringer acted despite an objectively high likelihood that its actions constituted
infringement of a valid patent."   *In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed. Cir.
2007) (en banc).   Second, "the patentee must also demonstrate that this objectively-defined risk
. . . was either known or so obvious that it should have been known to the accused infringer."   *Id.*
The Federal Circuit's decision in *Bard* placed the first part of this analysis in the hands of the Court
to determine objective recklessness as a matter of law.   *Bard Peripheral Vascular, Inc. v. W.L.
Gore & Assoc., Inc.*, 682 F.3d 1003, 1008 (Fed. Cir. 2012).

### B.  Citrix Acted Despite an Objectively High Likelihood That Its Actions Constituted Infringement of the '011 Patent

#### 1.  Citrix's Non-Infringement Defenses are Objectively Baseless

Citrix alleges that Access Gateway cannot meet the "encrypt file" limitation and the
computer authentication requirements found in the asserted claims of the '011 patent.   (Dkt. No.
304, at 4-6.)    As discussed above with regard to Citrix's Motion for Judgment as a Matter of Law
regarding Non-Infringement, SSL's expert provided extensive testimony to show how the Access

Gateway and Netscaler products encrypt "a set of data used by a program."   On multiple occasions, SSL's expert showed the jury copies of diagrams provided in Citrix documents that illustrate the flow of data in the Access Gateway and Netscaler products.   *See* PTX-350, PTX-014, and PTX-015.   SSL's expert described these diagrams in detail and how they show data flow or traffic from Applications (at the top left of each diagram) to the Net6VPN.exe program via a shim.   Further, SSL's expert explained that applications are programs and an example of an application or program is Internet Explorer, which is one of the applications illustrated in the Citrix diagrams and a part of Access Gateway.

Further, SSL presented substantial evidence to show that the Access Gateway products also meet the "mutual authentication" limitations of claims 2 and 4 of the '011 patent.   At trial, Citrix reiterated the same arguments and evidence that it presented in its previously denied motion for summary judgment.   SSL's evidence provided overwhelming support for the jury's finding that Access Gateway and Netscaler products meet the "mutual authentication" limitation.   As SSL's expert explained, the "mutual authentication" limitation requires that both the server and the client be authenticated.   Using the Citrix diagram shown on CT-S1630582 of PTX-014, SSL's expert opined that "[t]his shows that the – the applications level encryption and authentication software in Access Gateway is actually what I've highlighted in red here.   It's a Citrix program called Net6VPN.exe.   And that provides the – what's required here in this limitation, mutually authenticating the server and the client and generating a session key."   (6/13/12 AM Tr. at 47:11-18.)   SSL's expert went on to present additional evidence explaining how mutual authentication was performed in the Access Gateway products.   *See* PTX-363, at CT-S0753576

(describing that Access Gateway products use SSL, and that certificates are used in connection with authentication for the Access Gateway products); *Id*. at 48:6-8, 48:11-16, 48:18-21.

In sum, based upon the strength of SSL's infringement positions, including conclusively establishing how each of the above-described limitations were found within the Access Gateway and Netscaler products, this Court's finding that Citrix acted despite an objectively high likelihood that its actions constituted infringement is well-supported.

### 2.   *Citrix's Written Description Defense is Objectively Baseless*

As discussed above, the jury has rejected Citrix's written description defense and the Court has found that the jury's verdict is supported by substantial evidence.   During claim construction proceedings, Citrix urged this Court to adopt a construction for "mutual authentication" as requiring two separate entities, which Citrix argued were the client computer and the server.

> The '918 patent, which is incorporated by reference (2:27-32), also confirms that "mutual authentication" is a process in which two entities to a communication verify one another's identity.   Ex. 11 at 4:32-42 & 5:1-29.   In this case, the claims explicity recite the two entities to be authenticated – the "client computer" and "the server."

(Dkt. No. 101, Citrix's *Markman* Brief, at 28.)   The Court adopted Citrix's arguments based upon Citrix's arguments that the '011 patent incorporates the '918 patent by reference and provided support for Citrix's proposed construction.   The Court finds that, as a matter of law, it is objectively unreasonable for Citrix to rely upon a written description invalidity defense that is directly contradicted by positions that it has advocated for during claim construction.   It cannot be disputed that the '918 patent *is* incorporated by reference and *does* provide support for the "mutual authentication" limitation as construed by the Court.

### 3. *Citrix's Prior Art Defenses Are Objectively Baseless*

Leading up to, and throughout trial, Citrix time and again argued that the USPTO's rejection of the claims in view of Takahashi and RFC 1508 during the ongoing reexamination provided compelling evidence that it had an objectively reasonable basis to believe that the asserted claims are invalid under 35 U.S.C. § 102 and § 103.   In response to such arguments, the Court ruled time and again that the mere fact that the claims have been initially rejected during reexamination is not persuasive upon the Court's analysis under *Bard* when the reexamination is ongoing.   Based upon an independent analysis of the '011 patent asserted claims and the prior art references at issue, the Court found that there was no objective basis for Citrix to believe that the claims were invalid under 35 U.S.C. § 102 and § 103.   For example, as discussed above, none of the prior art references disclosed "authentication" *performed at the applications level*, as required by the claims.   The Court has stated on the record that "[t]he ongoing reexamination process cannot support the type of absolute bar (to a finding of willfulness) that Citrix seeks," and "the Court is not convinced that Citrix will ultimately prevail on its invalidity defense."   (Dkt. No. 293, at 8.)   The Court has also stated that:

> [T]he jury fully evaluated the prior art references during trial and before rendering its verdict that the prior art references presented at trial do not invalidate the asserted claims of the '011 patent.   The Court recognizes that the jury is bound to evaluate the issue of invalidity at a higher standard than the USPTO.   Nevertheless, the Court is of the considered opinion that **the asserted prior art references simply do not invalidate the '011 patent under any standard of review**.

(Dkt. No. 293, at 7.)

The USPTO ultimately shared the Court's opinion regarding the validity of the '011 patents asserted claimed, when it issued an Action on November 29, 2012 confirming all claims as

valid.   The USPTO specifically found that "there is insufficient evidence to conclude that the authentication/encryption of Takahashi … are performed at the applications level."

In sum, Citrix's invalidity defenses based on prior art have been rejected: (1) by the Court as being objectively unreasonable; (2) by the jury as not being shown by clear and convincing evidence; and (3) by the USPTO in the Action mailed November 29, 2012.   The Court is of the continuing opinion that the mere fact that claims have entered reexamination cannot be an absolute bar to willfulness with regard to the "objectively reckless" inquiry.   In this case, Citrix's invalidity defenses have been rejected three times.   The cited references simply do not invalidate the claims, and it was objectively unreasonable for Citrix to believe otherwise.

### C.  The Jury's Finding of Willfulness if Supported by Substantial Evidence

Citrix had knowledge of the '011 patent such that it should have known that its actions constituted an unjustifiably high risk of infringement.   "Evidence of such knowledge is demonstrated through, among other things, the executed contractual agreements that Citrix and V-One negotiated and entered into specifically identifying the '011 patent by application number (PTX-162) and patent number (PTX-167)".   (Dkt. No. 293, at 2.)   Further, "during trial, Mr. Bill Magnum, a former Citrix executive, admitted that he had knowledge of the '011 patent as a result of Citrix's relationship with V-One."   (6/14/2012 AM Tr. at 126:12-23, 128:5-16, 129:8-11).   *Id.* The testimony of Ms. Grayson further confirmed that Citrix knew of the '011 patent.   (6/12/2012 AM Tr. at 110:20-111:3).   Moreover, Mr. Magnum's testimony about his knowledge of the patents-in-suit and his failure to communicate that knowledge to anyone at Citrix presented additional substantial evidence that the jury could have relied upon to form a belief about Citrix's reckless disregard of the '011 patent.   (6/14/12 AM Tr. at 126:18-23, 128:5-130:13, 133:17-21.) The foregoing is only some of the evidence that was presented at trial, but which the Court believes

provides more than substantial evidence to support the jury's verdict regarding willful infringement.

### F.  Conclusion

Based on the foregoing, the Court **DENIES** Citrix's Motion for Judgment as a Matter of Law and New Trial That It Has Not Willfully Infringed the '011 Patent (Dkt. No. 304).

## IX.   CONCLUSION

Based on the foregoing, the Court: (1) **DENIES** Citrix Systems, Inc. and Citrix Online, LLC's ("Citrix") Motion for Judgment as a Matter of Law and New Trial on Damages Pursuant to Fed. R. Civ. P. 50 and 59 (Dkt. No. 299); (2) **DENIES** SSL's Motion for Judgment as a Matter of Law that the '796 Patent is Infringed (Dkt. No. 300); (3) **DENIES** SSL's Motion for a New Trial on the '796 Patent (Dkt. No. 301); (4) **DENIES** Citrix's Motion for Judgment as a Matter of Law and New Trial Concerning Non-Infringement and Invalidity of the '011 Patent (Dkt. No. 302); and (5) **DENIES** Citrix's Motion for Judgment as a Matter of Law and New Trial That it has not Willfully Infringed the '011 Patent (Dkt. No. 304).

**So ORDERED and SIGNED this 16th day of April, 2013.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE